**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DR. SHANNON "SJ" JOSLIN,

      *Plaintiff*,

    v.

U.S. DEPARTMENT OF THE INTERIOR,
*et al.*,

      *Defendants*.

Civil Action No. 26‑576 (SLS)

Judge Sparkle L. Sooknanan

## <u>MEMORANDUM OPINION</u>

Dr. Shannon "SJ" Joslin is a wildlife biologist who was employed by the National Park Service (NPS) at Yosemite National Park for more than four years before their termination.[1] In May 2025, Dr. Joslin and a group of fellow climbers displayed a large transgender pride flag on Yosemite's iconic El Capitan rock formation for about two hours. Disheartened by recent upticks in attacks on the LGBTQ+ community and transgender people in particular, the group wanted to send a message that transgender people are welcome outdoors. Dr. Joslin's participation in the flag display occurred on their personal time and not during duty hours. The day after the demonstration, the Yosemite Superintendent announced a new ban on flags at Yosemite, including El Capitan. A few days later, the NPS and the Department of Justice opened a criminal investigation into Dr. Joslin's participation in the flag display. And shortly after that, the NPS fired Dr. Joslin.

Dr. Joslin filed this lawsuit alleging that their termination and criminal investigation violates the First Amendment and the Privacy Act. They assert claims against the NPS, the Department of the Interior, the Department of Justice, and the U.S. Attorney's Office for the

---

[1] Dr. Joslin "prefers they/them pronouns." Compl. ¶ 11, ECF No. 1.

Eastern District of California, as well as against the individual officials that head those agencies. Shortly after filing suit, Dr. Joslin sought a preliminary injunction reinstating them to their position as a wildlife biologist at Yosemite and forbidding the Defendants from taking any further criminal investigative or enforcement action against them for their role in the flag display. In response, the Defendants moved to transfer this case to the Eastern District of California. The Court now grants the Defendants' motion.

The Government's alleged conduct in this matter is disturbing and appears to implicate fundamental First Amendment issues that bear on the free speech rights of park rangers and federal employees across our country. But this case nevertheless has no meaningful connection to this District. Indeed, the Complaint includes no allegations about specific events, actions, or decisions that occurred here. Rather, the events at issue all occurred in the Eastern District of California. Under the circumstances, the Court finds that transfer to the Eastern District of California is appropriate.

## BACKGROUND

### A.   Factual Background

Dr. Joslin is a wildlife biologist and lifelong climber who resides in El Portal, California. Compl. ¶¶ 1, 11, 37, ECF No. 1. They hold a bachelor's degree and Ph.D. in genetics from the University of California, Davis. Compl. ¶ 37. Dr. Joslin was first hired by Yosemite National Park as a wildlife biologist in March 2021, and served in that position for roughly four and a half years. Compl. ¶¶ 38–39. During that time, Dr. Joslin managed Yosemite's bat program as well as the "terrestrial wildlife data for all research projects at Yosemite." Compl. ¶ 39. They received "universally positive performance reviews" and were "never subject to disciplinary action" before the events at issue. *Id*.

In May 2025, following an "uptick in attacks on transgender and LGBTQ people," Dr. Joslin approached a group of fellow climbers, including two fellow NPS employees, about "mak[ing] a statement in support of trans people." Compl. ¶¶ 40–42. Their idea was to rig a "large trans pride flag" on Yosemite's iconic El Capitan rock face to convey the message that "trans is natural," and to "make sure that trans people know they're welcome outdoors." *Id.*

In the weeks leading up to the event, Dr. Joslin and other organizers made "weekend trips to the site to stake out the technical logistics of fixing a sizable flag to the rock face." Compl. ¶ 43. Dr. Joslin and the other NPS employees in the group also consulted with coworkers who had attended an NPS-facilitated First Amendment training the year before. Compl. ¶ 44. That training was offered after Yosemite officials had improperly "restricted the activities allowed at the park's 2024 Pride parade." Compl. ¶ 36. The employees who had attended the training assured Dr. Joslin that "so long as they were not on duty when participating" in the flag display "they would have their full First Amendment rights." Compl. ¶ 44. Dr. Joslin followed this advice to the letter, ensuring that all their involvement in planning and executing the flag display was "done on their own time." Compl. ¶¶ 43, 53.

On the morning of May 20, 2025, Dr. Joslin and the other group members carried out their plan, unfurling their trans pride flag about one-third of the way up El Capitan's cliff face. Compl. ¶ 47. They flew the flag for approximately two hours before removing it. Compl. ¶¶ 49–51. Later that day, the group issued a press release that quoted Dr. Joslin but did not identify them as a Yosemite employee. Compl. ¶ 52. In the immediate aftermath of the event, Dr. Joslin and the other organizers received "an outpouring of support for their display from colleagues, members of the Yosemite climbing community, and members of the LGBTQ+ community, in addition to the public writ large." Compl. ¶ 54.

For Dr. Joslin, the celebratory atmosphere surrounding the event was short-lived. The day after the flag display, the Yosemite Superintendent announced that the Yosemite Superintendent's Compendium—essentially, the park's rulebook governing permit requirements, closures, restrictions, and the like—had been updated to ban the display of large flags in the park's wilderness areas. Compl. ¶ 55. The plain terms of the ban applied to the trans pride flag displayed by Dr. Joslin's group. Compl. ¶¶ 55, 58. And while the Compendium update was electronically signed on May 21, 2025, it purported to have been dated May 20, 2025, the day of the flag display. Compl. ¶ 57.

A few days later, the NPS informed Dr. Joslin that they were "under investigation." Compl. ¶ 60. In subsequent interviews, NPS representatives confirmed to Dr. Joslin that they were under criminal investigation and that the "investigation was the result of [Dr. Joslin's] participation" in the flag display, which "NPS claimed was a demonstration that constituted a violation of the park rules." Compl. ¶¶ 61–62. Not long after, Dr. Joslin was summoned to a meeting with the Yosemite's acting deputy superintendent who handed her a "Notice of Termination." Compl. ¶ 63. The Notice, dated July 30, 2025, stated that Dr. Joslin had "failed to demonstrate acceptable conduct" when they "participated in a small group demonstration in an area outside the designated protest and demonstration area without a permit as required by 36 CFR 2.51[.]" Compl. ¶ 64.

As a result of their termination, Dr. Joslin "has faced—and continues to face—medical, financial, personal, and professional harm." Compl. ¶ 66. They have lost their income and benefits. *Id*. They have suffered disruptions to their healthcare coverage just as the stress of their termination has increased their need for care. *Id*. And they have been thrown into an unexpected and challenging job search. *Id*. Indeed, "the only position for [Dr. Joslin's] skills in their current

location is with NPS," and they thus have incurred and will continue to incur expenses related to searching for new jobs and potentially relocating. Compl. ¶ 67.

The Defendants' public statements since Dr. Joslin's termination have also "made clear their intent to investigate Dr. Joslin to the fullest extent possible" and have made Dr. Joslin "concerned about pending administrative, disciplinary, civil, and criminal proceedings, including a fine, imprisonment, or both." Compl. ¶ 65. The Defendants have publicly stated that the NPS and the Department of Justice are working together to investigate Dr. Joslin and other individuals involved in the flag display, and that the U.S. Attorney's Office for the Eastern District of California is evaluating possible criminal charges. Compl. ¶ 65 n.47.

### B.       Procedural Background

Dr. Joslin filed this lawsuit in tandem with a motion for preliminary injunction on February 23, 2026, bringing claims under the First Amendment, the Privacy Act, and the Declaratory Judgment Act. Compl.; Mot. Prelim. Inj., ECF No. 3. The Defendants moved to transfer venue on March 3, 2026. Defs.' Mot. Transfer (Mot.), ECF No. 8. The motion to transfer is now ripe for review. Pl.'s Opp'n, ECF No. 9, Defs.' Reply, ECF No. 10.

### LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) is intended "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. The FBL–585*, 364 U.S. 19, 26–27 (1960)).

"The threshold question under section 1404(a) is whether the action 'might have been brought' in the transferee district." *SEC v. RPM Int'l, Inc.*, 223 F. Supp. 3d 110, 114 (D.D.C.

2016). "After establishing that the threshold requirement has been met, the Court 'must balance case-specific factors which include the private interests of the parties as well as public interests such as efficiency and fairness.'" *Id.* at 114–15 (quoting *The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000)). The private-interest factors include: "(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." *Tower Lab'ys, Ltd. v. Lush Cosms. Ltd.*, 285 F. Supp. 3d 321, 325 (D.D.C. 2018) (quoting *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 31 (D.D.C. 2013)). The public-interest factors include: "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendar of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home." *Id.* (quoting *Douglas*, 918 F. Supp. 2d at 31). "The burden is on the moving party to establish that transfer is proper." *Id.* (quoting *Douglas*, 918 F. Supp. 2d at 31).

## DISCUSSION

The Defendants seek to transfer this case to the Eastern District of California. The Court agrees that transfer to that district is appropriate under 28 U.S.C. § 1404(a).

To begin, the Parties agree that Dr. Joslin could have brought this lawsuit in the Eastern District of California. 28 U.S.C. § 1404(a); *see* Mot. 3–4; Opp'n 4. A civil action against an officer or employee of the United States or an agency of the United States may be brought "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides[.]" 28 U.S.C. § 1391(e)(1). Here, all three venue hooks appear to be satisfied. At a minimum, there is no dispute that Dr. Joslin resides in the Eastern District of California. Compl. ¶ 11. Accordingly, the Court turns to the private- and public-interest factors.

### 1.    Private Interest Factors

*The Plaintiff's choice of forum.* "Courts ordinarily accord significant deference to a plaintiff's choice of forum, only disturbing that choice if the balance of convenience is strongly in favor of the defendant." *SEC v. Musk*, No. 25-cv-105, 2025 WL 2803858, at *2 (D.D.C. Oct. 2, 2025) (cleaned up). That deference is diminished, however, where the Plaintiff's chosen forum "has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Wilderness Workshop v. Harrell*, 676 F. Supp. 3d 1, 5–6 (D.D.C. 2023) (quoting *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001)). "Thus, the degree of deference accorded to plaintiffs' choice of forum depends on the existence of a connection between the underlying case and the district." *Musk*, 2025 WL 2803858, at *2 (cleaned up). Some courts in this District have also given less deference to a plaintiff's chosen forum when it "is not the plaintiff's home forum." *Sallyport Glob. Servs., Ltd. v. Arkel Int'l, LLC*, 78 F. Supp. 3d 369, 373 (D.D.C. 2015) (collecting cases).

Here, this District is not Dr. Joslin's home forum. And the connection between this District and Dr. Joslin's claims is not so robust as to merit significant deference. It is true that three of the Defendant agencies and their leaders are in Washington, D.C. But that on its own is not enough to create a meaningful nexus. *See Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993) ("Courts in this circuit must . . . guard against the danger that a plaintiff might manufacture venue in the District of Columbia . . . [b]y naming high government officials as defendants" and "bring[ing] a suit here that properly should be pursued elsewhere.") At this early stage, it is not clear that any agency personnel or agency leaders took any actions or made any decisions *in this District* that are relevant to Dr. Joslin's claims.

While Dr. Joslin contends that the Defendants have not "outright deni[ed]" the "plausible assertion 'that ultimate decisions about Dr. Joslin's case were made by high level officials in Washington, D.C.,'" Opp'n 5–6, Dr. Joslin did not make that assertion in their Complaint. Indeed, the Complaint does not include any allegations about specific events, actions, or decisions that occurred in this District and instead relies on inference to suggest the involvement of higher-level agency personnel. *See, e.g.*, Compl. ¶¶ 50, 60 (describing the "sharp" change between the support Dr. Joslin initially received from local NPS employees following the display and the communications that came later). While such reliance on inference is permissible to plausibly state a claim, it does not meaningfully tie Dr. Joslin's claims to this forum. *See Intrepid Potash-New Mexico, LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 96 (D.D.C. 2009) ("[E]ven when a federal agency has had some role in formulating the policy that was applied by a local agency office, this does not alone support venue when the claims are centered on the decision of a local agency office."). At bottom, Dr. Joslin's Complaint alleges "identifiable relevant events occurring in the [Eastern District of California] and virtually none in this district." *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009). Under such circumstances, Dr. Joslin's choice of forum "commands diminished deference," *id.*, and carries little weight in the transfer analysis.

*The Defendant's choice of forum.* "While a defendant's choice of forum is a consideration when deciding a § 1404(a) motion, it is not ordinarily entitled to deference." *Correll v. U.S. Pat. & Trademark Off.*, No. 25-cv-1169, 2026 WL 310024, at *3 (D.D.C. Feb. 5, 2026) (quoting *Tower Lab'ys*, 285 F. Supp. 3d at 326). Here, the Defendants "have not proffered any basis to conclude that their choice of forum is entitled to special deference, meaning that this factor is neutral." *Id.*

*Whether the claim arose elsewhere.* "Transfer is favored when the material events that form the factual predicate of the plaintiff's claim did not occur in the plaintiff's chosen forum." *Id.* (cleaned up). That is the case here.

Dr. Joslin was employed by NPS in the Eastern District of California. Dr. Joslin's involvement in the flag display occurred in the Eastern District of California. Dr. Joslin's termination was carried out by NPS personnel in the Eastern District of California. And it appears that the Government's ongoing investigation of Dr. Joslin is being carried out by NPS and Department of Justice personnel in the Eastern District of California. Indeed, every individual specifically identified in the Complaint as having taken or witnessed an action relevant to Dr. Joslin's claims appears to have done so in the Eastern District of California. By contrast, the connections that the Complaint draws between Dr. Joslin's claims and events in this District are not substantiated. Dr. Joslin may well flesh out those connections with time and discovery. But for now, Dr. Joslin's claims are undeniably rooted in the Eastern District of California. This factor thus weighs heavily in favor of transfer.

*The convenience of the parties*. Neither side argues that litigating in this District or in the Eastern District of California would pose substantial inconveniences for the Parties. *See* Mot. 8; Opp'n 7–8. This factor is therefore neutral.

*The convenience of the witnesses.* Section 1404(a) of Title 28 says simply that "the convenience of . . . witnesses" is a relevant consideration to whether transfer is appropriate. *Musk*, 2025 WL 2803858, at *5. Some courts in this District have interpreted this factor as only relevant when witnesses are unavailable for trial in one of the venues under consideration. *Id.* (collecting cases). Other courts have not adopted that "availability-based limitation." *Id.* (collecting cases). Here, the Defendants acknowledge the existence of this potential limitation, *see* Mot. 4, and

Dr. Joslin insists that it must apply, Opp'n 7. Ultimately, however, the application of the potential limitation is inconsequential as "neither Party's representations . . . provide a basis for the Court to weigh this factor heavily." *Musk*, 2025 WL 2803858, at *5.

"To make a strong showing on this factor, [a] party must specify what a nonresident witness will testify to, the importance of the testimony to the issues in this case, and whether that witness is willing to travel to a foreign jurisdiction." *Id*. (cleaned up). The Defendants argue that "most of the witnesses" in this case likely live in California. Mot. 8. This includes the other climbers who participated in the flag display, Dr. Joslin's NPS colleagues and superiors, and any doctors who might testify regarding Dr. Joslin's alleged harm related to medical expenses. *Id.* Accordingly, the Defendants assert that it would be "more convenient for these witnesses to appear in court in . . . the Eastern District of California than in [this] District." *Id.* And that intuitively seems true. But they proffer no information suggesting that any of these witnesses would be "[un]willing to travel to [this] jurisdiction." *See Sheffer*, 873 F. Supp. 2d at 378 (quoting *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 33 (D.D.C. 2002)).

Dr. Joslin, on the other hand, does not argue that litigating in the Eastern District of California is likely to inconvenience any witnesses. Opp'n 7–8. Instead, they simply note that the convenience of the witnesses "poses no obstacle" to litigation in this District. *Id.*

Ultimately, the Court gives a slight edge to the Defendants on this factor—but not such a heavy benefit that it is dispositive to the Court's analysis.

*The ease of access to sources of proof.* This factor plays out much like the preceding one. Dr. Joslin notes that their decision to file suit here was necessarily based on a determination that "any necessary witnesses and evidence" needed to prove their claims would be available in this forum. Opp'n 7. Arguing in the other direction, the Defendants suggest that Dr. Joslin or

10

Dr. Joslin's medical providers may have records located in California. Mot. 8. But bringing that sort of documentary evidence to this forum seems like an easily surmountable hurdle. *Musk*, 2025 WL 2803858, at *5. The same would seem to be true of any other potentially relevant documentary evidence (*e.g.*, personnel files, Yosemite park policies, etc.). This factor, too, is neutral.

### 2. Public Interest Factors

*The transferee's familiarity with the governing laws*. Dr. Joslin's claims are based on the Constitution, the Privacy Act, and the Declaratory Judgment Act. Both sides agree that courts in the Eastern District of California and this District are presumed to be equally familiar with these laws. Mot. 11; Opp'n 8; *see also Correll*, 2026 WL 310024, at *3 ("All federal courts are presumed equally familiar with the federal statutes and constitutional provisions at issue here." (cleaned up)). Thus, this factor is also neutral.

*The relative congestion of the transferor and transferee courts*. "To assess this factor, courts in this District have considered statistics including the average number of cases pending per judgeship and the median times from filing to disposition or trial." *Musk*, 2025 WL 2803858, at *6. The judiciary's most recent data indicates that the average number of cases pending per judgeship in this District is 464, compared to 1392 in the Eastern District of California. *See Federal Court Management Statistics*, U.S. Courts (Dec. 31, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf [https://perma.cc/83M5-5N8R]. The median time from filing to disposition is 7.3 months here compared to 8.4 months there. *Id.* Lastly, the median time from filing to trial in civil cases is 52.1 months here compared to 64.6 months in the Eastern District. *Id.* Overall, this data suggests that the Eastern District of California is relatively more congested than this District. Accordingly, the Court finds that this factor weighs against transfer.

11

*The local interest in having local controversies decided at home*. This final public interest factor "seeks to ensure that 'concerned members' of the population affected by a case 'can engage with the proceedings.'" *Correll*, 2026 WL 310024, at *4 (quoting *Wilderness Workshop*, 676 F. Supp. 3d at 7). While "[e]ach state has an interest in redressing the harms of its citizens . . . when national significance attaches to a controversy, local interest can sometimes be diminished." *Musk*, 2025 WL 2803858, at *6 (cleaned up).

Dr. Joslin argues that this case involves a controversy to which national significance has attached. Opp'n 9–10. They assert that "the impact of Defendants' ability to implement and then selectively enforce speech restrictions extend far beyond the boundaries of Yosemite, impacting at least the more than 20,000 employees who work in the more than 85 million acres [of National Parks] in every state, the District of Columbia, Puerto Rico, and the Virgin Islands." *Id.* 10–11. The Court does not disagree that resolution of Dr. Joslin's claims may have implications for the First Amendment rights of all NPS employees. Nor does it dispute that the free speech rights of federal employees are of national concern. But that does not change the fact that the heart of this case is the Defendants' alleged campaign "to selectively punish Dr. Joslin for disfavored speech." Opp'n 9. And where "the crux of the suit is the implementation of national policies as to plaintiff, the question is where the implementation of the policy occurred." *Hale v. Bureau of Prisons*, 2023 WL 2755413, at *4 (D.D.C. Apr. 3, 2023) (cleaned up). Here, as already discussed, that implementation appears to have occurred in the Eastern District of California. This factor thus weighs heavily in favor of transfer.[2]

---

[2] Dr. Joslin argues that an additional public interest consideration weighing against transfer is that the Defendants may be "forum shopping" and attempting to avoid case law in the D.C. Circuit that is more favorable to Dr. Joslin's Privacy Act Claims. Opp'n 11; *see also* Opp'n 1 (asserting that transfer will allow the Defendants "to take advantage of Ninth Circuit law precluding Privacy Act claims by federal workers like Dr. Joslin"). This argument is unpersuasive. If anything, given the

*     *     *

Balancing the above factors, the Court concludes that the Defendants have met their burden of showing that discretionary transfer of this case to the Eastern District of California is warranted. *See* 28 U.S.C. § 1404(a). Most notably, the identifiable material events that give rise to Dr. Joslin's claims all occurred in the Eastern District of California. By contrast, any factual linkages to this District have yet to be fleshed out. It is thus no surprise that nearly every factor in the analysis either weighs in favor of transfer or is neutral. The only factor that points in the other direction is the relative congestion of the two Districts, but with other factors weighing strongly in favor of transfer, "congestion alone is not sufficient reason" to keep the case in this forum. *Starnes v. McGuire*, 512 F.2d 918, 932 (D.C. Cir. 1974).

## CONCLUSION

For all these reasons, the Court grants the Defendants' Motion to Transfer, ECF No. 8. A separate order will issue.

_____

SPARKLE L. SOOKNANAN
United States District Judge

Date:   March 11, 2026

---

attenuated connection between Dr. Joslin's claims and this District, the decision to file suit here may itself have been motivated by a desire to avoid Ninth Circuit precedent that will "effectively extinguish Dr. Joslin's Privacy Act claims." Opp'n 1. The Court does not fault Dr. Joslin for that decision—venue is proper in this District—but neither does it ascribe substantial weight to that decision as a reason to keep the case here. *See Alabama v. U.S. Army Corps of Eng'rs*, 304 F. Supp. 3d 56, 59, 65 n.5 (D.D.C. 2018) (granting motion to transfer where plaintiff who filed lawsuit "hundreds of miles from home . . . appear[ed] motivated by its desire to leverage" D.C. Circuit case law); *see also M & N Plastics, Inc. v. Sebelius*, 997 F. Supp. 2d 19, 25–26 (D.D.C. 2013) (granting motion to transfer where plaintiffs' decision to file "in this district instead of their home district was motivated by an attempt to take advantage of favorable precedent here" and collecting cases employing analogous reasoning).

13