ERIC GRANT
United States Attorney
Rachel R. Davidson
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
E-mail:       Rachel.davidson@usdoj.gov
Telephone: (916) 554-2731

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. SHANNON "SJ" JOSLIN,<br><br>                          Plaintiff,<br><br>                    v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, et. al.<br><br>                          Defendants. | No. 1:26-CV-02029-JLT-FJS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date: June 12, 2026<br>Time: 9:00 a.m.<br>Location: Courtroom 4, 7th floor<br>Judge: Hon. Jennifer L. Thurston |

**TABLE OF CONTENTS**

**PAGE**

I.  INTRODUCTION ...........................................................................................................1

II. BACKGROUND .............................................................................................................1

    A.  The Civil Service Reform Act. ............................................................................1

    B.  Factual background. .............................................................................................3

    C.  Procedural background. ........................................................................................3

III. LAW AND ANALYSIS ..................................................................................................4

    A.  Standard of review ...............................................................................................4

        1.  Rule 12(b)(1)...............................................................................................4

        2.  Rule 12(b)(6)...............................................................................................4

    B.  Plaintiff's employment-based claims under the Privacy Act and First and Fifth Amendments should be dismissed pursuant to the CSRA...................................5

        1.  The CSRA precludes Plaintiff's Privacy Act claim....................................5

        2.  Plaintiff's equitable claims must proceed through the CSRA, not this Court. ...........................................................................................................6

            a.  The CSRA requires Plaintiff to channel Plaintiff's constitutional claims through the OSC only. .............................................7

            b.  The Court lacks jurisdiction over Plaintiff's claims because Plaintiff has not exhausted administrative remedies.................................9

    C.  Plaintiff's criminal-based claims should be dismissed. ......................................10

        1.  Plaintiff does not plausibly allege any "criminal investigation" that could conceivably infringe Plaintiff's First Amendment rights. ...................................10

        2.  Plaintiff lacks standing to bring a pre-enforcement challenge, and that challenge is not ripe. ..........................................................................................12

        3.  Plaintiff has no right to equitable relief against the DOJ Defendants...................14

IV. CONCLUSION..............................................................................................................15

## TABLE OF AUTHORITIES

**Citation**                                                                                    **Page(s)**

**Federal Cases**

*Am. Fed. of Gov't Employees Local 1 v. Stone*,
  502 F.3d 1027 (9th Cir. 2007) ......................................................................................... 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................... 4, 5

*Ayrault v. Pena*,
  60 F.3d 346 (7th Cir. 1995) .......................................................................................... 10

*Balisteri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1990) .......................................................................................... 4

*Banks v. Northern Trust Corp.*,
  929 F.3d 1046 (9th Cir. 2019) ........................................................................... 10-11, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................... 4, 11

*Burrus v. USDA*,
  2022 WL 4124064 (E.D. Cal. Sept. 9, 2022)................................................................. 6

*Burrus v. USDA*,
  2022 WL 6766346 (E.D. Cal. Oct. 11, 2022)................................................................ 6

*Chamat v. Paulson*,
  2009 WL 764989 (S.D. Cal. Mar. 23, 2009) ............................................................... 10

*Deaver v. Seymour*,
  822 F.2d 66 (D.C. Cir. 1987)................................................................................... 14, 15

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965)..................................................................................................... 15

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012)................................................................................................... 2, 6, 7

*Ferry v. Hayden*,
  954 F.2d 658 (11th Cir. 1992) ................................................................................... 9, 10

*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005) ......................................................................................... 2

*Giles v. Garland*,
  2024 WL 4556462 (6th Cir. Aug. 21, 2024)................................................................ 14

*Gonzalez v. Manjarrez*,
  2013 WL 152177 (W.D. Tex. Jan. 4, 2013) .............................................................. 8, 9

*Houlihan v. OPM*,
  909 F.2d 383 (9th Cir. 1990) ................................................................................................ 5, 6, 9

*Hubbard v. U.S. EPA*,
  809 F.2d 1 (D.C. Cir. 1986) ..................................................................................................... 6

*Irizarry v. United States*,
  427 F.3d 76 (1st Cir. 2005) ....................................................................................................... 9

*Kleiman v. Dep't of Energy*,
  956 F.2d 335 (D.C. Cir. 1992) ................................................................................................. 6

*Kotarski v. Cooper*,
  866 F.2d 311 (9th Cir. 1989) ................................................................................................ 7, 8

*Lombardi v. SBA*,
  889 F.2d 959 (10th Cir. 1989) .................................................................................................. 8

*Lopez v. Candaele*,
  630 F.3d 775 (9th Cir. 2010) .................................................................................................. 13

*Manafort v. U.S. Dep't of Justice*,
  311 F. Supp. 3d 22 (D.D.C. 2018) .......................................................................................... 14

*Mangano v. United States*,
  529 F.3d 1243 (9th Cir. 2008) ......................................................................................... 1, 2, 6

*Munoz v. Locke*,
  2013 WL 11319006 (W.D. Wash. Apr. 24, 2013) ................................................................... 8

*Munoz v. Locke*,
  634 F. App'x 166 (9th Cir. 2015) ............................................................................................. 8

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2002) .................................................................................................... 4

*Peters v. United States*,
  2024 WL 2274079 (D. Colo. May 20, 2024) .......................................................................... 15

*Poorsina v. MSPB*,
  726 F.2d 507 (9th Cir. 1984) .................................................................................................... 7

*Russell v. U.S. Dep't of the Army*,
  191 F.3d 1016 (9th Cir. 1999) .................................................................................................. 2

*Santa Monica Food Not Bombs v. City of Santa Monica*,
  450 F.3d 1022 (9th Cir. 2006) ................................................................................................ 13

*Saul v. United States*,
  928 F.2d 829 (9th Cir. 1991) ................................................................................................ 7, 8

*Schweiker v. Chilicky*,
  487 U.S. 412 (1988) .................................................................................................................. 8

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS

iii

*Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*,
    435 F. Supp. 3d 1063 (E.D. Cal. 2020)................................................................................ 12, 13

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................................................ 13

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ........................................................................................... 13

*Toro v. Napolitano*,
    2013 WL 4102158 (S.D. Cal. Aug. 13, 2013) ................................................................ 7, 8

*Tosco Corp. v. Cmtys. for a Better Env't*,
    236 F.3d 495 (9th Cir. 2001) ............................................................................................... 4

*Trump v. United States*,
    2022 WL 4366684 (11th Cir. Sept. 21, 2022) ................................................................... 14

*United States v. Fausto*,
    484 U.S. 439 (1988)............................................................................................... 1, 2, 6, 7

*United States v. McIntosh*,
    833 F.3d 1163 (9th Cir. 2016) ........................................................................................... 14

*Veit v. Heckler*,
    746 F.2d 508 (9th Cir. 1984) ............................................................................................... 2

*Weaver v. U.S. Information Agency*,
    87 F.3d 1429 (D.C. Cir. 1996)........................................................................................ 9, 10

*Weber v. Dep't of Vet. Affairs*,
    521 F.3d 1061 (9th Cir. 2008) ............................................................................................. 7

*Wilborn v. Napolitano*,
    2013 WL 1222061 (S.D. Cal. Mar. 25, 2013) ..................................................................... 8

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ...................................................................................... 11, 12

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) ...................................................................................... 12, 13

*Younger v. Harris*,
    401 U.S. 37 (1971)............................................................................................................. 13

**Federal Statutes**

5 U.S.C. § 552a ................................................................................................................... 4, 5

5 U.S.C. § 702 ......................................................................................................................... 7

5 U.S.C. § 1214 ................................................................................................... 2, 3, 6, 9, 10

5 U.S.C. § 7511 ....................................................................................................................... 2

5 U.S.C. § 7512 .......................................................................................................... 2

5 U.S.C. § 7513 .......................................................................................................... 2

5 U.S.C. § 7703 ................................................................................................. 3, 6, 10

28 U.S.C. § 1295 ........................................................................................................ 2

**Federal Rules**

Fed. R. Civ. P. 12 ...................................................................................................... 4

Fed. R. Crim. P. 12 .................................................................................................. 14

**Federal Regulations**

5 C.F.R. § 1800.2 ................................................................................................... 2, 6

36 C.F.R. § 2.51 ........................................................................................................ 3

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff, a probationary federal employee with the National Park Service (NPS), violated a content neutral regulation after scaling El Capitan and conducting an unauthorized demonstration in a protected area of Yosemite National Park.  The NPS terminated Plaintiff shortly thereafter.  Plaintiff also asserts an ongoing criminal investigation for the regulatory violation.  Plaintiff now challenges both the employment decision and the alleged criminal investigation.

This Court lacks jurisdiction over Plaintiff's employment-based claims.  Rather than follow the exclusive remedial process Congress prescribed in the Civil Service Reform Act ("CSRA")—a process that Plaintiff already invoked and then prematurely abandoned—Plaintiff asks this Court to intervene, order reinstatement, and constitutionalize an ordinary personnel action.  The law does not permit it.  The CSRA is both exclusive and preemptive, and it forecloses Plaintiff's attempt to recast an employment dispute as a constitutional or Privacy Act claim.  Rather, like any other probationary employee, Plaintiff was required to channel grievances through the Office of Special Counsel.  Plaintiff did not do that.

Plaintiff's criminal-based claims, meanwhile, fail on standing and separation of powers grounds.  Plaintiff has not been charged, indicted, or prosecuted.  Plaintiff alleges a supposed "criminal investigation" based on secondhand statements and silence—far from the concrete, imminent threat required for standing or ripeness.  Further, courts do not enjoin hypothetical prosecutions, and they do not supervise federal investigative discretion.  In short, Plaintiff seeks extraordinary judicial intervention that is not authorized and where no plausible claim exists.  Plaintiff's complaint should be dismissed in its entirety.

### II.    BACKGROUND

#### A.    The Civil Service Reform Act.

The Civil Service Reform Act (CSRA) governs employment-related disputes between federal employees and their employing agencies.  "Congress enacted the CSRA in 1978 to replace the old civil service system, an 'outdated patchwork of statutes and rules built up over almost a century.'" *Mangano v. United States*, 529 F.3d 1243, 1245 (9th Cir. 2008) (quoting *United States v. Fausto*, 484 U.S. 439, 444 (1988)).  The CSRA's expansive provisions regulate virtually every aspect of federal employment,

from personnel practices and adverse actions to labor relations and employee grievances. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012). Its "remedial scheme is both exclusive and preemptive" and "prescribes in great detail the protections and remedies applicable, including the availability of judicial review." *Mangano*, 529 F.3d at 1246; *Fausto*, 484 U.S. at 443. The "comprehensive nature of the procedures and remedies provided by the CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA *or not at all.*" *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999) (emphasis added; quoting *Veit v. Heckler*, 746 F.2d 508, 511 (9th Cir. 1984)).

So "far as review of determinations under the CSRA is concerned, what you get under the CSRA is what you get." *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.). And the review that a federal employee gets depends on the type of employee she is. CSRA Chapter 75 governs adverse actions, including termination, against tenured employees. *See* 5 U.S.C. §§ 7511, 7512. A tenured employee may appeal the action directly to the Merit Systems Protection Board (MSPB) and is given certain rights during that process. 5 U.S.C. § 7513(d). If the employee is dissatisfied at the MSPB, she may seek review in the Federal Circuit. 28 U.S.C. § 1295(a)(9). This review scheme is "exclusive, even for employees who bring constitutional challenges to federal statutes," and the exclusivity of Federal Circuit review precludes district court jurisdiction. *Elgin*, 567 U.S. at 12-13.

Probationary employees like Plaintiff, however, are excluded from the definition of "employee" in CSRA Chapter 75, and thus they cannot pursue the same remedies as tenured employees before the MSPB. *See* 5 U.S.C. § 7511(a)(1)(A). Instead, probationary employees must seek review by the Office of Special Counsel (OSC) of any alleged "prohibited personnel practices." 5 U.S.C. § 1214(a)(1)(A); 5 C.F.R. § 1800.2(c). The OSC then has 240 days to "determin[e] whether there are reasonable grounds to believe that a prohibited personnel practice has occurred." 5 U.S.C. § 1214(b)(2)(A)(i). If the OSC so determines, it reports the determination, with any findings or recommendations, to the MSPB, the agency, and the Office of Personnel Management (OPM). 5 U.S.C. § 1214(b)(2)(B).

The OSC may then try to broker a solution with the agency or, if that fails, petition the MSPB for corrective action on behalf of the probationary employee. 5 U.S.C. § 1214(b)(2)(B), (C). After giving the aggrieved individual an opportunity to submit written comments, the MSPB will order corrective action if it determines that the OSC has shown that a prohibited personnel practice occurred. 5 U.S.C.

§§ 1214(b)(3)(B), (4)(A).  Once the MSPB reaches a final decision, the probationary employee has 60 days to petition for review in the Federal Circuit.  5 U.S.C. §§ 1214(c)(1), 7703(b)(1)(A).

### B.    Factual background.

Plaintiff first began working as a wildlife biologist for the National Park Service (NPS) in March 2021.  ECF 28, First Amended Complaint ¶ 38 ("Compl. ¶ __").  In September 2023, the NPS hired Plaintiff into a career seasonal position.  *Id.*  Plaintiff was subject to a two-year probationary period in Plaintiff's new role.  *Id.*

In May 2025, Plaintiff and some friends climbed El Capitan, located in the Yosemite National Forest, and displayed a self-described "trans pride flag" there for about 2-3 hours.  *Id*. ¶¶ 46-51.  This action violated 36 C.F.R. § 2.51, as the group did not have a permit for the demonstration and El Capitan was outside the designated protest and demonstration area.  *Id.* ¶¶ 6, 64.  NPS terminated Plaintiff effective August 12, 2025, for violation of § 2.51 "and thus circumvent[ing] rules applicable to all park visitors."  ECF 29-5 at 7.  Plaintiff also received a termination-related SF-50 documenting Plaintiff's separation from the government, which reiterated the "unacceptable conduct" basis for terminating Plaintiff's probationary employment.  *Id.* ¶ 64.

Plaintiff further alleges that Plaintiff was placed under active criminal investigation for violating § 2.51.  Compl. ¶¶ 59, 65. Plaintiff notably has not been indicted and offers no factual allegations to suggest Plaintiff will be in the future.  *Id.* ¶ 7.  Plaintiff contends, however, that because Plaintiff has not been told that the investigation has concluded, Plaintiff fears further administrative, disciplinary, civil, or criminal proceedings.  *Id.* ¶¶ 7, 65.

### C.    Procedural background.

Plaintiff filed a complaint with the OSC on December 5, 2025, alleging that Plaintiff's termination constituted a "prohibited personnel practice."  Compl. ¶¶ 10, 20.  As Plaintiff acknowledges, the OSC has 240 days—or until August 3, 2026—to respond.  Compl. ¶ 71; *see also* Section II.A, *supra*.

Plaintiff, however, filed a complaint and motion for preliminary injunction in the U.S. District Court for the District of Columbia on February 23, 2026—nearly six months before the OSC's statutorily-prescribed timeframe for reviewing Plaintiff's complaint—alleging First Amendment violations (Counts I and II), violations of the Privacy Act (Counts III and IV), and declaratory relief

(Count V). ECF 1, 3. Plaintiff sought injunctive relief ordering Defendants to reinstate Plaintiff to Plaintiff's position at NPS and enjoining Defendants from criminally enforcing park regulations against Plaintiff for speech supportive of trans rights; actual damages under 5 U.S.C. § 552a(g)(4)(A); a declaratory judgment regarding collection and use of personal information, and attorneys' fees and costs. Compl., Prayer for Relief.

On March 13, the case was transferred to this Court. ECF 11-13. On March 31, Plaintiff filed a First Amended Complaint and a revised Motion for Preliminary Injunction. ECF 28-29. The Amended Complaint asserts First and Fifth Amendment violations (Counts I and II), violation of the Privacy Act (Count III), and declaratory relief (Count IV).

## III.   LAW AND ANALYSIS

### A.   Standard of review

#### 1.   Rule 12(b)(1)

A motion under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's jurisdiction to decide one or more claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1); *see also id.* 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In response to a motion under Rule 12(b)(1), the plaintiff has the burden of proving subject-matter jurisdiction. *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

#### 2.   Rule 12(b)(6)

Rule 12(b)(6) permits the Court to dismiss a claim that is not legally sufficient. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2002). Dismissal is appropriate where there is a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

While Rule 12(b)(6) requires the Court to assume the truth of well-pleaded factual allegations, this "tenet . . . is inapplicable to legal conclusions." *Id.* Nor may the Court "accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A

complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at 678.

**B.      Plaintiff's employment-based claims under the Privacy Act and First and Fifth Amendments should be dismissed pursuant to the CSRA.**

Plaintiff asserts that Plaintiff's termination violated the Privacy Act and the First and Fifth Amendments, and Plaintiff seeks damages and reinstatement.  But the CSRA is the exclusive remedial scheme for federal employment disputes and bars jurisdiction over Plaintiff's claims.  Plaintiff has already conceded that Ninth Circuit precedent precludes Plaintiff's Privacy Act claim.  Plaintiff's claims for equitable relief under the U.S. Constitution also are precluded by the CSRA, as the CSRA channels any employment grievances through the OSC—a process that Plaintiff, by Plaintiff's own admission, has not exhausted.  Plaintiff's employment-based claims therefore should be dismissed.

**1.      The CSRA precludes Plaintiff's Privacy Act claim.**

Plaintiff has previously conceded that Plaintiff's Privacy Act claim is barred by Ninth Circuit precedent.  ECF 9, Opp. to Mot. to Transfer at 7 ("The Ninth Circuit has held virtually all Privacy Act claims challenging federal employment are precluded by the Civil Service Act (CSRA).").  Yet Plaintiff inexplicably re-asserted an identical Privacy Act claim in Plaintiff's Amended Complaint.  *Compare* Compl. ECF 1 ¶¶ 86-93 *with* Am. Compl. ¶¶ 87-93.

The Privacy Act claim should be dismissed for the same reasons Plaintiff has already acknowledged.  "In order to consider [a] Privacy Act claim, [the court] would have to decide not only whether [the agency] violated the Act, but whether [the agency's] alleged violation caused it to make 'a determination . . . which is adverse to [her].'"  *Houlihan v. OPM*, 909 F.2d 383, 385 (9th Cir. 1990) (quoting  5 U.S.C. § 552a(g)(1)(C)).  A district court's exercising jurisdiction to make that determination would "frustrat[e] Congress's decision to" channel alleged prohibited personnel practices through the CSRA remedial scheme.  *Id.* at 385.

So it is here.  Plaintiff claims that Defendants' collection or maintenance of records "describing how [Dr. Joslin] exercise[d] rights guaranteed by the First Amendment" has "adversely affected Dr. Joslin by chilling their constitutional rights."  Compl. ¶ 91.  But the collection or maintenance of which Plaintiff complains was for a personnel-related decision, and Plaintiff's claim is an impermissible

attempt to create a "backdoor to judicial review" of an underlying employment dispute.  *Houlihan*, 909 F.2d at 385.  Plaintiff's Privacy Act claim falls within the scope of the CSRA, and the Court lacks jurisdiction to hear it.  *Accord, e.g.*, *Burrus v. USDA*, 2022 WL 4124064, at *5 (E.D. Cal. Sept. 9, 2022), *adopted*, 2022 WL 6766346 (E.D. Cal. Oct. 11, 2022) (the CSRA, not the Privacy Act, governs claims related to "benefits, leave, and overpayment" and complaints alleging wrongful personnel decisions under the Privacy Act "are not Privacy Act claims at all"); *Kleiman v. Dep't of Energy*, 956 F.2d 335, 338 (D.C. Cir. 1992) (plaintiff's Privacy Act claim regarding the accuracy of his job title in personnel records was a "collateral attack" on a "personnel decision" and could not "bypass" the CSRA's "exhaustive remedial scheme"); *Hubbard v. U.S. EPA*, 809 F.2d 1, 5 (D.C. Cir. 1986) (holding that by means of the CRSA, "Congress specifically chose to oust the district courts of jurisdiction to review government personnel practices").

### 2.    Plaintiff's equitable claims must proceed through the CSRA, not this Court.

As noted above, the CSRA is a comprehensive statutory scheme regulating virtually every aspect of federal employment, including employment disputes.  *Elgin*, 567 U.S. at 5.  The CSRA is both exclusive and preemptive, and it defines the protections and remedies available to Plaintiff and the process Plaintiff is entitled to.  *Mangano*, 529 F.3d at 1246; *Fausto*, 484 U.S. at 443.

The CSRA requires probationary employees, such as Plaintiff, to channel to the OSC any challenges to alleged prohibited personnel.  5 U.S.C. § 1214(a)(1)(A); 5 C.F.R. § 1800.2(c).  The OSC has 240 days to determine if the complaint is supported by reasonable grounds, after which the OSC may reach a solution with the agency or petition the MSPB.  5 U.S.C. § 1214(b)(2)(A)-(C).  Once the MSPB reaches a decision, the probationary employee may petition for review in the Federal Circuit.  5 U.S.C. §§ 1214(c)(1), 7703(b)(1)(A).

Given this legal backdrop, one thing is clear: this Court lacks jurisdiction to hear Plaintiff's employment-related claims.  Even if Plaintiff raises constitutionally based challenges to Plaintiff's termination, the CSRA nevertheless requires that they be funneled through the OSC.  And even more basically, the CSRA requires Plaintiff to let the administrative process resolve.  But Plaintiff did not do that, and Plaintiff's short-circuiting the administrative process simply means that Plaintiff failed to exhaust administrative remedies, which deprives this Court of jurisdiction.  The Court should dismiss

Plaintiff's injunctive relief claims.

### a.    The CSRA requires Plaintiff to channel Plaintiff's constitutional claims through the OSC only.

Plaintiff asks that Plaintiff's termination be deemed illegal and Plaintiff be reinstated.  But Congress intended that the "exclusive avenue" for review of federal employee personnel actions be the CSRA's remedial structure.  *Elgin*, 567 U.S. at 5.  That is true even if a federal employee casts an employment dispute as a constitutional violation.  *See id.* at 11-13; *see also id.* at 22 (because plaintiffs' "constitutional claims are the vehicle by which they seek to reverse the removal decision," their claims constituted "a challenge to CSRA-covered employment action brought by CSRA-covered employees requiring relief that the CSRA routinely affords"); *Saul v. United States*, 928 F.2d 829, 834 (9th Cir. 1991) (in enacting the CSRA, "Congress did expect 'prohibited personnel practices' to cover supervisors' violations of employees' constitutional and privacy rights").

In requesting that this Court award injunctive relief, Plaintiff asks that this Court ignore not only Congress's intent in enacting the CSRA, but also long-standing Ninth Circuit precedent.  For four decades, the Ninth Circuit has recognized that "Congress meant to establish the OSC as an exclusive avenue of relief to probationary employees alleging prohibited personnel practices under the CSRA." *Poorsina v. MSPB*, 726 F.2d 507, 509 (9th Cir. 1984).  As a result, the Ninth Circuit has consistently rejected probationary employees' attempts to assert constitutional tort claims in a district court.  *See Saul*, 928 F.2d at 840; *Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir. 1989); *see also Fausto*, 484 U.S. at 450 (rejecting the notion that "probationary employees . . . retain their pre-CSRA remedies").  The Ninth Circuit also has rejected common-law damages remedies.  *Saul*, 928 F.2d at 843.[1]

True, Plaintiff seeks injunctive relief only with respect to Plainitff's two constitutional claims. But no matter, the "CSRA precludes [a federal employee] from seeking injunctive relief for his asserted constitutional injury just as it precludes him from bringing a *Bivens* action for damages."  *Saul*, 928 F.2d

---

[1] Plaintiff asserts that Defendants have waived sovereign immunity under the Administrative Procedure Act, 5 U.S.C. § 702.  Compl. ¶ 22.  The CSRA's comprehensive remedial scheme precludes the APA as a means of constitutionally challenge a federal employment matter as well.  *See Saul*, 928 F.2d at 842 n.23 (citing cases holding that the CSRA preempts APA claims); *Toro v. Napolitano*, 2013 WL 4102158, at *3 (S.D. Cal. Aug. 13, 2013) (citing *Weber v. Dep't of Vet. Affairs*, 521 F.3d 1061, 1067 (9th Cir. 2008)).

at 843 (affirming denial of federal employee's leave to amend to add injunctive relief for alleged constitutional violations as futile). This is because the "CSRA's elaborate remedies show that judicial interference in federal employment is disfavored, whether the employee requests damages or injunctive relief." *Id.*; *see also Lombardi v. SBA*, 889 F.2d 959, 962-63 (10th Cir. 1989) (The "clear purpose of [*Schweiker v. Chilicky*, 487 U.S. 412 (1988)] and the related cases is to virtually prohibit intrusion by the Courts into the [CSRA] scheme established by Congress. This judicial intervention is disfavored whether it is accomplished by the creation of a damages remedy or injunctive relief.").[2]

Even if Plaintiff's remedy under the CSRA is less robust than Plaintiff would prefer (*see* Compl. ¶ 10), it is still a remedy that Congress specifically chose for probationary employees: "Congress is the body charged with making the inevitable compromises required in the design of a massive and complex . . . program," and "courts should defer to the expertise of Congress in these matters." *Kotarski*, 866 F.2d at 312. And thus where Congress has created a comprehensive remedial structure to address federal administrative action, courts may not supplement that scheme with additional judicial remedies, *even for alleged constitutional violations*. *Chilicky*, 487 U.S. at 423-24.

Plaintiff's injunctive relief claims improperly seek to fabricate additional judicial remedies beyond those that Congress permitted in the CSRA. The Court lacks subject matter jurisdiction over such claims and should dismiss them. *See Toro*, 2013 WL 4102158, at *2 (dismissing probationary employee's constitutional injunctive claim as preempted by the CSRA); *Wilborn v. Napolitano*, 2013 WL 1222061, at *3-4 (S.D. Cal. Mar. 25, 2013) (same); *Munoz v. Locke*, 2013 WL 11319006, at *5 (W.D. Wash. Apr. 24, 2013), *aff'd*, 634 F. App'x 166 (9th Cir. 2015) (holding that a probationary employee's "constitutional claim for equitable relief [would be] precluded by the CSRA under . . . *Saul*" because she "had the ability to seek relief from the OSC"); *Gonzalez v. Manjarrez*, 2013 WL 152177, at

_____

[2] *Am. Fed. of Gov't Employees Local 1 v. Stone*, 502 F.3d 1027 (9th Cir. 2007), does not change this analysis. There, the Ninth Circuit sustained a district court's jurisdiction over equitable constitutional claims brought by a terminated probationary TSA screener because in light of the statute used to remove him, there were "no remedies available under the CSRA" and no "administrative forum in which to seek relief for their discharge." *Id.* at 1030, 1034, 1037. But here, Plaintiff has a mechanism to appeal Plaintiff's adverse personnel action and assert Plaintiff's constitutional claim—namely, filing a complaint with the OSC. Indeed, *Stone* distinguished *Saul* on that very basis, noting that the *Saul* employee "could have availed himself of alternative mechanisms to pursue his constitutional claim." *Id.*; *see Saul*, 928 F.2d at 838 (noting that the employee had a "means of redressing the constitutional injury he" alleged, including "request[ing] the OSC to investigate [it]").

*5 (W.D. Tex. Jan. 4, 2013) (dismissing probationary employee's constitutional injunctive claim because "the OSC complaint process may be used to vindicate the right to free speech under the First Amendment").

**b.      The Court lacks jurisdiction over Plaintiff's claims because Plaintiff has not exhausted administrative remedies.**

Plaintiff's claims fail for the additional reason that Plaintiff has not exhausted Plaintiff's administrative remedies.  Plaintiff sought OSC review of Plaintiff's termination on December 5, 2025. The OSC has 240 days—or until August 3, 2026—to review the determination and potentially petition the MSPB for review.  5 U.S.C. § 1214(b)(2)(A)(i).  Plaintiff, however, filed suit in a federal district court on February 23, 2026, short-circuiting the administrative process by several months.

The exhaustion requirement "serves important purposes.  It protects administrative agency authority[,] promotes judicial efficiency[, and] prevents litigants from bypassing Congress' carefully crafted remedial scheme." *Irizarry v. United States*, 427 F.3d 76, 79 (1st Cir. 2005).  Exhaustion also "permits the federal agency to correct the violation or to explain its decision" and "provides a method for resolving many employment disputes without turning them into federal cases." *Id.*  Thus, where (as here) a federal employee "has failed to exhaust the administrative remedies available to her under the CSRA, [the court] may not consider the merits of her CSRA . . . claims" due to lack of subject matter jurisdiction.  *Houlihan*, 909 F.2d at 384; *see also Irizzary*, 427 F.3d at 79-80 (affirming dismissal of federal employee's equitable claim for relief because "Congress intended that complaints . . . be directed to the OSC," and federal court review "is only available following the exhaustion of administrative remedies"); *Weaver v. U.S. Information Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996) ("Under the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit.").

Plaintiff appears to justify failing to exhaust Plaintiff's administrative remedies because Plaintiff lacked "a guaranteed path to appeal their termination to either MSPB or an Article III court" and was disappointed by "the lack of movement in [the] administrative proceeding."  Compl. ¶¶ 10, 71.  But "so long as effective remediation conceivably could have been achieved through the [CSRA's] administrative process, exhaustion was prerequisite." *Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir. 1992) (reversing district court and ordering dismissal of probationary employee's statutory and

constitutional claims for failure to exhaust).  Neither Plaintiff's counterfactual nor Plaintiff's impatience undermines black-letter law that failure to exhaust necessary administrative remedies "precludes judicial review of [her] allegations of improper agency action."  *Id.*; *see also Weaver*, 87 F.3d at 1434 (Plaintiff "also points to the uncertainties in the CSRA remedy—the possible delays and the dependence on a favorable exercise by the OSC of its discretion . . . .  But the delays seem no more than the normal concomitant of an exhaustion requirement—perhaps less, in view of the statute's deadline for OSC action.").

And there is one further problem with Plaintiff's claims: to the extent that any judicial review is available to probationary employees like Plaintiff once they have exhausted administrative remedies, it is exclusively with the Federal Circuit.  5 U.S.C. §§ 1214(c)(1), 7703(b)(2).  The federal district courts, including this Court, lack jurisdiction over probationary employee workplace disputes, and the Court should not entertain Plaintiff's suit now.  *Ayrault v. Pena*, 60 F.3d 346, 349 (7th Cir. 1995); *Chamat v. Paulson*, 2009 WL 764989, at *5 (S.D. Cal. Mar. 23, 2009).

**C.    Plaintiff's criminal-based claims should be dismissed.**

Against the DOJ Defendants—Attorney General Bondi, U.S. Attorney Grant, and the U.S. Attorney's Office—Plaintiff alleges that "Defendants' actions pursuing . . . criminal proceedings and punishment violate the First Amendment."  Compl. ¶¶ 75, 82; *see also* Compl. ¶ 95 (seeking declaratory relief premised in part on "Defendants' retaliatory criminal investigation . . . in violation of the First Amendment").  Plaintiff accordingly seeks to enjoin the DOJ Defendants "from criminally enforcing park regulations against Dr. Joslin for speech supportive of trans rights."  *Id.* Prayer ¶ a.  But that relief is not available to Plaintiff, and all claims against the DOJ Defendants must be dismissed.  Plaintiff does not plausibly allege any "criminal investigation" that could infringe Plaintiff's First Amendment rights.  Moreover, Plaintiff lacks standing to bring a pre-enforcement challenge, and that challenge is not ripe.  And as a general matter, Plaintiff has no right to equitable relief against the DOJ Defendants.

**1.    Plaintiff does not plausibly allege any "criminal investigation" that could conceivably infringe Plaintiff's First Amendment rights.**

"To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must offer 'more than labels and conclusions,' and instead contain 'enough factual matter' indicating 'plausible'

grounds for relief, not merely 'conceivable' ones." *Banks v. Northern Trust Corp.*, 929 F.3d 1046, 1055–56 (9th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555–56); *accord Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017) ("A sufficiently pleaded cause of action 'requires more than labels and conclusions,'" and "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" (quoting same)). Plaintiff's claims against the DOJ Defendants fail this standard and cannot survive a Rule 12(b)(6) motion to dismiss.

From first to last, the premise of Plaintiffs' claims against the DOJ Defendants is the existence of an ongoing "criminal investigation" targeting Plaintiff. *See, e.g.*, Compl. ¶ 1 (Plaintiff was "criminally investigated" for conduct in May of 2025); *id.* ¶ 61 (Plaintiff was informed to be "under criminal investigation"); *id.* ¶ 95 (alleging "retaliatory criminal investigation" against Plaintiff). But despite submitting 440 pages in support of a motion for preliminary injunction, Plaintiff provides no plausible grounds for thinking that any such investigation exists. Plaintiff alleges only three facts supporting the existence of a purported criminal investigation in two paragraphs of Plaintiff's memorandum:

- On May 28, 2025, "NPS told Dr. Joslin during an early in-person interview that they had initiated an active criminal investigation." ECF 29-1 at 5.

- In August of 2025, "NPS also told numerous media outlets that the agency, together with DOJ, was pursuing criminal penalties against the climbers." *Id.*

- "Defendants have never told Dr. Joslin that the existing investigation has concluded or that no charges would be brought." *Id.* at 19.

These facts fail to raise anything more than speculation, making the notion of a "criminal investigation" a mere label or conclusion that indicates no plausible ground for relief.

*First*, only "NPS" personnel made statements to Plaintiff or to the media. *See, e.g.*, ECF 29-3, at 198 (Associated Press article quoting "National Park Service spokesperson Rachel Pawlitz"); *id.* at 204 of 365 (NBC News article quoting "Rachel Pawlitz, a spokesperson for the NPS"); *id.* at 211 (Newsweek article quoting "NPS spokesperson Rachel Pawlitz"). Indeed, the sole reference to "the U.S. Attorney's Office for the Eastern District of California" came in NBC News's paraphrase of something that "Pawlitz said"). *Id.* at 204 (quoted at ECF 29-1 at 5).

*Second*, neither the DOJ Defendants nor their agents made the statements to Plaintiff. (The Court may take judicial notice of the fact that an NPS spokesperson is not an agent of the U.S. Attorney's

Office or of any DOJ official.)  Indeed, Plaintiff does not even allege—let alone adduce evidence—that the DOJ Defendants or their agents made any statements to anyone about this matter.

*Third*, Plaintiff has adduced <u>no</u> objective indicia of any criminal investigation:

- <u>no</u> interviews of Plaintiff or of anyone else by any agent or officer of the U.S. Department of Justice or its law enforcement components like the FBI;

- <u>no</u> search or seizure of the devices or other property of Plaintiff or of anyone else;

- <u>no</u> grand jury testimony or subpoena; and

- <u>no</u> overture by the U.S. Attorney's Office to Plaintiffs' counsel.

*Fourth*, the fact that DOJ Defendants have never told Plaintiff that an investigation has concluded or that no charges would be brought is meaningless when those Defendants never told Plaintiff that an investigation had commenced or that charges might be brought.

In sum, Plaintiff's allegation that "Defendants' position appears to be that Dr. Joslin's conduct broke the law and warranted criminal investigation" (ECF 29-1, at 19) is wholly conclusory and speculative as to the DOJ Defendants, offering a mere label or conclusion rather than a plausible ground for relief.  Because a "sufficiently pleaded cause of action requires more than" that, Plaintiff's claims against the DOJ Defendants cannot "survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Williams*, 851 F.3d at 1025; *Banks*, 929 F.3d at 1055.

> **2.      Plaintiff lacks standing to bring a pre-enforcement challenge, and that challenge is not ripe.**

Even if (contrary to fact) Plaintiff were the target of an ongoing criminal investigation by the DOJ Defendants, Plaintiff lacks standing to challenge that investigation, and Plaintiff's challenge is not ripe. *Cf. Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, 435 F. Supp. 3d 1063, 1081 (E.D. Cal. 2020) ("Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract." (quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010))).  Here, because Plaintiff is "not currently subject to an enforcement action" (i.e., a pending criminal prosecution), Plaintiff is "raising a pre-enforcement challenge to the regulations that [allegedly] restrict speech." *Id.*  In general, "pre-enforcement review is permissible 'under circumstances that rendered the threatened enforcement sufficiently imminent.'" *Id.* (quoting

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

Hence, for a pre-enforcement claim to be ripe, "the plaintiff must be subject to a genuine threat of *imminent* prosecution." *Id.* (emphasis in original; quoting *Wolfson*, 616 F.3d at 1058). Similarly, to have standing to bring a pre-enforcement claim, the plaintiff must show that "there is a credible threat that the challenged provision will be invoked against the plaintiff." *Id.* at 1082 (quoting *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1034 (9th Cir. 2006)). Indeed, Plaintiff concedes that Plaintiff must show that "there exists a credible threat of prosecution" under the applicable statute. ECF 29-1 at 18.

Distilling the case law in this area, *Stavrianoudakis* identified the kinds of evidence that would show a genuine or credible threat of imminent prosecution:

- "the government has indicted or arrested the plaintiffs";

- "a plaintiff was warned twice to stop [demonstrating] and was told by police that he would likely be prosecuted if he repeated the conduct";

- "the plaintiff's companion was prosecuted for engaging in similar conduct";

- a "history of past prosecution of parties similarly situated to the plaintiffs"; and

- the defendants "specifically warned [the plaintiff] that the challenged regulations would be enforced" against him.

*Stavrianoudakis*, 435 F. Supp. 3d at 1083-84. "On the other hand, 'general threat[s] by officials to enforce those laws which they are charged to administer' [do] not create the necessary injury in fact." *Id.* (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)); *id.* (noting that the Supreme Court denied standing in *Younger v. Harris*, 401 U.S. 37 (1971), to plaintiffs who "had not alleged that they had been threatened with prosecution, or that prosecution was even likely, but merely they felt 'inhibited' in advocating and teaching political ideas"). Finally, "[m]ere allegations of subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* (quoting *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010)).

Plaintiff here has adduced <u>no</u> evidence of the kind necessary to show a genuine or credible threat of imminent prosecution by the DOJ Defendants. To be sure, Plaintiff makes the conclusory statement that Plaintiff's "fear of prosecution is credible." ECF 29-1 at 27. But in this regard, Plaintiff relies

solely on the same statements by *agents of NPS* that are addressed in the previous section. Otherwise, Plaintiff merely alleges that "Defendants' actions have already and will continue to chill [Plaintiff's] freedom of speech and expression." Compl. ¶ 78. That allegation is not an adequate substitute for showing a genuine or credible threat, and thus Plaintiff lacks standing to bring a pre-enforcement challenge against the DOJ Defendants, and that challenge is not ripe.

**3.      Plaintiff has no right to equitable relief against the DOJ Defendants.**

As shown above, Plaintiff has not shown that Plaintiff is the target of an ongoing criminal investigation or that Plaintiff has standing. But even demonstrating both would not be enough here to obtain equitable relief against the DOJ Defendants because "[f]ederal courts traditionally have refused, except in rare instances, to enjoin federal criminal prosecutions." *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016); *see also Giles v. Garland*, 2024 WL 4556462, at *1 (6th Cir. Aug. 21, 2024) (applying *McIntosh*); *Trump v. United States*, 2022 WL 4366684, at *9 (11th Cir. Sept. 21, 2022) (same). And that formulation may understate the bar to equitable relief: "in no case that we have been able to discover has a federal court enjoined a federal prosecutor's investigation or presentment of an indictment"—that is to say, "subjects of federal investigation have never gained injunctive relief against federal prosecutors." *Deaver v. Seymour*, 822 F.2d 66, 69 (D.C. Cir. 1987).

In short, it "is a sound and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal." *Manafort v. U.S. Dep't of Justice*, 311 F. Supp. 3d 22, 26 (D.D.C. 2018). And Plaintiff would have such an opportunity, as "a federal defendant will be afforded an opportunity under Federal Rule of Criminal Procedure 12(b) to move to dismiss an indictment based on defects in the prosecution." *Id.* (citing *Deaver*, 822 F.2d at 70). Indeed, Rule 12(b)(3)(A) expressly authorizes "a motion alleging a defect in instituting the prosecution, including . . . (v) selective . . . prosecution," which is what Plaintiff alleges. *See, e.g.*, ECF 29-1 at 9 ("NPS fired Dr. Joslin and began civilly and criminally investigating them, in concert with the Department of Justice (DOJ). That selective punishment was viewpoint discrimination in violation of the First Amendment."); *id.* (alleging "the government's selective enforcement of its regulation against Dr. Joslin's display").

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS

14

The "First Amendment" provides no talismanic exception to these precepts, as thoughtfully explained in *Peters v. United States*, 2024 WL 2274079 (D. Colo. May 20, 2024).  The plaintiff in that case, similar to Plaintiff here, argued that "she has no adequate remedy at law because (a) even a temporary loss of a First Amendment right constitutes an irreparable injury, and (b) she is not required to await a subsequent judicial proceeding to vindicate her right."  *Id.* at *6.  But the cases on which the plaintiff relied—principally *Dombrowski v. Pfister*, 380 U.S. 479 (1965)—are readily distinguishable: "*Dombrowski* involved *state* prosecution under statutes regulating expression that were challenged as *facially overbroad and vague.*"  *Id.* (emphasis added).  The putative prosecution here is a *federal* one, and neither in the complaint nor in the motion for preliminary injunction does Plaintiff challenge the governing regulation as "overbroad" or "vague."  To the contrary, Plaintiff effectively concedes that the regulation is not facially infirm for overbreadth or vagueness, only that it is selectively enforced.  *See, e.g.*, ECF 29-1 at 17 (complaining about "selectively enforc[ing] a facially neutral policy").

Moreover, "the availability of post-indictment, pre-trial First Amendment defenses under Fed. R. Crim. P. 12 provides [Plaintiff] with an adequate remedy, thereby precluding this Court's equitable jurisdiction."  *Peters*, 2024 WL 2274079, at *7.  As discussed above, that rule expressly "afford[s] defendants, after indictment, a federal forum in which to assert their defenses—including those based on the Constitution."  *Id.* (quoting *Deaver*, 822 F.2d at 69).  That forum is precisely this Court, which can act swiftly to protect any (hypothetical) violation of Plaintiff's First Amendment right to be free of a selective prosecution—if a prosecution is ever brought.

For these three independent reasons, Plaintiff's claims against the DOJ Defendants must be dismissed.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff's complaint should be dismissed.

Dated:  April 30, 2026                                          Respectfully submitted,

ERIC GRANT
United States Attorney

By:    /s/ *Rachel R. Davidson*
Rachel Davidson
Assistant United States Attorney
Attorneys for Defendants