ERIC GRANT
United States Attorney
Rachel R. Davidson
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
E-mail:      Rachel.davidson@usdoj.gov
Telephone: (916) 554-2731

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. SHANNON "SJ" JOSLIN,<br><br>                Plaintiff,<br><br>          v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, et. al.<br><br>                Defendants. | No. 1:26-CV-02029-JLT-FJS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: June 12, 2026<br>Time: 9:00 a.m.<br>Location: Courtroom 4, 7th floor<br>Judge: Hon. Jennifer L. Thurston |

## TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND ............................................................................................................1

    A.    NPS's governing regulations and El Capitan...................................................1

    B.    Escalating flag demonstrations on El Capitan. ...............................................2

    C.    Plaintiff's unauthorized demonstration............................................................3

    D.    Plaintiff's termination. ...................................................................................3

    E.    Procedural background. ..................................................................................4

III.  LAW AND ANALYSIS ................................................................................................4

    A.    Standard for mandatory preliminary injunction..............................................4

    B.    Plaintiff cannot show irreparable harm absent a mandatory preliminary injunction. ......................................................................................................5

    C.    The law and facts do not *clearly favor* Plaintiff's position or establish likelihood of success on the merits of Plaintiff's employment-based claims.....................7

        1.    The Court lacks jurisdiction over Plaintiff's equitable constitutional claims. ........................................................................................7

            a.    The CSRA requires Plaintiff to channel constitutional claims through the OSC only. ...............................................................8

            b.    The Court lacks jurisdiction over Plaintiff's claims due to failure to exhaust administrative remedies. .............................................10

        2.    Plaintiff's selective punishment claims against the employer Defendants fail. ....................................................................................................11

            a.    None of the proffered comparators is similarly situated to Plaintiff. ..........................................................................................12

            b.    Plaintiff's termination was not motivated by impermissible viewpoint discrimination. ..........................................................13

        3.    The *Pickering/Eng* factors for First Amendment retaliation claims favor Defendants. ...............................................................................15

    D.    The law and facts do not *clearly favor* Plaintiff's position or establish likelihood of success on the merits on Plaintiff's criminal-based claims...........................17

        1.    Plaintiff does not plausibly allege any "criminal investigation" that could infringe First or Fifth Amendment Rights. .............................................18

      **2.**     Plaintiff lacks standing to bring a pre-enforcement challenge, and that challenge is not ripe. ...................................................................................19

      **3.**     Plaintiff has no right to equitable relief against the DOJ Defendants....................20

  E.     The balance of equities and the public interest weigh against an injunction.....................22

IV.    CONCLUSION...............................................................................................................22

# TABLE OF AUTHORITIES

**Citation**                                                                                     **Page(s)**

**Federal Cases**

*Adams v. Cnty. of Sacramento*,
   143 F.4th 1027 (9th Cir. 2025) ................................................................................ 15

*AFGE Loc. 1 v. Stone*,
   502 F.3d 1027 (9th Cir. 2007) .................................................................................. 9

*Ayrault v. Pena*,
   60 F.3d 346 (7th Cir. 1995) .................................................................................... 11

*Alatus Aerosys. v. Velazquez*,
   2019 WL 7166987 (C.D. Cal. Oct. 2, 2019) ............................................................ 5

*Baird v. Bonta*,
   81 F.4th 1036 (9th Cir. 2023) .................................................................................. 6

*Bante v. Merit Sys. Prot. Bd.*,
   966 F.2d 647 (Fed. Cir. 1992) ................................................................................ 13

*Barone v. City of Springfield*,
   902 F.3d 1091 (9th Cir. 2018) ................................................................................ 16

*Barroca v. Hayward Area Recreation & Parks Dist.*,
   2026 WL 497399 (N.D. Cal. Feb. 23, 2026) .......................................................... 12

*Bogren v. Minnesota*,
   236 F.3d 399 (8th Cir. 2000) .................................................................................. 13

*Cal. Chamber of Comm. v. Council for Educ. & Rsch. on Toxics*,
   29 F.4th 468 (9th Cir. 2022) .................................................................................... 6

*Caribbean Marine Servs. Co., Inc. v. Baldrige*,
   844 F.2d 668 (9th Cir.1988) .................................................................................... 6

*Chamat v. Paulson*,
   2009 WL 764989 (S.D. Cal. Mar. 23, 2009) .......................................................... 11

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................................................. 6

*Clark v. Cmty. for Creative Non-Violence*,
   468 U.S. 288 (1984) ............................................................................................... 16

*Coleman v. Ridge*,
   2008 WL 108895 (N.D. Cal. Jan. 8, 2008) .............................................................. 9

*Cornelius v. NAACP Legal Defense & Educational Fund Inc.*,
   473 U.S. 788 (1985) ............................................................................................... 17

*D'Angelo v. Winter*,
  403 F. App'x 181 (9th Cir. 2010) .................................................................................................. 9

*Davis v. Billington*,
  51 F. Supp. 3d 97 (D.D.C. 2014) ................................................................................................ 10

*Day v. Sears Holdings Corp.*,
  930 F. Supp. 2d 1146 (C.D. Cal. 2013) ...................................................................................... 14

*Deaver v. Seymour*,
  822 F.2d 66 (D.C. Cir. 1987) ...................................................................................................... 21

*Decotiis v. Whittemore*,
  635 F.3d 22 (1st Cir. 2011) ......................................................................................................... 17

*Doe v. Harris*,
  772 F.3d 563 (9th Cir. 2014) ........................................................................................................ 6

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965) .................................................................................................................... 21

*Dumas v. New United Motor Mfg., Inc.*,
  305 F. App'x 445 (9th Cir. 2008) ............................................................................................... 14

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) ...................................................................................................................... 7, 8

*Elmore v. New Albertson's, Inc.*,
  2012 WL 3542537 (C.D. Cal. Aug. 15, 2012) ........................................................................... 14

*Eng v. Cooley*,
  552 F.3d 1062 (9th Cir. 2009) ............................................................................................... 15, 16

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
  82 F.4th 664 (9th Cir. 2023) ......................................................................................................... 6

*Ferry v. Hayden*,
  954 F.2d 658 (11th Cir. 1992) ..................................................................................................... 11

*Foster v. Credit One Bank, N.A.*,
  2024 WL 4625291 (9th Cir. Oct. 30, 2024) ................................................................................ 14

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ........................................................................................................ 5

*Gilbrook v. City of Westminster*,
  177 F.3d 839 (9th Cir. 1999) ....................................................................................................... 15

*Giles v. Garland*,
  2024 WL 4556462 (6th Cir. Aug. 21, 2024) ............................................................................... 20

*Gonzalez v. Manjarrez*,
  2013 WL 152177 (W.D. Tex. Jan. 4, 2013) .................................................................................. 9

*Houlihan v. OPM*,
   909 F.2d 383 (9th Cir. 1990) .................................................................................................. 10

*Irizarry v. United States*,
   427 F.3d 76 (1st Cir. 2005) .................................................................................................... 10

*Johnson v. Poway Unified Sch. Dist.*,
   658 F.3d 954 (9th Cir. 2011) .................................................................................................. 16

*Kotarski v. Cooper*,
   866 F.2d 311 (9th Cir. 1989) ............................................................................................. 8, 10

*Liu v. Colvin*,
   2013 WL 1729800 (N.D. Cal. Apr. 22, 2013) ....................................................................... 13

*Lombardi v. SBA*,
   889 F.2d 959 (10th Cir. 1989) .................................................................................................. 8

*Lopez v. Candaele*,
   630 F.3d 775 (9th Cir. 2010) .................................................................................................. 20

*Lydo Enters., Inc. v. City of Las Vegas*,
   745 F.2d 1211 (9th Cir. 1984) .................................................................................................. 5

*Lyons v. City of Los Angeles*,
   461 U.S. 95 (1983) ..................................................................................................................... 6

*Manafort v. U.S. Dep't of Justice*,
   311 F. Supp. 3d 22 (D.D.C. 2018) .......................................................................................... 21

*Mangano v. United States*,
   529 F.3d 1243 (9th Cir. 2008) .................................................................................................. 7

*Mercer v. City of Cedtr Rapids*,
   308 F.3d 840 (8th Cir. 2002) .................................................................................................. 13

*Munaf v. Geren*,
   553 U.S. 674 (2008) .................................................................................................................... 4

*Munoz v. Locke*,
   2013 WL 11319006 (W.D. Wash. Apr. 24, 2013) .................................................................... 9

*Munoz v. Locke*,
    634 F. App'x 166 (9th Cir. 2015) ............................................................................................. 9

*Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*,
   848 F.2d 1273 (D.C. Cir. 1988) .............................................................................................. 13

*Neumeyer v. Wawanesa Gen. Ins. Co.*,
   2015 WL 1924981 (S.D. Cal. Apr. 24, 2015) .......................................................................... 14

*Oakland Tribune, Inc. v. Chronicle Publishing Co.*,
   762 F.2d 1374 (9th Cir.1985) .................................................................................................... 5

*Peters v. United States*,
　2024 WL 2274079 (D. Colo. May 20, 2024)............................................................................. 21

*Pickering v. Bd. of Educ.*,
　391 U.S. 563 (1968)........................................................................................... 13, 15, 16

*Pinkston v. Moore*,
　2017 WL 2766431 (C.D. Cal. June 23, 2017) ................................................................. 12

*Pinkston v. Moore*,
　2017 WL 2772107 (C.D. Cal. Mar. 15, 2017) ................................................................. 12

*Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*,
　699 F.3d 962 (7th Cir. 2012) .......................................................................................... 22

*Poorsina v. MSPB*,
　726 F.2d 507 (9th Cir. 1984) ............................................................................................. 8

*Rendish v. City of Tacoma*,
　123 F.3d 1216 (9th Cir. 1997) ........................................................................................... 6

*Rosenbaum v. City & Cnty. of S.F.*,
　484 F.3d 1142 (9th Cir. 2007) ......................................................................................... 12

*Russell v. U.S. Dep't of the Army*,
　191 F.3d 1016 (9th Cir. 1999) ........................................................................................... 7

*Sam Yang (U.S.A.), Inc. v. Samyang Foods Co., Ltd.*,
　2016 WL 8999842 (C.D. Cal. July 29, 2016)................................................................... 5

*Sampson v. Murray*,
　415 U.S. 61 (1974).............................................................................................................. 5

*Santa Monica Food Not Bombs v. City of Santa Monica*,
　450 F.3d 1022 (9th Cir. 2006) ........................................................................................ 19

*Saul v. United States*,
　928 F.2d 829 (9th Cir. 1991) ......................................................................................... 8, 9

*Schweiker v. Chilicky*,
　487 U.S. 412 (1988)......................................................................................................... 10

*Scott v. Mabus*,
　618 F. App'x 897 (9th Cir. 2015) .................................................................................... 13

*Stannard v. State Ctr. Cmty. Coll. Dist.*,
　2025 WL 2808435 (E.D. Cal. Oct. 2, 2025)...................................................... 11, 12, 14, 15

*Stannard v. State Ctr. Cmty. Coll. Dist*,
　733 F. Supp. 3d 946 (E.D. Cal. 2024)................................................................................ 6

*Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*,
　435 F. Supp. 3d 1063 (E.D. Cal. 2020)..................................................................... 19, 20

*Steik v. Garcia*,
   2003 WL 22992223 (N.D. Cal. Dec. 9, 2003) ................................................................ 13

*Steinhauer v. DeGolier*,
   359 F.3d 481 (7th Cir. 2004) ...................................................................................... 13

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ...................................................................................................... 19

*Textile Unlimited v. A..BMH & Co.*,
    240 F.3d 781 (9th Cir. 2001) ........................................................................................ 4

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) .................................................................................... 20

*Thomas v. Chicago Park District*,
   534 U.S. 316 (2002) ...................................................................................................... 16

*Toro v. DHS*,
   2013 WL 4102158 (S.D. Cal. Aug. 13, 2013) ................................................................ 9

*Trump v. United States*,
   2022 WL 4366684 (11th Cir. Sept. 21, 2022) .......................................................... 20, 21

*United States v. Fausto*,
   484 U.S. 439 (1988) ........................................................................................................ 7

*United States v. McIntosh*,
   833 F.3d 1163 (9th Cir. 2016) .................................................................................... 20

*Waln v. Dysart School District*,
   54 F.4th 1152 (9th Cir. 2022) ...................................................................................... 11

*Way.com, Inc. v. Singh*,
   2018 WL 6704464 (N.D. Cal. Dec. 20, 2018) ................................................................ 5

*Weaver v. U.S. Info. Agency*,
   87 F.3d 1429 (D.C. Cir. 1996) ................................................................................ 10, 11

*White v. Home Depot U.S.A. Inc.*,
    2019 WL 1171163 (S.D. Cal. Mar. 13, 2019) ............................................................ 14

*Wilborn v. Napolitano*,
   2012 WL 354494 (S.D. Cal. Feb. 2, 2012) .................................................................... 9

*Wilborn v. Napolitano*,
   2013 WL 1222061 (S.D. Cal. Mar. 25, 2013) ............................................................ 10

*Wolfson v. Brammer*,
   616 F.3d 1045 (9th Cir. 2010) .................................................................................... 19

*Youlin Wang v. Kahn*,
   2020 WL 6891834 (N.D. Cal. Nov. 24, 2020) .............................................................. 5

*Younger v. Harris,*
  401 U.S. 37 (1971)................................................................................................................ 20

**Federal Statutes**

5 U.S.C. § 552a .......................................................................................................................... 4

5 U.S.C. § 1214....................................................................................................... 7, 8, 10, 11

5 U.S.C. § 7511 .......................................................................................................................... 7

5 U.S.C. § 7512 .......................................................................................................................... 7

5 U.S.C. § 7513 .......................................................................................................................... 7

5 U.S.C. § 7703 ............................................................................................................... 7, 8, 11

28 U.S.C. § 1295 ........................................................................................................................ 7

54 U.S.C. § 100101 .................................................................................................................... 2

54 U.S.C. § 100751 .................................................................................................................... 2

**Federal Regulations**

5 C.F.R. § 315.803 ..................................................................................................................... 3

5 C.F.R. § 1800.2 ....................................................................................................................... 7

36 C.F.R. § 2.51 ..................................................................................................................... 2, 3

90 Fed. Reg. 26727-28 (June 24, 2025)................................................................................... 3

**Federal Rules**

Fed. R. Crim. P. 12 ................................................................................................................. 21

**Other**

NPS Organic Act, ch. 408, § 1, 39 Stat. 535 (1916)............................................................... 2

## I.   INTRODUCTION

This case does not arise from punishment for protected speech.  It arises because Plaintiff, a former National Park Service (NPS) probationary employee, chose to violate an NPS regulation to convey Plaintiff's message instead of choosing one of the myriad permissible avenues to convey the same message.  Plaintiff's unlawful conduct—not Plaintiff's speech—resulted in Plaintiff's termination as a probationary employee.  Plaintiff now seeks the extraordinary remedy of a mandatory preliminary injunction asking this Court to override settled law and established administrative processes.  And Plaintiff's purported "emergency" relief comes *more than six months* after Plaintiff's removal from federal service.

Plaintiff's case fails at the threshold.  Constitutional and equitable challenges to federal employment actions must proceed through the Civil Service Reform Act's comprehensive scheme—not through a collateral attack in district court.  That bar is dispositive.  Jurisdictional issues aside, Plaintiff cannot show any likelihood of success.  Plaintiff's selective-punishment theory collapses under its own weight: Plaintiff was a probationary employee terminated for violating a law that literally governs Plaintiff's workplace, and Plaintiff identifies no similarly situated probationary employee who engaged in comparable misconduct and was treated differently.

Plaintiff's attempt to manufacture a parallel claim against Department of Justice officials fares no better.  Plaintiff has suffered no criminal penalty or been charged with any crimes, nor is there any evidence whatsoever that Plaintiff will likely be charged with any crimes in the future.  Plaintiff's claimed fear of prosecution is speculative and legally insufficient to support standing, let alone extraordinary mandatory injunctive relief.  Courts virtually never enjoin federal prosecutions, and they never enjoin hypothetical prosecutions untethered to any concrete enforcement action.

In short, Plaintiff's Motion seeks emergency relief not to prevent irreparable harm, but to undo the consequences of Plaintiff's unlawful conduct.  Because Plaintiff cannot establish jurisdiction, likelihood of success, or cognizable injury, a preliminary injunction should be denied.

## II.   BACKGROUND

### A.   NPS's governing regulations and El Capitan.

Contrary to Plaintiff's narrative, the relevant history of the National Park Service and El Captain

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION      1

is not one of unregulated political expression, but rather consistent regulatory authority exercised when circumstances warrant enforcement.

In 1916, Congress established NPS as an agency within the Department of Interior ("DOI"). NPS Organic Act, ch. 408, § 1, 39 Stat. 535 (1916).  NPS's "purpose is to conserve" and "provide for the enjoyment of the scenery, natural and historic objects, and wild life" on NPS land in ways that leave the land "unimpaired for the enjoyment of future generations."  54 U.S.C. § 100101(a).

To fulfill that mandate, NPS regulates public activity at its national parks through content-neutral rules governing demonstrations.  54 U.S.C. § 100751; 36 C.F.R. § 2.51.  Those regulations require permits and limit demonstrations to designated areas, which are selected using policy-based criteria including protection of park resources, visitor experience, and public safety.  Declaration of Raymond McPadden ¶¶ 4-5 ("McPadden Decl."); 36 C.F.R. § 2.51 (c).

El Capitan is *not* a designated demonstration area.  As Yosemite National Park's most iconic and environmentally sensitive feature—sacred to local Native American tribes and visible to thousands of visitors at once during the high season—NPS has determined that demonstrations on its face pose safety and conservation risks requiring its exclusion from the list of park areas designated for demonstrations. McPadden Decl. ¶ 6.  At the same time, NPS has designated numerous alternative locations within Yosemite for expressive activity, ensuring ample channels for speech.  *Id*. at ¶ 4; 36 C.F.R. § 2.51.

**B.      Escalating flag demonstrations on El Capitan.**

Yosemite has a long tradition of climbers, hikers, and Park visitors marking personal achievements by displaying small flags—usually 3' x 5' or smaller—bearing individual messages or organizational insignia, including on El Capitan.  McPadden Decl. ¶ 7.  In the vastness of Yosemite, such small displays are barely visible and have not posed meaningful safety risks, unreasonably impaired the peace and tranquility of the wilderness, or unreasonably interfered with visitor services or Park operations.  *Id.*

Beginning in 2024, however, Yosemite experienced a sharp escalation in large-scale banner demonstrations on El Capitan.  For example, on June 18, 2024, demonstrators unfurled a 25' x 15' banner bearing the message "Stop the Genocide."  *Id.* ¶ 8.  Yosemite began revising its Superintendent's Compendium shortly thereafter to clarify restrictions on flag size and demonstrations.  *Id.*

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION      2

Approximately eight months later, an even larger flag—approximately 30' x 50'—was hung from the face of El Capitan as thousands of Park visitors gathered to stare up at the monolith to observe the annual "firefall" phenomenon.  *Id.* ¶ 9.

### C.    Plaintiff's unauthorized demonstration.

On May 20, 2025, Plaintiff—a probationary NPS wildlife biologist—coordinated and participated in a planned demonstration on El Capitan, unfurling a massive flag without a permit and in a prohibited location.  ECF 29-1 at 4-5.  Plaintiff's demonstration represented the most alarming escalation yet, with demonstrators unfurling a flag that was approximately 70' wide.  McPadden Decl. ¶ 10.  It is undisputed that the display occurred outside designated areas and without authorization.

Moreover, Plaintiff's conduct was not inadvertent or incidental.  By Plaintiff's own account, the demonstration was planned to convey a public message and to generate visibility through photographs and media coverage.  ECF 29-1 at 5; Compl. ¶¶ 40-46, 52, 54; Joslin Decl., ECF 29-4, at ¶¶ 11-26 & Ex. B (press release).  Plaintiff subsequently amplified that message through interviews, social media, and other public-facing platforms, drawing attention to the display and Plaintiff's role in it.  *Id.*; *see also* https://www.instagram.com/reel/DJ-dYmnSs3X/;https://www.facebook.com/SFChronicle/posts/a-group-of-climber-activists-has-just-hung-a-large-trans-pride-flag-in-the-middl/1180025150835560/.

The incident prompted multiple visitor complaints, underscoring two of the very harms that the regulations were designed to prevent: disruption of visitor experience and interference with park management.  McPadden Decl. ¶ 10.

### D.    Plaintiff's termination.

NPS terminated Plaintiff for reasons having nothing to do with Plaintiff's speech.  Declaration of Danika Globokar ¶¶ 3-8 ("Globokar Decl.").  At the time of the incident, Plaintiff was not merely a private citizen, but a probationary NPS employee entrusted with protecting park resources.  *Id*. at ¶¶ 4-5.  Yet Plaintiff deliberately violated 36 C.F.R. § 2.51, which is specifically aimed at protection of park resources, visitor experience, and public safety.  *Id.*

Probationary employees are evaluated on judgment, professionalism, and adherence to agency mission, and may be removed without the protections afforded to tenured employees.  *Id.*; *see also* 5 C.F.R. § 315.803; 90 Fed. Reg. 26727-28 (June 24, 2025).  NPS management believed that Plaintiff's

conduct raised serious concerns in those areas. Globokar Decl. ¶¶ 4-5. An employee entrusted with adhering to park regulations and safeguarding wilderness resources must demonstrate respect for those regulations and the agency's conservation mission. *Id.* at ¶ 5. When an employee publicly participates in conduct that violates those same regulations, it reasonably calls into question the employee's judgment and ability to credibly perform necessary duties. *Id.*

Those concerns were amplified here. Yosemite has millions of visitors each year, and El Capitan is among the most recognized natural landmarks in the United States. *Id.* at ¶ 6. A publicized demonstration—especially one this large, involving a federal park employee—could reasonably be perceived by the public as condoned by the agency or as evidence that park regulations are optional. *Id.*

### E.    Procedural background.

Plaintiff filed a complaint with the OSC on December 5, 2025, alleging that Plaintiff's termination constituted a "prohibited personnel practice." Compl. ¶¶ 10, 20. As Plaintiff acknowledges, the OSC has 240 days—or until August 3, 2026—to respond. Compl. ¶ 71.

But instead of awaiting the OSC's response, Plaintiff filed a complaint and motion for preliminary injunction on February 23, 2026, in the District of Columbia. The case was transferred here on February 24, 2026, and on March 31, Plaintiff filed an Amended Complaint (ECF No. 28) and Motion for Preliminary Injunction (ECF No. 29-1). The Amended Complaint alleges First and Fifth Amendment violations (Counts I and II) and violations of the Privacy Act, 5 U.S.C. § 552a(e)(7) (Counts III). ECF No. 28 at 18-21.

## III.    LAW AND ANALYSIS

### A.    Standard for mandatory preliminary injunction.

A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren,* 553 U.S. 674, 690-91 (2008). Plaintiff must demonstrate that (1) she is "likely to succeed on the merits"; (2) she is "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) that "an injunction is in the public interest." *Id.*

The purpose of a preliminary injunction is generally to preserve the status quo pending full adjudication of a movant's claims on the merits. *Textile Unlimited v. A..BMH & Co.,* 240 F.3d 781,786 (9th Cir. 2001). Plaintiff, however, seeks a "mandatory" injunction for reinstatement and enjoining

future criminal enforcement, which would alter, rather than preserve, the status quo.  ECF 29-1 at 20.  Such an injunction "goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored" because it "require[s]" the defendant "to take affirmative action."  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  When a plaintiff "seeks a mandatory injunction, she must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed."  *Id.* at 740.  Plaintiff cannot meet this exacting standard.

**B.        Plaintiff cannot show irreparable harm absent a mandatory preliminary injunction.**

Plaintiff's failure to show irreparable harm is dispositive.  Preliminary injunctions presume an urgent need for speedy action to protect a party's rights.  *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir. 1984).  But Plaintiff waited more than six months after Plaintiff's termination—and almost nine months after learning of a purported criminal "investigation"—before seeking relief.  ECF No. 29-4, Joslin Decl. ¶ 29-30; 36-37.  Such delay in itself "implies a lack of urgency and irreparable harm."  *See Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1377 (9th Cir.1985); *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (three-month delay "undercut [plaintiff]'s claim of irreparable harm"); *Youlin Wang v. Kahn*, 2020 WL 6891834, at *2 (N.D. Cal. Nov. 24, 2020) (plaintiff did not make a "clear showing that he is likely to face immediate and irreparable harm in the absence of a TRO" by delaying two months); *Alatus Aerosys. v. Velazquez*, 2019 WL 7166987, at *2 (C.D. Cal. Oct. 2, 2019) (denying TRO due to one-month delay); *Way.com, Inc. v. Singh*, 2018 WL 6704464, at *12 (N.D. Cal. Dec. 20, 2018) ("long" three-month delay indicated no irreparable harm); *Sam Yang (U.S.A.), Inc. v. Samyang Foods Co., Ltd.*, 2016 WL 8999842, at *2-3 (C.D. Cal. July 29, 2016) (three-month delay warranted denying the TRO application).

Plaintiff's claimed harm also is not "irreparable."  In government personnel cases, like this one, irreparable harm exists only where "the circumstances surrounding an employee's discharge, together with the resultant effect on [her] . . . so far depart from the normal situation that irreparable injury might be found."  *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).  This is not such a case: Plaintiff was a probationary employee terminated for violating the law—precisely the "normal situation" where injunctive relief is unavailable.  *Id.*  And Plaintiff's claim of a constitutional violation does not change that fact, as alleged constitutional deprivations are routinely addressed through the CSRA's

administrative process.  *See* Section III.C, *infra*.

Plaintiff cannot manufacture irreparable harm by alleging past constitutional injury.  Irreparable injury must be prospective.  *Lyons v. City of Los Angeles,* 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").  For this reason, "no presumption of irreparable harm arises in a First Amendment retaliation claim." *Rendish v. City of Tacoma*, 123 F.3d 1216, 1226 (9th Cir. 1997).

Plaintiff relies on past harm and has not proven an imminent threat of future harm.  Amorphous "fears of prosecution" or future "collateral consequences from government enforcement" do not show a "real or immediate threat" that Plaintiff will be wronged again.  *Caribbean Marine Servs. Co., Inc. v. Baldrige,* 844 F.2d 668, 674 (9th Cir.1988) (to establish irreparable harm, plaintiffs "must do more than merely allege imminent harm sufficient to establish standing; [they] must *demonstrate* immediate threatened injury").  This is particularly true here.  Plaintiff neither challenges the applicable content-neutral law nor provides any concrete plans specifying how Defendants will likely violate Plaintiff's future rights.  *Stannard v. State Ctr. Cmty. Coll. Dist*, 733 F. Supp. 3d 946, 961-65 (E.D. Cal. 2024) (Thurston, J.); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, 417-18 (2013).[1]  Indeed, Plaintiff's continuing to speak publicly and prominently about the incident[2] refutes any imminent future harm.

///

---

[1] Plaintiff argues that a constitutional deprivation will "almost always" show irreparable harm.  ECF 29-1 at 20.  Unlike *Rendish*, however, Plaintiff's cited cases do not involve alleged First Amendment retaliation.  Three involved challenges to governing statutes that were likely to infringe on future rights.  *Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) (ban on open-carrying firearms); *Cal. Chamber of Comm. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022) (requiring businesses to display warnings); *Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) (placing restrictions on sex offenders who had completed probation or parole).  Another involved a revocation of a student club, which would necessarily infringe exercise of future constitutional rights. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664 (9th Cir. 2023).

[2] *See e.g.*, https://www.instagram.com/reel/DOJKaNAkdfY/; https://www.outsideonline.com/outdoor-adventure/climbing/fired-nps-joslin/; https://www.facebook.com/indivisiblesantacruzcounty/videos/no-kings-20-speaker-today-shannon-sj-joslin-theythem-population-geneticist-and-f/818562267529601/; https://www.instagram.com/reel/DNlXu_xvTxR/?hl=en.

**C.**     **The law and facts do not *clearly favor* Plaintiff's position or establish likelihood of success on the merits of Plaintiff's employment-based claims.**

**1.**     **The Court lacks jurisdiction over Plaintiff's equitable constitutional claims.**

The Civil Service Reform Act (CSRA) governs employment-related disputes between federal employees and their employing agencies.  The CSRA's expansive provisions regulate virtually every aspect of federal employment, including adverse actions and employee grievances.  *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012).  Its "remedial scheme is both exclusive and preemptive" and "prescribes in great detail the protections and remedies applicable, including the availability of judicial review." *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008); *United States v. Fausto*, 484 U.S. 439, 443 (1988).  The "comprehensive nature of the procedures and remedies provided by the CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA or not at all." *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999).

CSRA Chapter 75 governs adverse actions—including termination—against tenured employees. *See* 5 U.S.C. §§ 7511, 7512.  A tenured employee may appeal the personnel action directly to the Merit Systems Protection Board (MSPB) and then seek review in the Federal Circuit.  5 U.S.C. § 7513(d), 28 U.S.C. § 1295(a)(9).  This review scheme is "exclusive, even for employees who bring constitutional challenges to federal statutes." *Elgin*, 567 U.S. at 12-13.

Congress, however, deliberately excluded probationary employees like Plaintiff from the definition of "employee" in CSRA Chapter 75, and thus they cannot pursue the same remedies as tenured employees.  *See* 5 U.S.C. § 7511(a)(1)(A).  Instead, probationary employees must seek Office of Special Counsel (OSC) review of an alleged "prohibited personnel practice."  5 U.S.C. § 1214(a)(1)(A), 5 C.F.R. § 1800.2(c).  The OSC has 240 days to "determin[e] whether there are reasonable grounds to believe that a prohibited personnel practice has occurred."  5 U.S.C. § 1214(b)(2)(A)(i).  If the OSC so determines, it must report the determination, with any findings or recommendations, to the MSPB, the agency, and the Office of Personnel Management (OPM).  5 U.S.C. § 1214(b)(2)(B).

The OSC may then attempt to broker a solution with the agency or petition the MSPB for corrective action on behalf of the probationary employee.  5 U.S.C. § 1214(b)(2)(B), (C).  After giving the aggrieved individual an opportunity to submit written comments, the MSPB will order corrective

action if it determines that the OSC has shown a prohibited personnel practice occurred.  5 U.S.C. §§ 1214(b)(3)(B), (4)(A).  Once the MSPB reaches a final decision, the probationary employee has 60 days to petition for review in the Federal Circuit.  5 U.S.C. §§ 1214(c)(1); 7703(b)(1)(A).

Even if Plaintiff raises constitutionally based challenges to Plaintiff's termination, the CSRA still requires that they be funneled through the OSC.  And even more basically, the CSRA requires Plaintiff to let the administrative process resolve.  Plaintiff did not do that, and thus this Court lacks jurisdiction to award *any* relief, including a mandatory preliminary injunction.

### a. The CSRA requires Plaintiff to channel constitutional claims through the OSC only.

Plaintiff asserts illegal termination and demands reinstatement.  But Congress intended that the "exclusive avenue" for review of federal employee personnel actions be the CSRA's remedial structure. *Elgin*, 567 U.S. at 5; *Poorsina v. MSPB*, 726 F.2d 507, 509 (9th Cir. 1984).  That is true even if, as here, a federal employee casts an employment dispute as a constitutional violation. *Id*. at 11-13; *see also id.* at 22 (because plaintiffs' "constitutional claims are the vehicle by which they seek to reverse the removal decision," their claims constituted "a challenge to CSRA-covered employment action brought by CSRA-covered employees requiring relief that the CSRA routinely affords"); *Saul v. United States*, 928 F.2d 829, 834 (9th Cir. 1991) (in enacting the CSRA, "Congress did expect 'prohibited personnel practices' to cover supervisors' violations of employees' constitutional and privacy rights").

As a result, the Ninth Circuit has rejected probationary employees' attempts to assert constitutional tort claims in a district court.  *See Saul*, 928 F.2d at 840; *Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir. 1989).  It also has rejected common-law damages remedies.  *Saul*, 928 F.2d at 843. And while Plaintiff only seeks injunctive relief with respect to Plaintiff's constitutional claims, the "CSRA precludes [a probationary employee] from seeking injunctive relief for his asserted constitutional injury just as it precludes him from bringing a *Bivens* action for damages."  *Saul*, 928 F.2d at 843 (affirming denial of probationary employee's leave to amend to add injunctive relief for alleged constitutional violations as futile).  This is because the CSRA's elaborate remedies show that judicial interference in federal employment is disfavored, whether the employee requests damages or injunctive relief."  *Id.*; *see also Lombardi v. SBA*, 889 F.2d 959, 962-63 (10th Cir. 1989) (The CSRA

"virtually prohibit[s] intrusion by the Courts into the statutory scheme established by Congress. This judicial intervention is disfavored whether it is accomplished by the creation of a damages remedy or injunctive relief."). Following these principles, courts have repeatedly held that the CSRA precludes probationary employees' constitutional injunctive claims based on the availability of the OSC complaint process.[3]

Plaintiff complains that the OSC complaint process "does not include a guaranteed path to judicial review," and thus probationary employees must be able to assert their constitutional claims in district court. ECF 29-1 at 14. But as the foregoing authorities show, there is no requirement that a federal employee have a "guaranteed path to judicial review"—they need only be provided with a remedy, and the OSC complaint process suffices.

None of Plaintiff's authorities suggests otherwise. *AFGE Loc. 1 v. Stone*, 502 F.3d 1027 (9th Cir. 2007), and *Coleman v. Ridge*, 2008 WL 108895 (N.D. Cal. Jan. 8, 2008), allowed jurisdiction over equitable constitutional claims by terminated probationary TSA screeners because they had *no* administrative remedies to contest the terminations under the applicable statute. *Stone*, 502 F.3d at 1030, 1034, 1037; *Coleman*, 2008 WL 108895, at *2. *D'Angelo v. Winter* similarly held that a federal employee could assert an equitable constitutional claim because he "ha[d] no alternate avenue of relief." 403 F. App'x 181, 182 (9th Cir. 2010). Here, by contrast, Plaintiff could assert constitutional challenges to adverse personnel actions through OSC review. Indeed, *Stone* distinguished *Saul* on that very basis, noting that the *Saul* employee "could have availed himself of alternative mechanisms to pursue his constitutional claim." *Stone*, 502 F.3d at 1037; *Saul*, 928 F.2d at 838 (noting that the employee had a "means of redressing the constitutional injury he" alleged, including "request[ing] the OSC to investigate [it]"). And while *Wilborn v. Napolitano*, 2012 WL 354494, at *9 (S.D. Cal. Feb. 2, 2012), suggested in dictum that a probationary employee could bring injunctive constitutional claims in district

---

[3] *See Toro v. DHS*, 2013 WL 4102158, at *2 (S.D. Cal. Aug. 13, 2013) (probationary employee's constitutional injunctive claim was preempted by the CSRA); *Wilborn v. Napolitano*, 2013 WL 1222061, at *3-4 (S.D. Cal. Mar. 25, 2013) (same); *Munoz v. Locke*, 2013 WL 11319006, at *5 (W.D. Wash. Apr. 24, 2013), *aff'd*, 634 F. App'x 166 (9th Cir. 2015) (probationary employee's "constitutional claim for equitable relief [would be] precluded by the CSRA under . . . *Saul*" because she "had the ability to seek relief from the OSC"); *Gonzalez v. Manjarrez*, 2013 WL 152177, at *5 (W.D. Tex. Jan. 4, 2013) (dismissing probationary employee's constitutional injunctive claim because "the OSC complaint process may be used to vindicate the right to free speech under the First Amendment").

court, a later decision in the same case reversed course and held that in "light of Supreme Court and Ninth Circuit precedent, the CSRA precludes this Court's jurisdiction over Plaintiff's [equitable] constitutional claims." *Wilborn*, 2013 WL 1222061, at *3-4.[4]

Even if the OSC remedy under the CSRA is less robust than Plaintiff would prefer, it is still a remedy that Congress specifically chose for probationary employees: "Congress is the body charged with making the inevitable compromises required in the design of a massive and complex . . . program," and "courts should defer to the expertise of Congress in these matters." *Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir. 1989); *see also Schweiker v. Chilicky*, 487 U.S. 412, 423-24 (1988).  Because Plaintiff's injunctive relief claims improperly seek to fabricate additional judicial remedies beyond those that Congress permitted, the Court should dismiss them for lack of jurisdiction.

**b.    The Court lacks jurisdiction over Plaintiff's claims due to failure to exhaust administrative remedies.**

Plaintiff's claims also fail due to not exhausting administrative remedies.  Plaintiff sought OSC review of Plaintiff's termination on December 5, 2025.  The OSC has 240 days—or until August 3, 2026—to review the determination and potentially petition the MSPB for review.  5 U.S.C. § 1214(b)(2)(A)(i).  Plaintiff, however, filed suit in a federal district court on February 23, 2026, short-circuiting the administrative process by several months.

The exhaustion requirement "serves important purposes.  It protects administrative agency authority[,] promotes judicial efficiency[, and] prevents litigants from bypassing Congress' carefully crafted remedial scheme." *Irizarry v. United States*, 427 F.3d 76, 79 (1st Cir. 2005).  Exhaustion also "permits the federal agency to correct the violation or to explain its decision" and "provides a method for resolving many employment disputes without turning them into federal cases." *Id.*  Thus, where, as here, a federal employee "failed to exhaust the administrative remedies available to her under the CSRA, [the court] may not consider the merits of her CSRA . . . claims." *Houlihan v. OPM*, 909 F.2d 383, 384 (9th Cir. 1990); *Irizzary*, 427 F.3d at 79-80 (affirming dismissal of federal employee's equitable claim

---

[4] Plaintiff also cites *Davis v. Billington*, 51 F. Supp. 3d 97 (D.D.C. 2014) (ECF 29-1 at 24).  *Davis* not only is outside the Ninth Circuit, but it involved a probationary employee in a *non-executive* agency who was precluded from seeking OSC review under 5 U.S.C. § 1214.  *Id.* at 107-08.  Plaintiff, by contrast, was employed by an executive agency and had the right to seek OSC review under § 1214.

because "Congress intended that complaints . . . be directed to the OSC," and federal court review "is only available following the exhaustion of administrative remedies"); *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996) ("Under the CSRA, exhaustion of administrative remedies is a jurisdictional prerequisite to suit.").

Plaintiff appears to justify failing to exhaust administrative remedies because the OSC process is "discretionary" and often "end[s] without any possibility of [judicial] review." ECF 29-1 at 23. But "so long as effective remediation conceivably could have been achieved through the [CSRA] administrative process, exhaustion was prerequisite." *Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir. 1992) (reversing district court and dismissing probationary employee's statutory and constitutional claims for lack of jurisdiction). Failure to exhaust necessary administrative remedies "precludes judicial review of [Plaintiff's] allegations of improper agency action." *Id.*; *see also Weaver*, 87 F.3d at 1434 (Plaintiff also points to the uncertainties in the CSRA remedy—the possible delays and the dependence on a favorable exercise by the OSC of its discretion . . . . But the delays seem no more than the normal concomitant of an exhaustion requirement—perhaps less, in view of the statute's deadline for OSC action.").

And there is one further problem with Plaintiff's claims: to the extent that any judicial review is available to probationary employees after exhausting administrative remedies, it is exclusively with the Federal Circuit. 5 U.S.C. §§ 1214(c)(1), 7703(b)(2). The federal district courts lack jurisdiction over probationary employee workplace disputes. *Ayrault v. Pena*, 60 F.3d 346, 349 (7th Cir. 1995) ("Even if [a probationary employee] were entitled to judicial review, the appropriate forum for such review would be the Federal Circuit."); *Chamat v. Paulson*, 2009 WL 764989, at *5 (S.D. Cal. Mar. 23, 2009) (holding in the alternative that even if probationary employee "were entitled to judicial review under the CSRA, such review should have been sought with [the] Federal Circuit").

**2.      Plaintiff's selective punishment claims against the employer Defendants fail.**

Apart from the jurisdictional deficiencies, the selective-punishment challenge to Plaintiff's employment termination fails. Although Plaintiff relies on the generalized First Amendment formulation in *Waln v. Dysart School District*, 54 F.4th 1152 (9th Cir. 2022) (*see* ECF 29-1 at 16-18), this Court has previously held that selective enforcement in the public employment context is evaluated under the Equal Protection Clause. *Stannard v. State Ctr. Cmty. Coll. Dist.*, 2025 WL 2808435, at *19-

20 (E.D. Cal. Oct. 2, 2025) (Thurston, J.) ("Within the Ninth Circuit, selective enforcement of a law or regulation based on a speaker's viewpoint is evaluated through the lens of the Equal Protection Clause . . . ." (citing *Rosenbaum v. City & Cnty. of S.F.*, 484 F.3d 1142, 1152–57 (9th Cir. 2007))).[5]  Under that controlling standard, Plaintiff must show (1) others similarly situated were not punished, and (2) enforcement was based on an impermissible motive such as viewpoint discrimination.  *Stannard*, 2025 WL 2808435, at *19; *Rosenbaum*, 484 F.3d at 1152-57.  Plaintiff flunks both prongs.

**a.        None of the proffered comparators is similarly situated to Plaintiff.**

Plaintiff cannot establish liability under any selective punishment theory because Plaintiff identifies no similarly situated groups who were not disciplined.  To state a claim for selective enforcement, a plaintiff "must plausibly allege that a 'similarly situated' person, but with a different viewpoint, would not have been investigated and disciplined like he was."  *Stannard*, 2025 WL 2808435, at *20.  The plaintiff "must be similarly situated to the proposed comparator[s] in all material respects," which requires "an extremely high degree of similarity between [plaintiff] and the persons to whom they compare themselves."  *Barroca v. Hayward Area Recreation & Parks Dist.*, 2026 WL 497399, at *7 (N.D. Cal. Feb. 23, 2026); *see also Pinkston v. Moore*, 2017 WL 2772107, at *7 (C.D. Cal. Mar. 15, 2017), *adopted*, 2017 WL 2766431 (C.D. Cal. June 23, 2017) ("To be considered similarly situated, [plaintiff] and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects.").

Plaintiff identifies no similarly situated employees who engaged in materially similar misconduct yet were retained.  Plaintiff instead relies on vague, anecdotal references to unrelated individuals.  All of those individuals displayed flags or banners far smaller than Plaintiff's, many were not NPS employees at all, and—most importantly—none was a probationary employee.  ECF 29-1 at 17-18; McPadden Decl. ¶¶ 8-10.  The "Stop the Genocide" and "War Should Be Against Climate Change" flag displays were conducted by private individuals, not NPS employees.  ECF 29-1 at 18; McPadden Decl. ¶ 8.  That distinction alone is fatal because the government's interests—and corresponding enforcement considerations—differ fundamentally when regulating members of the public versus disciplining its own

---

[5] Even under *Waln* Plaintiff fails because Plaintiff has not and cannot identify any true comparators—other probationary employees treated more favorably than Plaintiff.  See the discussion in the text below.

employees. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 566-72 (1968). That is especially true where, as here, disciplinary action is imposed on a probationary employee whose conduct is evaluated under heightened standards governing federal service, including expectations of judgment, professionalism, and adherence to agency rules. Globokar Decl. ¶¶ 4-5.

The only example allegedly involving NPS employees—the upside-down American flag display—likewise fails as a comparator. *See* ECF 29-1 at 18. Plaintiff offers no facts or evidence that the alleged "park employees" involved in this display were materially similarly situated to Plaintiff— Plaintiff simply asserts that "none of the employees that hung the flag were punished or told not to do it again." Joslin Decl. ¶ 39. In fact, to NPS's knowledge, the demonstration only involved one *tenured* NPS employee *who had already been identified for termination*, rendering further action unnecessary. McPadden Decl. ¶ 9. Tenured employees are not similarly situated to probationary employees. *See, e.g.*, *Steik v. Garcia*, 2003 WL 22992223, at \*8 (N.D. Cal. Dec. 9, 2003) (plaintiff was not similarly situated to fellow employee who appeared to "have been a permanent employee who was no longer subject to a probationary period"); *Liu v. Colvin*, 2013 WL 1729800, at \*6-7 (N.D. Cal. Apr. 22, 2013) (holding that "probationary and non-probationary employees" are "generally not similarly situated" and citing authorities); *see also Scott v. Mabus*, 618 F. App'x 897, 899 (9th Cir. 2015) (suggesting probationary status was material to "similarly situated" analysis).[6] In short, NPS's decision to act on a probationary employee's misconduct, but not in the context of a tenured employee already subject to separation, is entirely consistent with legitimate government interests and cannot support an inference of unconstitutional selectivity.

          **b.**      **Plaintiff's termination was not motivated by impermissible viewpoint discrimination.**

Plaintiff's selective enforcement claim independently fails under the second, essential element

---

[6] *See also Steinhauer v. DeGolier*, 359 F.3d 481, 484-85 (7th Cir. 2004) (plaintiff on probation was not similarly situated to co-worker not on probation); *Mercer v. City of Cedtr Rapids,* 308 F.3d 840, 845 (8th Cir. 2002) (affirming summary judgment for the employer when it terminated a female probationary employee for having an affair with a permanent employee even though the employer did not terminate the permanent employee); *Bogren v. Minnesota,* 236 F.3d 399, 405 (8th Cir. 2000) ("We agree with the premise underlying the district court's conclusion; troopers beyond the probationary period are not similarly situated to a probationary trooper); *Bante v. Merit Sys. Prot. Bd.*, 966 F.2d 647, 650 (Fed. Cir. 1992); *Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 848 F.2d 1273, 1275 (D.C. Cir. 1988).

under Ninth Circuit law: that the challenged action was motivated by an impermissible purpose such as viewpoint discrimination. *Stannard*, 2025 WL 2808435, at *19.

The undisputed record shows that the NPS terminated Plaintiff because Plaintiff was a probationary employee who knowingly engaged in conduct that violated governing park regulations in a highly visible manner, and in doing so, demonstrated poor judgment inconsistent with federal service. Globokar Decl. ¶¶ 5-7. That is a paradigmatic lawful basis for termination—particularly in the probationary context, where agencies are expressly afforded broad discretion to assess suitability and remove employees who fail to meet standards of conduct. *Id*. at ¶ 4; *Dumas v. New United Motor Mfg., Inc.*, 305 F. App'x 445, 448 (9th Cir. 2008) ("violation of company policy" was "a legitimate, non-discriminatory reason for terminating [plaintiff]"); *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1170 (C.D. Cal. 2013) ("[V]iolation of company policies is a legitimate, nondiscriminatory reason for terminating an employee." (collecting cases)); *Foster v. Credit One Bank, N.A.*, 2024 WL 4625291, at *2 (9th Cir. Oct. 30, 2024); *Neumeyer v. Wawanesa Gen. Ins. Co.*, 2015 WL 1924981, at *13 (S.D. Cal. Apr. 24, 2015); *Elmore v. New Albertson's, Inc.,* 2012 WL 3542537, at *4 (C.D. Cal. Aug. 15, 2012); *White v. Home Depot U.S.A. Inc.*, 2019 WL 1171163, at *11 (S.D. Cal. Mar. 13, 2019). Plaintiff's attempt to manufacture improper motive or pretext by invoking alleged hostility toward transgender rights at the federal level falls flat. *See* ECF 29-1 at 12. NPS—not a presidential administration—terminated Plaintiff, and Plaintiff identifies no statements by decisionmakers reflecting hostility toward Plaintiff's viewpoint, no departure from standard personnel procedures suggesting improper treatment, and no evidence that similarly situated probationary employees who violated the same rules were treated more favorably. Generalized allegations about the "Trump Administration" cannot substitute for evidence that the actual decisionmakers in this case acted with a retaliatory motive.[7]

---

[7] Plaintiff's new claim that Plaintiff subsequently did not get a volunteer position in Yosemite's search and rescue (SAR) unit because of Plaintiff's speech and resulting termination (Joslin Decl. ¶ 41) is based on pure speculation. Other than just a bare conclusion, Plaintiff provides no evidence that any decisionmaker harbored, adopted, or acted upon any purported animus against Plaintiff or Plaintiff's speech. In fact, the Park's volunteer SAR positions are highly sought after, and in most years the Park has far more applicants than slots. McPadden Decl. ¶ 13. This year 35 applicants applied for only 7 volunteer SAR positions in Yosemite Valley, and 6 applicants for only 2 SAR positions in Tuolumne Meadows. Plaintiff was not selected after a competitive review of multiple highly qualified applicants, and Plaintiff was notified at the same time as others who were not selected. *Id.*

Nor can Plaintiff rely on revisions to the Superintendent's Compendium to establish pretext or viewpoint discrimination.  *See* ECF 29-1 at 11.  Those revisions were not the basis for Plaintiff's termination.  Rather, Plaintiff was terminated for unacceptable conduct for violating 36 C.F.R. § 2.51.  ECF 29-1 at 11; *Gilbrook v. City of Westminster,* 177 F.3d 839, 855 (9th Cir. 1999) (finding no nexus exists when the decisionmaker makes an independent and legitimate decision to discipline the plaintiff).  Further, revisions were already underway well before Plaintiff's demonstration and were prompted by prior incidents involving flag displays, including the upside-down flag display that included a tenured NPS employee.  McPadden Decl. ¶¶ 8-12.  There simply is no evidence that revisions were adopted in response to, or for the purpose of suppressing, Plaintiff's expression.

In short, Plaintiff's reliance on generalized political rhetoric and unrelated Compendium revisions is legally insufficient to demonstrate viewpoint discrimination or pretext.  Without similarly situated comparators, evidence tying the actual decisionmakers to a retaliatory motive, or demonstrating that the stated reasons for termination were false, Plaintiff cannot establish that the law and the facts *clearly favor* Plaintiff's claims, let alone that such claims are likely to succeed.

### 3.    The *Pickering/Eng* factors for First Amendment retaliation claims favor Defendants.

Plaintiff asserts that although Plaintiff was a public employee at the time, Plaintiff engaged in protected speech as a private citizen but was subsequently punished for it.  ECF 29-1 at 13-14.  "Though not clearly labeled as such, this is a first amendment retaliation claim."  *Stannard*, 2025 WL 2808435, at *21.  The Court thus arguably must apply the *Pickering/Eng* framework to Defendants' employment decisions.  *Id.* at *22; *see Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009).  Specifically, Plaintiff must show that "(1) she spoke on a matter of public concern; (2) she spoke as a private citizen rather than a public employee; and (3) the relevant speech was a substantial or motivating factor in the adverse employment action."  *Stannard*, 2025 WL 2808435, at *22 (quoting *Adams v. Cnty. of Sacramento*, 143 F.4th 1027, 1033-34 (9th Cir. 2025)).  If Plaintiff makes that showing, the "burden then shifts to the government to demonstrate that (4) it had an adequate justification for treating [the employee] differently than other members of the general public; or (5) it would have taken the adverse employment action even absent the protected speech."  *Id.*

Plaintiff's Motion does not analyze the *Pickering/Eng* factors at all. But those factors decisively favor Defendants. Even assuming that Plaintiff spoke as a private citizen on a matter of public concern, Plaintiff cannot show that Plaintiff's self-described "pro-trans" speech "was a substantial or motivating factor in the adverse employment action" for the same reasons that Plaintiff failed to show that Plaintiff's termination was motivated by an impermissible purpose in Plaintiff's selective enforcement or viewpoint discrimination claims. *Eng*, 552 F.3d at 1071; *Barone v. City of Springfield*, 902 F.3d 1091, 1098 (9th Cir. 2018); *see also* Section III.C.2, *supra*.

Even if Plaintiff were spotted the third *Pickering/Eng* factor, Defendants have demonstrated "adequate justification" for terminating Plaintiff's employment. Plaintiff violated a government regulation directly relevant to the conservation policy aims that Plaintiff was expected to uphold as an NPS employee. And Plaintiff did so on government property in a highly visible way while on probationary status. *See* Section II.C, *supra*.

Additionally, under *Pickering/Eng*, the Court must "reconcile the employee's right to engage in speech and the government employer's right to protect its own legitimate interests in performing its mission." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961 (9th Cir. 2011); *Pickering,* 391 U.S. 563 (1968); *Eng,* 552 F.3d at 1062. At the balancing stage, courts consider whether the employee's speech undermines legitimate governmental interests in promoting efficiency, discipline, and adherence to lawful rules. *Pickering*, 391 U.S. at 568-573.

Those interests are at their apex here. Plaintiff did not merely express a viewpoint, but engaged in a physical demonstration on government property in violation of a clear, generally applicable regulation governing demonstrations. The object of the NPS regulations at issue here was "not to exclude particular communications, but to coordinate multiple uses of limited space; assure preservation of park facilities; prevent dangerous, unlawful, or impermissible uses; and assure financial accountability for damage caused by an event." *Thomas v. Chicago Park District,* 534 U.S. 316, 322 (2002). The government has a strong interest in enforcing such rules to manage national parks, ensure safety, and maintain orderly use of park resources. *Clark v. Cmty. for Creative Non-Violence,* 468 U.S. 288, 295-96 (1984). Plaintiff's decision to disregard those rules—particularly in a highly visible and deliberate manner—directly undermines those interests. Here, Plaintiff chose to engage in prohibited

conduct on the very property the NPS is charged with protecting.  The nexus to Plaintiff's employment situs substantially heightens the government's interest and distinguishes this case from those involving purely private, off-site speech.  *See Decotiis v. Whittemore*, 635 F.3d 22, 32 (1st Cir. 2011) (noting relevant considerations of "whether the employee spoke at her place of employment" and "whether the speech gave objective observers the impression that the employee represented the employer when she spoke (lending it 'official significance')").

The fact that Plaintiff's demonstration disrupted internal operations of the NPS further confirms the heavy *Pickering/Eng* tilt towards the government.  The NPS received more than a dozen complaints from the public, underscoring that Plaintiff's conduct had a tangible impact on visitor experience and reduced visitor enjoyment of a scenic wilderness landmark.  McPadden Decl. ¶ 10.  Plaintiff's seeking out post-demonstration media attention and publicizing opportunities further vindicates the NPS's disciplinary decision.  Joslin Decl. at ¶¶ 26-27 & Ex. B; Globokar Decl. ¶ 6.

Finally, there is no countervailing evidence that Plaintiff's specific mode of expression warrants heightened protection over the government's operational interests.  Plaintiff had myriad permissible venues *at Yosemite itself* to engage in speech.  McPadden Decl. ¶ 4.  Instead, Plaintiff deliberately chose a venue that was deliberately placed off limits for cultural, preservation, and visitor experience reasons.  The First Amendment does not entitle a public employee to violate otherwise valid regulations on her employer's property without consequence.  *Cornelius v. NAACP Legal Defense & Educational Fund Inc.,* 473 U.S. 788, 799-800 (1985).  Defendants acted well within constitutional bounds in concluding that Plaintiff's conduct reflected unacceptable judgment and warranted termination.

**D.      The law and facts do not *clearly favor* Plaintiff's position or establish likelihood of success on the merits on Plaintiff's criminal-based claims.**

Plaintiff's original complaint correctly recognized that the alleged conduct of the employer defendants (DOI, NPS, Burgum, and Bowron) is analytically and legally distinct from that of the DOJ Defendants (now-former Attorney General Bondi, U.S. Attorney Grant, and the U.S. Attorney's Office). Plaintiff's amended complaint abandons that distinction and instead seeks to hold all Defendants to the same constitutional standard.  ECF 28 at 18-19.  That approach is legally untenable.  Plaintiff's termination and any purported "selective punishment" in the employment context were actions taken—if

at all—by Plaintiff's employer (DOI/NPS), not by DOJ.  Plaintiff cannot bootstrap employment grievances into claims against non-employer actors who had no role in the challenged personnel action.

Plaintiff identifies no facts or cognizable theory for suing the DOJ Defendants.  Plaintiff alleges that the DOJ "Defendants' actions pursuing . . . criminal proceedings and punishment violate the First Amendment" and asks that DOJ Defendants be enjoined "from criminally enforcing park regulations against Dr. Joslin for speech supportive of trans rights."  Compl. ¶¶ 75, 82, Prayer ¶ a; *see also id.* ¶ 95 (asserting "Defendants' retaliatory criminal investigation . . . in violation of the First Amendment").  But Plaintiff does not plausibly allege a "criminal investigation" that could infringe First Amendment rights. Moreover, Plaintiff lacks standing to bring a pre-enforcement challenge, and that challenge is not ripe. And as a general matter, Plaintiff has no right to equitable relief against the DOJ Defendants.

### 1.  Plaintiff does not plausibly allege any "criminal investigation" that could infringe First or Fifth Amendment Rights.

Plaintiff's claims against the DOJ Defendants are premised on the existence of an "ongoing" criminal investigation targeting Plaintiff.  *See, e.g.*, ECF 29-1 at 25.  But Plaintiff provides no plausible grounds indicating that any such investigation actually exists.  Plaintiff relies on May and August 2025 statements by the NPS suggesting that a criminal investigation was underway, along with the fact that DOJ Defendants have never confirmed that any investigation has concluded.  ECF 29-1 at 13, 27.

Notably absent from Plaintiff's materials are any statements or actions by the *DOJ Defendants* suggesting that Plaintiff is the target of an ongoing criminal investigation.  Plaintiff only cites statements from an NPS spokesperson, who is not an agent of the U.S. Attorney's Office or any DOJ official.  *See, e.g.*, ECF 29-3, at 198 (Associated Press article quoting "National Park Service spokesperson Rachel Pawlitz"); *id.* at 204 of 365 (NBC News article quoting "Rachel Pawlitz, a spokesperson for the NPS"); *id.* at 211 (Newsweek article quoting "NPS spokesperson Rachel Pawlitz").  Indeed, the sole reference to "the U.S. Attorney's Office for the Eastern District of California" came in NBC News's paraphrase of something that "Pawlitz said").  *Id.* at 204 (quoted at ECF 29-1 at 5).

Nor has Plaintiff adduced any objective indicia of a criminal investigation.  Plaintiff does not identify any interviews with Plaintiff or anyone else by a DOJ agent or officer, any searches or seizures of personal devices or other property, any grand jury subpoena, or any overtures by the U.S. Attorney's

Office to Plaintiff's counsel that would suggest an open criminal investigation against Plaintiff.

In sum, Plaintiff's allegation that "Defendants' position appears to be that Dr. Joslin's conduct broke the law and warranted criminal investigation" (ECF 29-1, at 27) is wholly conclusory and speculative as to the DOJ Defendants, offering a mere label or conclusion rather than a plausible ground for relief.  That is not enough to warrant the extraordinary remedy of a mandatory preliminary injunction.

**2.    Plaintiff lacks standing to bring a pre-enforcement challenge, and that challenge is not ripe.**

Even if (contrary to fact) Plaintiff were the target of an ongoing criminal investigation by the DOJ Defendants, Plaintiff lacks standing to challenge that investigation, and Plaintiff's challenge is not ripe.  *Cf. Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, 435 F. Supp. 3d 1063, 1081 (E.D. Cal. 2020) ("Whether framed as an issue of standing or ripeness, the inquiry is largely the same: whether the issues presented are definite and concrete, not hypothetical or abstract." (quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010))).  Here, because Plaintiff is "not currently subject to an enforcement action" (i.e., a pending criminal prosecution), Plaintiff is "raising a pre-enforcement challenge to the regulations that [allegedly] restrict speech."  *Id.*  In general, "pre-enforcement review is permissible 'under circumstances that rendered the threatened enforcement sufficiently imminent.'"  *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

Hence, for a pre-enforcement claim to be ripe, "the plaintiff must be subject to a genuine threat of *imminent* prosecution."  *Id.* (emphasis in original; quoting *Wolfson*, 616 F.3d at 1058).  Similarly, to have standing to bring a pre-enforcement claim, the plaintiff must show that "there is a credible threat that the challenged provision will be invoked against the plaintiff."  *Id.* at 1082 (quoting *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1034 (9th Cir. 2006)).  Indeed, Plaintiff concedes Plaintiff must show "a credible threat of prosecution" under the applicable law.  ECF 29-1 at 26.

Distilling the case law in this area, *Stavrianoudakis* identified the kinds of evidence that would show a genuine or credible threat of imminent prosecution:

- "the government has indicted or arrested the plaintiffs";

- "a plaintiff was warned twice to stop [demonstrating] and was told by police that he would likely be prosecuted if he repeated the conduct";

- "the plaintiff's companion was prosecuted for engaging in similar conduct";

- a "history of past prosecution of parties similarly situated to the plaintiffs"; and

- the defendants "specifically warned [the plaintiff] that the challenged regulations would be enforced" against him.

*Stavrianoudakis*, 435 F. Supp. 3d at 1083-84. "On the other hand, 'general threat[s] by officials to enforce those laws which they are charged to administer' [do] not create the necessary injury in fact." *Id.* (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)); *id.* (noting that the Supreme Court denied standing in *Younger v. Harris*, 401 U.S. 37 (1971), to plaintiffs who "had not alleged that they had been threatened with prosecution, or that prosecution was even likely, but merely they felt 'inhibited' in advocating and teaching political ideas"). Finally, "[m]ere allegations of subjective chill are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Id.* (quoting *Lopez v. Candaele*, 630 F.3d 775, 781 (9th Cir. 2010)).

Plaintiff here has adduced <u>no</u> evidence of the kind necessary to show a genuine or credible threat of imminent prosecution by the DOJ Defendants. To be sure, Plaintiff makes the conclusory statement that Plaintiff's "fear of prosecution is credible." ECF 29-1 at 27. But in this regard, Plaintiff relies solely on the same statements by *agents of NPS* that are addressed in the previous section. Otherwise, Plaintiff merely alleges that "Defendants' actions have already and will continue to chill [Plaintiff's] freedom of speech and expression." Compl. ¶ 78. That allegation is not an adequate substitute for showing a genuine or credible threat, and thus Plaintiff lacks standing to bring a pre-enforcement challenge against the DOJ Defendants.

**3.    Plaintiff has no right to equitable relief against the DOJ Defendants.**

As shown above, Plaintiff has not shown standing or that an ongoing criminal investigation exists. But even demonstrating both would not be enough here to obtain equitable relief against the DOJ Defendants because "[f]ederal courts traditionally have refused, except in rare instances, to enjoin federal criminal prosecutions." *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016); *see also Giles v. Garland*, 2024 WL 4556462, at *1 (6th Cir. Aug. 21, 2024) (applying *McIntosh*); *Trump v.*

*United States*, 2022 WL 4366684, at *9 (11th Cir. Sept. 21, 2022) (same). And that formulation may understate the bar to equitable relief: "in no case that we have been able to discover has a federal court enjoined a federal prosecutor's investigation or presentment of an indictment"—that is to say, "subjects of federal investigation have never gained injunctive relief against federal prosecutors." *Deaver v. Seymour*, 822 F.2d 66, 69 (D.C. Cir. 1987).

In short, it "is a sound and well-established principle that a court should not exercise its equitable powers to interfere with or enjoin an ongoing criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal." *Manafort v. U.S. Dep't of Justice*, 311 F. Supp. 3d 22, 26 (D.D.C. 2018). And Plaintiff would have such an opportunity, as "a federal defendant will be afforded an opportunity under Federal Rule of Criminal Procedure 12(b) to move to dismiss an indictment based on defects in the prosecution." *Id.* (citing *Deaver*, 822 F.2d at 70). Indeed, Rule 12(b)(3)(A) expressly authorizes "a motion alleging a defect in instituting the prosecution, including . . . (v) selective . . . prosecution," which is what Plaintiff alleges. *See, e.g.*, ECF 29-1 at 17 ("NPS fired Dr. Joslin and began civilly and criminally investigating them, in concert with the Department of Justice (DOJ). That selective punishment was viewpoint discrimination in violation of the First Amendment."); *id.* (alleging "the government's selective enforcement of its regulation against Dr. Joslin's display").

The "First Amendment" provides no talismanic exception to these precepts, as thoughtfully explained in *Peters v. United States*, 2024 WL 2274079 (D. Colo. May 20, 2024). The plaintiff in that case, similar to Plaintiff here, argued that "she has no adequate remedy at law because (a) even a temporary loss of a First Amendment right constitutes an irreparable injury, and (b) she is not required to await a subsequent judicial proceeding to vindicate her right." *Id.* at *6. But the cases on which the plaintiff relied—principally *Dombrowski v. Pfister*, 380 U.S. 479 (1965)—are readily distinguishable: "*Dombrowski* involved *state* prosecution under statutes regulating expression that were challenged as *facially overbroad and vague*." *Id.* (emphasis added). The putative prosecution here is a *federal* one, and neither in the complaint nor in the motion for preliminary injunction does Plaintiff challenge the governing regulation as "overbroad" or "vague." To the contrary, Plaintiff effectively concedes that the regulation is not facially infirm for overbreadth or vagueness, only that it is selectively enforced. *See* ECF

29-1 at 16 (complaining about "selectively enforc[ing] a facially neutral policy").

Moreover, "the availability of post-indictment, pre-trial First Amendment defenses under Fed. R. Crim. P. 12 provides [Plaintiff] with an adequate remedy, thereby precluding this Court's equitable jurisdiction." *Peters*, 2024 WL 2274079, at *7.  As discussed above, that rule expressly "afford[s] defendants, after indictment, a federal forum in which to assert their defenses — including those based on the Constitution." *Id.* (quoting *Deaver*, 822 F.2d at 69).  That forum is precisely this Court, which can act swiftly to protect any (hypothetical) violation of Plaintiff's First Amendment right to be free of a selective prosecution — if a prosecution is ever brought.

**E.    The balance of equities and the public interest weigh against an injunction.**

Because Plaintiff has not made the "threshold showing[s]" of irreparable injury and a likelihood of success, no weighing of the balance of harms is necessary here.  *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir.2012).  However, were the Court to consider the balance of the equities and public interest, these factors confirm that the extraordinary relief Plaintiff seeks is unwarranted.

Here, Plaintiff's alleged harm flows directly from Plaintiff's own decision to violate governing regulations while a probationary federal employee.  By contrast, the requested injunction would impose significant burdens on the government, including overriding lawful personnel decisions, disrupting the Civil Service Reform Act framework, and interfering with the government's ability to enforce regulations protecting national parks.  There is also compelling public interest in preserving the integrity of federal employment systems, enforcing lawful regulations, and protecting national resources—not in excusing admitted misconduct or enjoining speculative enforcement.

**IV.    CONCLUSION**

For all the foregoing reasons, Plaintiff's Motion for Preliminary Injunction should be denied.

Dated:  April 30, 2026                              Respectfully submitted,

                                                    ERIC GRANT
                                                    United States Attorney

                                    By:    /s/ *Rachel R. Davidson*
                                                    Rachel Davidson
                                                    Assistant United States Attorney
                                                    Attorneys for Defendants

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION    22