ERIC GRANT
United States Attorney
RACHEL R. DAVIDSON
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone: (916) 554-2731
Email:  Rachel.Davidson@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. SHANNON "SJ" JOSLIN,<br><br>                         Plaintiff,<br><br>                v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, et. al.<br><br>                         Defendants. | No. 1:26-CV-02029-JLT-FJS<br><br>**DECLARATION OF RAYMOND McPADDEN**<br><br>Judge: Hon. Jennifer L. Thurston |

I, Raymond McPadden, declare, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am the Superintendent at Yosemite National Park, National Park Service, United States Department of the Interior ("Agency"), headquartered in Washington, D.C.  I make this declaration based on my own personal knowledge, on information contained in the records of the Agency, or on information provided to me by Agency employees.

2.      From April 30, 2025, I served as Acting Superintendent at Yosemite National Park, assuming the role on a permanent basis on October 5, 2025.

3.      As Superintendent, I was Shannon Joslin's fourth-line supervisor. In that role, I learned that on May 20, 2025, Joslin coordinated and participated in a group demonstration in an area outside the designated demonstration area without a permit in violation of 36 C.F.R § 2.51.

4.      Pursuant to 36 C.F.R. § 2.51, Yosemite National Park has designated certain areas of the Park as designated demonstration locations for which no permit is generally required for demonstrations

McPADDEN DECLARATION                          1

of 25 persons or fewer. These areas were carefully selected according to regulatory criteria in 36 C.F.R. § 2.51(c)(1), including for safety, the low-risk demonstrations in those areas pose to Park resources and our resource-protection mission, and applying general best-practices guidance from NPS, such as considerations of proximity to Park amenities and the ability of those engaged in demonstration activity to be visible to park visitors. El Capitan is not among the locations designated as available for demonstrations.

5.     The regulations and portions of the Superintendent's Compendium concerning demonstrations in designated Park areas are also based on policy criteria including the protection of Park resources, visitor experience, and public safety.

6.     The decision not to designate El Capitan as an area for demonstration is particularly important. El Capitan is sacred to several local Native American tribes, is one of the Park's most iconic and environmentally sensitive features, and is also federally-designated wilderness. Indeed, as the Park's focal point, the face of El Capitan may be visible to thousands of visitors at one time during the high season. The National Park Service has concluded that the safety risks and conservation threats posed by allowing demonstrations on the face of El Capitan justify its exclusion from the list of park areas designated for demonstrations.

7.     Yosemite National Park has a long tradition of hikers, climbers, and other Park visitors celebrating their achievements in the Park by unfurling small flags – usually 3' x 5' or smaller – bearing personal messages or the insignia of an organization important to the individual, such as branches of the armed forces, universities, sports teams, state or national flags, etc.), including on El Capitan. In the vastness of Yosemite, these small flags are barely visible, and have not posed significant safety risks, unreasonably impaired the peace and tranquility of the park's wilderness, or unreasonably interfered with visitor services or the parks' program activities. Flags of that size on El Capitan also do not pose a reasonable likelihood of attracting a crowd or onlookers.

8.     Beginning in 2024, however, the Agency has witnessed a major escalation in the size and scale of disruptive demonstrations occurring on El Capitan. On June 18, 2024, demonstrators unfurled a 25' x 15' banner bearing the message "Stop the Genocide." Those participating in this demonstration were not Park employees. While this conduct was already prohibited by 36 C.F.R. § 2.51, the Agency saw a

McPADDEN DECLARATION                    2

need for further clarity on demonstrations within the Park Superintendent's Compendium and began to work on revisions shortly after this demonstration.

9. Approximately eight months later, an even larger flag – approximately 30' x 50' was hung from the face of El Capitan as thousands of Park visitors gathered to stare up at the monolith to observe the annual "firefall" phenomenon. Only one Agency employee, who was non-probationary, was found to have participated in this demonstration but, because his termination was already being pursued on other grounds and appealed by the employee at the MSPB, no further action was taken.

10. The May 20, 2025, flag demonstration represented the most alarming escalation yet, with demonstrators unfurling a flag that was approximately 70' wide. The Agency received a multitude of complaints from Park visitors in the immediate aftermath of the demonstration, as well as additional complaints from the general public.

11. After the May 20, 2025, demonstration, I determined that the Agency could not delay further in updating the Park's Superintendent's Compendium to institute a clear size limit of 3' x 5' for all flags or banners displayed within the Park. While the May 20, 2025 demonstration was already prohibited by 36 C.F.R. § 2.51 and the existing Superintendent's Compendium, the Agency had become alarmed by the escalating nature of these disruptive demonstrations and wanted to strengthen the Park's ability to respond to the next demonstration.

12. I signed (via dated digital signature) the revised Superintendent's Compendium on May 21, 2025. While an accompanying date line was dated May 20, 2025, the date I signed the revised Superintendent's Compendium is contained within my signature. The revision to the Superintendent's Compendium had been underway for some time, but my decision to sign it was based on preventing further prohibited, unsafe and potentially damaging demonstrations involving large flags at this sensitive location in the Park, which is not an area designated for demonstrations without permit, and did not apply to Joslin's misconduct, nor was it intended to do so.

13. Based on Joslin's new allegations, I understand that Joslin now claims that she did not get selected to be a volunteer search and rescue (SAR) member in Tuolumne Meadows because of her speech and resulting termination. Joslin provides no facts or evidence to support this bare conclusion. Rather, Joslin's conclusion is based solely on an unidentified successful applicant purportedly telling Joslin that

McPADDEN DECLARATION                                3

no offers had been made at the time Joslin's was told the position had been filled.  However, Joslin's speech and resulting termination had nothing to do with Joslin not being selected. The Park's volunteer SAR positions are highly sought after and with most years the Agency has far more applicants than slots. This year 35 applicants applied for only 7 volunteer SAR positions in Yosemite Valley, and 6 applicants for only 2 SAR positions in Tuolumne Meadows.  Joslin was not selected after a competitive review of multiple highly qualified applicants, and Joslin was notified at the same time as others who were not selected.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 29, 2026

/s/ Raymond McPadden
Raymond McPadden

McPADDEN DECLARATION                    4