Clayton L. Bailey (DC Bar No. 1644867) (admitted *pro hac vice*)
Margaret (Emmy) Wydman (DC Bar No. 9007646) (admitted *pro hac vice*)
**Civil Service Law Center LLP**
1455 Pennsylvania Ave NW, Suite 400
Washington, DC 20004
(202) 571-7836

Paula Dinerstein (DC Bar No. 333971) (admitted *pro hac vice*)
**Public Employees for Environmental Responsibility**
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 464-2293

*Counsel for Plaintiff Shannon "SJ" Joslin*

[Additional counsel listed on signature page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

DR. SHANNON "SJ" JOSLIN,

   *Plaintiff,*

  vs.

U.S. DEPARTMENT OF THE INTERIOR, *et al.*,

   *Defendants.*

Case No. 1:26-cv-2029-JLT-EPG

**PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND REPLY IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

PL.'S COMBINED OPP'N TO
DEFS.' MOT. TO DISMISS AND
REPLY IN FURTHER SUPPORT
OF PL.'S MOT. FOR PRELIM. INJ.

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ........................................................................................................................1

ARGUMENT ...............................................................................................................................1

I.    DR. JOSLIN IS ENTITLED TO A PRELIMINARY INJUNCTION. ...............................1

    A.    Dr. Joslin need not meet the standard for a mandatory injunction. ............................1

    B.    Dr. Joslin is likely to succeed on the merits of their selective enforcement
        claim. ...........................................................................................................................2

        1.    Defendants' submission confirms the selective nature of Dr. Joslin's
            punishment. ...................................................................................................3

        2.    Dr. Joslin has demonstrated the necessary intent for a selective
            enforcement claim. ........................................................................................5

        3.    The Pickering factors favor Dr. Joslin. .........................................................7

    C.    The CSRA does not preclude employment-related equitable relief. ...........................9

    D.    Dr. Joslin's request for relief as to criminal enforcement is properly before
        this Court. ...................................................................................................................13

        1.    Defendants criminally investigated Dr. Joslin. ............................................13

        2.    Dr. Joslin has standing to seek relief from criminal enforcement. ...............14

        3.    There is no equitable bar to relief against the Department of Justice. .........16

    E.    Dr. Joslin has demonstrated irreparable harm. .........................................................18

        1.    Dr. Joslin's purported "delay" does not preclude a preliminary
            injunction. .....................................................................................................18

        2.    Defendants' additional irreparable harm arguments are
            unpersuasive. ................................................................................................19

    F.    The balance of the equities favors Dr. Joslin. ..........................................................22

II.   DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED. .................................23

    A.    Dr. Joslin's Privacy Act claim is not precluded by the CSRA. .................................23

    B.    Defendants' other motion-to-dismiss arguments should be rejected for the
        same reasons Dr. Joslin is entitled to a preliminary injunction. ...............................24

CONCLUSION ..........................................................................................................................24

PL.'S COMBINED MTD OPP'N                    - i -
& PI REPLY

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*In Re: Administrative Subpoena 25-1431-032 to Rhode Island Hospital*,
Case No. 1:26-mc-0007 (May 13, 2026)................................................................ 18

*AFGE Local 1 v. Stone*,
502 F.3d 1027 (9th Cir. 2007).................................................................*passim*

*AFGE v. OPM*,
2025 WL 835337 (9th Cir. Mar. 17, 2025) .............................................................. 2

*AFGE v. OPM*,
770 F. Supp. 3d 1215 (N.D. Cal. 2025), *appeal dismissed*, 2025 WL 2976744
(9th Cir. Sept. 29, 2025)........................................................................................... 2

*Am. Ass'n of Univ. Professors v. Trump*,
815 F. Supp. 3d 907 (N.D. Cal. 2025) ..................................................................... 5

*Am. Bev. Ass'n v. City & Cnty. of San Francisco*,
916 F.3d 749 (9th Cir. 2019) (en banc)................................................................. 22

*Arc of California v. Douglas*,
757 F.3d 975 (9th Cir. 2014)............................................................................. 18, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................... 24

*Axon Enterprise, Inc. v. FTC*,
598 U.S. 175 (2023) ............................................................................................... 10

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023)........................................................................... 22, 23

*Barone v. City of Springfield, Or.*,
902 F.3d 1091 (9th Cir. 2018)................................................................................. 8

*Barroca v. Hayward Area Recreation & Parks Dist.*,
2026 WL 497399 (N.D. Cal. Feb. 23, 2026)..................................................... 3, 5, 6

*Barry v. Thomas Jefferson Univ. Hosps., Inc.*,
2026 WL 935837 (E.D. Pa. Apr. 7, 2026) .............................................................. 7

*Bridges v. Colvin*,
136 F. Supp. 3d 620 (E.D. Pa. 2015), *aff'd sub nom.*, 672 F. App'x 162 (3d Cir.
2016)................................................................................................................... 9, 10

PL.'S COMBINED MTD OPP'N                - ii -
& PI REPLY

*California v. Health & Hum. Servs.*,
  390 F. Supp. 3d 1061 (N.D. Cal. 2019) ................................................................. 18

*Caribbean Marine Servs. Co., Inc. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988)................................................................................. 21

*Damiano v. Grants Pass Sch. Dist. No. 7*,
  140 F.4th 1117 (9th Cir. 2025) ............................................................................... 8

*Deaver v. Seymour*,
  822 F.2d 66 (D.C. Cir. 1987) ................................................................................ 17

*Doe v. Horne*,
  115 F.4th 1083 (9th Cir. 2024)............................................................................. 18

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) ............................................................................................. 9, 12

*ELT Sight, Inc. v. EyeLight, Inc.*,
  2020 WL 7862134 (C.D. Cal. Aug. 28, 2020) ........................................................ 2

*Eng v. Cooley*,
  552 F.3d 1062 (9th Cir. 2009)................................................................................. 7

*Epic Systems Corporation v. Lewis*,
  584 U.S. 497 (2018) .............................................................................................. 24

*Esparraguera v. Dep't of the Army*,
  981 F.3d 1328 (Fed. Cir. 2020)............................................................................. 11

*Firearms Pol'y Coal. Second Amend. Def. Comm. v. Harris*,
  192 F. Supp. 3d 1120 (E.D. Cal. 2016)................................................................. 21

*Forbes Media LLC v. United States*,
  61 F.4th 1072 (9th Cir. 2023)............................................................................... 14

*Frederick Douglass Found., Inc. v. D.C.*,
  82 F.4th 1122 (D.C. Cir. 2023) ........................................................................ 8, 16

*Garcia v. Andrews*,
  2025 WL 2420068 (E.D. Cal. Aug. 21, 2025) (Thurston, J.).................................. 2

*Garcia v. Lawn*,
  805 F.2d 1400 (9th Cir. 1986)......................................................................... 19, 20

*Geo Grp., Inc. v. Inslee*,
  151 F.4th 1107 (9th Cir. 2025).............................................................................. 16

*Giebel v. Sylvester*,
  244 F.3d 1182 (9th Cir. 2001)................................................................................. 5

*Giles v. Garland*,
   2024 WL 4556462 (6th Cir. Aug. 21, 2024) ................................................................. 17

*Gonzalez v. Manjarrez*,
   2013 WL 152177 (W.D. Tex. Jan. 4, 2013) ................................................................. 12

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ..................................................................................... 2

*In re Grand Jury Subpoenas*,
   2026 WL 710202 (D.D.C. Mar. 13, 2026), *reconsideration denied sub nom.*,
   2026 WL 1224046 (D.D.C. Apr. 3, 2026) .................................................................. 18

*Guillemard-Ginorio v. Contreras-Gomez*,
   585 F.3d 508 (1st Cir. 2009) ....................................................................................... 17

*Harvard v. Cesnalis*,
   973 F.3d 190 (3d Cir. 2020) .......................................................................................... 4

*Health Freedom Def. Fund, Inc. v. Carvalho*,
   148 F.4th 1020 (9th Cir. 2025) ................................................................................... 19

*Hearns v. Terhune*,
   413 F.3d 1036 (9th Cir. 2005) .................................................................................... 24

*Heineke v. Santa Clara Univ.*,
   736 F. App'x 622 (9th Cir. 2018) (relying on *Chalk v. U.S. Dist. Court Cent.
   Dist. of Cal.*, 840 F.2d 701 (9th Cir. 1988)) ............................................................. 20

*Houlihan v. Off. of Pers. Mgmt.*,
   909 F.2d 383 (9th Cir. 1990) ................................................................................ 9, 23

*Hoye v. City of Oakland*,
   653 F.3d 835 (9th Cir. 2011) ........................................................................................ 6

*Hubbard v. EPA Administrator*,
   809 F.2d 1 (D.C. Cir. 1986) ........................................................................................ 24

*Irizarry v. United States*,
   427 F.3d 76 (1st Cir. 2005) ........................................................................................... 9

*Isaacson v. Mayes*,
   84 F.4th 1089 (9th Cir. 2023) ..................................................................................... 15

*Johnson v. Multnomah Cnty., Or.*,
   48 F.3d 420 (9th Cir. 1995) ........................................................................................... 8

*Jones v. Indianapolis, City of*,
   2004 WL 691899 (S.D. Ind. Mar. 31, 2004) .............................................................. 14

PL.'S COMBINED MTD OPP'N                     - iv -
& PI REPLY

*Juluke v. Hodel*,
811 F.2d 1553 (D.C. Cir. 1987) ................................................................................ 17, 18

*Kadrey v. Meta Platforms, Inc.*,
788 F. Supp. 3d 1026 (N.D. Cal. 2025) ............................................................................ 3

*Kelly v. Hegseth*,
__ F.Supp.3d __, 2026 WL 391777 (D.D.C. Feb. 12, 2026) .................................... 21

*Kotarski v. Cooper*,
799 F.2d 1342, 1348 (9th Cir. 1986), *cert. granted, judgment vacated*, 487 U.S.
1212 (1988), *and on reconsideration*, 866 F.2d 311 (9th Cir. 1989) ...................... 10

*Los Angeles Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026) .................................................................................... 20

*Lydo Enters., Inc. v. City of Las Vegas*,
745 F.2d 1211 (9th Cir. 1984) ..................................................................................... 19

*Meinecke v. City of Seattle*,
99 F.4th 514 (9th Cir. 2024) ........................................................................................ 21

*Mendocino Env't Ctr. v. Mendocino Cnty.*,
192 F.3d 1283 (9th Cir. 1999) ..................................................................................... 22

*Minshew v. Donley*,
911 F. Supp. 2d 1043 (D. Nev. 2012) .......................................................................... 24

*Mitchum v. Hurt*,
73 F.3d 30 (3d Cir. 1995) ............................................................................................... 9

*Munoz-Munoz v. Locke*,
2013 WL 11319006 (W.D. Wash. Apr. 24, 2013) ...................................................... 12

*Munroe v. Cent. Bucks Sch. Dist.*,
805 F.3d 454 (3d Cir. 2015), *as amended* (Oct. 25, 2019) ......................................... 8

*Oakland Tribune, Inc. v. Chronicle Publishing Co.*,
762 F.2d 1374, 1377 (9th Cir. 1985) ........................................................................... 18

*Orsay v. U.S. Dep't of Just.*,
289 F.3d 1125 (9th Cir. 2002), *abrogated on other grounds by Millbrook v.
United States*, 569 U.S. 50 (2013) ............................................................................... 24

*Peace Ranch, LLC v. Bonta*,
93 F.4th 482 (9th Cir. 2024) .................................................................................. 15, 16

*Peters v. United States*,
2024 WL 2274079 (D. Colo. May 20, 2024) .............................................................. 17

PL.'S COMBINED MTD OPP'N                    - v -
& PI REPLY

*Pinar v. Dole*,
747 F.2d 899 (4th Cir. 1984)................................................................................................12

*Pryor v. Sch. Dist. No. 1*,
99 F.4th 1243 (10th Cir. 2024)............................................................................................21

*Rankin v. McPherson*,
483 U.S. 378 (1987) ..............................................................................................................8

*Rendish v. City of Tacoma*,
123 F.3d 1216 (9th Cir. 1997)..............................................................................................20

*Roth v. Veteran's Admin. of Gov't of U.S.*,
856 F.2d 1401 (9th Cir. 1988)................................................................................................8

*Sampson v. Murray*,
415 U.S. 61 (1974) ..............................................................................................................19

*Saul v. United States*,
928 F.2d 829 (9th Cir. 1991)..................................................................................... 10, 11, 12

*Scott v. Mabus*,
618 F. App'x 897 (9th Cir. 2015)............................................................................................6

*Semper v. Gomez*,
747 F.3d 229 (3d Cir. 2014)....................................................................................................9

*Smith v. City of Atl. City*,
138 F.4th 759 (3d Cir. 2025)...................................................................................................4

*Spears v. Stewart*,
283 F.3d 992 (9th Cir. 2002).................................................................................................10

*Stannard v. State Ctr. Cmty. Coll. Dist.*,
733 F. Supp. 3d 946 (E.D. Cal. 2024)...................................................................................20

*Stavrianoudakis v. U.S. Department of Fish & Wildlife*,
435 F. Supp. 3d 1063 (E.D. Cal. 2020)...................................................................... 15, 16, 21

*Steik v. Garcia*,
2003 WL 22992223 (N.D. Cal. Dec. 9, 2003) ........................................................................6

*Stolt-Nielsen, S.A. v. United States*,
442 F.3d 177 (3d Cir. 2006), *as amended* (May 16, 2006).....................................................17

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ....................................................................................................... 15, 17

*Tandon v. Newsom*,
593 U.S. 61 (2021) (per curiam) .............................................................................................4

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
  316 F.2d 804 (9th Cir. 1963) ................................................................................ 2

*Thomas v. Anchorage Equal Rts. Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) ............................................................................ 15

*Toro v. Napolitano*,
  2013 WL 4102158 (S.D. Cal. Aug. 13, 2013) .................................................... 12

*Trump v. United States*,
  2022 WL 4366684 (11th Cir. Sept. 21, 2022) .................................................... 17

*Ulrich v. City & Cnty. of San Francisco*,
  308 F.3d 968 (9th Cir. 2002) .............................................................................. 14

*United Farm Workers v. Noem*,
  785 F. Supp. 3d 672 (E.D. Cal. 2025) (Thurston, J.) ........................................ 19

*United States v. McIntosh*,
  833 F.3d 1163 (9th Cir. 2016) ............................................................................ 17

*Waln v. Dysart Sch. Dist.*,
  54 F.4th 1152 (9th Cir. 2022) ..................................................................... 4, 5, 8

*Ward v. KaTom Rest. Supply, Inc.*,
  2026 WL 184279 (E.D. Tenn. Jan. 23, 2026) ..................................................... 6

*Warsoldier v. Woodford*,
  418 F.3d 989 (9th Cir. 2005) .............................................................................. 20

*Webster v. Doe*,
  486 U.S. 592 (1988) .................................................................................. 1, 11, 12

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ............................................................................ 22

*Wilborn v. Napolitano*,
  2012 WL 354494 (S.D. Cal. Feb. 2, 2012) ........................................................ 12

*Wilborn v. Napolitano*,
  2013 WL 1222061 (S.D. Cal. Mar. 25, 2013) .................................................... 12

*Wolfson v Brammer*
  616 F.3d 1045 (9th Cir. 2010) ............................................................................ 21

## Statutes

5 U.S.C. § 552a ............................................................................................... 23, 24

5 U.S.C. § 1214(b) ............................................................................................... 11

5 U.S.C. § 2302(a) .................................................................................................... 24

28 U.S.C. § 2401(a) .................................................................................................. 10

Civil Service Reform Act ......................................................................................... 22

**Other Authorities**

36 C.F.R. ................................................................................................................... 4

36 C.F.R. § 2.51 ..................................................................................................... 3, 4

Fed. R. Civ. P. 12(b) ............................................................................................... 24

PL.'S COMBINED MTD OPP'N                    - viii -
& PI REPLY

**INTRODUCTION**

The first and only time Defendants enforced a fifteen-year-old regulation against a display on El Capitan was when Dr. Joslin and a group of fellow climbers displayed a trans pride flag. That is textbook viewpoint discrimination. And the government's own submissions confirm as much. Yosemite's superintendent acknowledged that the park has a "long tradition" of flag displays on El Capitan, yet failed to identify any other instance that resulted in punishment. Defendants' attempts to distinguish Dr. Joslin's display focus on immaterial differences and ignore the more permissive ways that the Ninth Circuit has recognized comparators in selective enforcement cases. And Defendants identify no permissible interest in treating Dr. Joslin's display differently from others.

Apart from the merits, Defendants contend an assortment of justiciability issues prevent this Court from considering Dr. Joslin's claims. As to employment, Defendants ignore Supreme Court precedent requiring that judicial review be available for constitutional violations. *See Webster v. Doe*, 486 U.S. 592, 603 (1988). And Defendants misconstrue circuit precedent applying that principle to federal employment. *See AFGE Local 1 v. Stone*, 502 F.3d 1027, 1039 (9th Cir. 2007). In fact, Dr. Joslin has unsuccessfully pursued OSC relief to no avail. Because the rest of that process fails to provide for meaningful judicial review, this Court may hear Dr. Joslin's claims.

As to criminal relief, Defendants seem to argue (without ever denying) that a criminal investigation never existed in the first place. But NPS told Dr. Joslin and national media outlets alike that there was an ongoing criminal investigation. Absent any disavowal of these very public statements, Dr. Joslin has clear standing.

The effect of Defendants' arguments is to insulate their wrongdoing from any meaningful judicial review. That is not, and cannot be, the law. For these reasons, Dr. Joslin asks the Court to grant a preliminary injunction and deny Defendants' motion to dismiss in full.

**ARGUMENT**

**I. DR. JOSLIN IS ENTITLED TO A PRELIMINARY INJUNCTION.**

**A.    Dr. Joslin need not meet the standard for a mandatory injunction.**

Dr. Joslin seeks a restoration of the status quo that existed prior to Defendants' campaign of unconstitutional actions. But Defendants ask this Court to apply the heightened standard associated

PL.'S COMBINED MTD OPP'N                      - 1 -
& PI REPLY

with a mandatory injunction, required only when the moving party seeks to change the pre-controversy status quo. *See* Mem. of Points and Authorities in Opp'n to Mot. for Prelim. Inj. (Opp'n), ECF No. 35, 4–5. Although Dr. Joslin could meet this heightened standard, Dr. Joslin requests only a prohibitory injunction, and therefore need only demonstrate likelihood of success on the merits. *See* Mem. in Support of Pl.'s Mot. for Prelim. Inj. (PI Mem.), ECF No. 29-1, 7.

"It is so well settled as not to require citation of authority that the usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963). "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy[.]'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner*, 316 F.2d at 809) (finding "the status quo ante litem existed before" the allegedly illegal behavior at issue in litigation). Through this motion, Dr. Joslin seeks to restore just that—the status quo before Defendants' unconstitutional actions. *See AFGE v. OPM*, 2025 WL 835337, at *1 (9th Cir. Mar. 17, 2025) (holding that staying a reinstatement order "would not preserve the status quo" but "would do just the opposite — it would disrupt the status quo and turn it on its head"); *see also Garcia v. Andrews*, 2025 WL 2420068, at *8 (E.D. Cal. Aug. 21, 2025) (Thurston, J.). And "where an injunction 'seeks merely to reverse action' taken by a party after the last uncontested status quo, the relief sought 'is prohibitory, not mandatory,' and no heightened standard needs to be applied"; otherwise, defendants could "seek shelter under a current 'status quo' precipitated by their wrongdoing." *ELT Sight, Inc. v. EyeLight, Inc.*, 2020 WL 7862134, at *26–27 (C.D. Cal. Aug. 28, 2020) (brackets and citations omitted). So, the typical *Winter*[1] factor analysis applies. *See AFGE v. OPM*, 770 F. Supp. 3d 1215, 1224–27 (N.D. Cal. 2025), *appeal dismissed*, 2025 WL 2976744 (9th Cir. Sept. 29, 2025) (applying likelihood of success on the merits standard to order reinstatement of probationary employees).

**B.      Dr. Joslin is likely to succeed on the merits of their selective enforcement claim.**

Rather than justify their conduct, Defendants' submission confirms the selective nature of

---

[1]    *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

PL.'S COMBINED MTD OPP'N                    - 2 -
& PI REPLY

their actions against Dr. Joslin.  Not only did Defendants target and punish Dr. Joslin for protected expression, they also did so with the requisite intent under either the First or Fifth Amendment.  And, either way, the *Pickering*[2] balance counsels in Dr. Joslin's favor.

1.      *Defendants' submission confirms the selective nature of Dr. Joslin's punishment.*

On selectivity, Defendants miss the forest for the trees.  Defendants concede that "Yosemite National Park has a long tradition of hikers, climbers, and other Park visitors celebrating their achievements by unfurling" messages supportive of "the armed forces, universities, sports teams, [and] state or national flags[.]"  Decl. of Raymond McPadden ("McPadden Decl."), ECF No. 35-2, ¶ 7.[3]  Despite this long history of expression, Defendants further concede that they have enforced the regulation, which has been in place for fifteen years, PI Mem. 3, in only one situation: against Dr. Joslin's speech in support of the trans community.  Opp'n 12–13 (identifying no other punished individuals).  This stark reality is the heart of Dr. Joslin's case, as it establishes a "general policy of not enforcing [the demonstration regulation] against" any other speech.  *Barroca v. Hayward Area Recreation & Parks Dist.*, 2026 WL 497399, at *7 (N.D. Cal. Feb. 23, 2026).

Meanwhile, Defendants' attempts to distinguish the specific comparators raised by Dr. Joslin fall short.  First, Defendants acknowledge that at least one Yosemite employee was involved in the upside-down American flag display and was not punished for that display.  Opp'n 13.  Defendants claim that this employee was not similarly situated because "[t]enured employees are not similarly situated to probationary employees[,]" but that ignores a key fact about the trans pride flag display: two additional *tenured* employees were also fired for the same conduct.  Joslin Second Decl.[4] ¶ 2.

---

[2]  *Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968).

[3] While Defendants claim that these flags were "usually 3' x 5' or smaller," it is unclear why that makes a difference to the applicability of the regulation at issue; flags, regardless of their size, are designed for "onlookers."  *See* McPadden Decl. ¶ 7; 36 C.F.R. § 2.51.  Moreover, Yosemite's new regulation banning flags larger than 3' x 5' implicitly recognizes that there was no previous differentiation based on size.  *See* McPadden Decl. ¶ 11.

[4] Second Decl. of Shannon "SJ" Joslin, attached hereto as Ex. 2.  *See Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1048 n.9 (N.D. Cal. 2025) ("[A] party may attach to a reply brief declarations that are a 'reasonable response to the opposition.'" (cleaned up)).  Dr. Joslin's first declaration (ECF No. 29-4) will be referred to herein as "Joslin First Decl."

PL.'S COMBINED MTD OPP'N                    - 3 -
& PI REPLY

The difference in treatment was not that Dr. Joslin was a probationary employee; the difference was the content of the speech. And Defendants' further explanation for not punishing the employee involved in the upside-down flag display—that he had already been identified for termination, Opp'n 13—makes little sense in the context of a tenured employee with full civil service protections: a *proper* violation of a park regulation would surely have strengthened Yosemite's case for termination. Instead, use of the regulation was reserved for Dr. Joslin and the others who expressed support for trans rights.

Second, Defendants' attempt to sweep aside the non-employee comparators ignores the breadth of the regulation at issue and the relevant standard for identifying similarly situated individuals. Comparators do not need to be identical to be similarly situated. *See Harvard v. Cesnalis*, 973 F.3d 190, 205–06 (3d Cir. 2020). Under the Ninth Circuit's First Amendment jurisprudence, "whether two activities are comparable . . . must be judged against the asserted government interest that justifies the regulation at issue." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159, 1163 (9th Cir. 2022) (quoting *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam)) (holding that "the same facts that make the selective enforcement not 'generally applicable' in the free-exercise context, make the selective enforcement not 'content or viewpoint neutral' in the free-speech context."); *see also Smith v. City of Atlantic City*, 138 F.4th 759, 778 (3d Cir. 2025) (explaining for an Equal Protection Clause claim that "[a]s with the free-exercise inquiry, we identify comparators according to their impact on the City's asserted interest.").

The regulation at issue is *not* an employment regulation; it is applicable to the public at large and carries potential criminal penalties. *See* 36 C.F.R. § 2.51; PI Mem. 3. Designating (or not designating) an area as available for demonstrations is guided by six enumerated purposes, all of which apply equally to employees and non-employees. 36 C.F.R. § 2.51(c)(1).[5] That is one reason

---

[5] 36 C.F.R. § 2.51(c)(1) provides: "Locations may be designated as available for demonstrations under this section . . . only if these activities would not: (i) Cause injury or damage to park resources; (ii) Unreasonably impair the atmosphere of peace and tranquility maintained in wilderness, natural, historic, or commemorative zones; (iii) Unreasonably interfere with interpretive, visitor service, or other program activities, or with the administrative activities of the National Park Service; (iv) Substantially impair the operation of public use facilities or services of National Park Service concessioners, holders of commercial use authorizations, or contractors; (v) Present a clear and

PL.'S COMBINED MTD OPP'N                - 4 -
& PI REPLY

Dr. Joslin's First Amendment claim is not limited to employment: it challenges multiple agencies' "vindictive campaign" against Dr. Joslin, as opposed to just actions by their employer. Am. Compl., ECF No. 28, ¶¶ 1, 72–85; *see Am. Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907, 953 (N.D. Cal. 2025) (allowing First Amendment claim against multiple agencies when they engaged in "a coordinated effort"). Dr. Joslin's status as an employee—especially when Dr. Joslin did not identify their employment with Yosemite in connection with the display, Joslin First Decl. ¶ 26; Am. Compl. ¶ 53—has no bearing on the "interest[s] that justif[y] the regulation at issue." *Waln*, 54 F.4th at 1159 (quoting *Tandon*, 593 U.S. at 62). In other words, because any display "present[s] a nearly identical threat to those interests," *id.*, the employment distinction is immaterial, *see Barroca*, 2026 WL 497399, at \*7 (rejecting that "the difference between a cat and a dog is 'material' to the enforcement of the 'all pets' leash law"). In fact, Dr. Joslin, an avid climber and long-time member of the Yosemite community, went to great lengths to *protect* these interests. *See, e.g.*, Joslin First Decl. ¶ 15 ("We intentionally set up in a way that ensured no wildlife or visitor or climber experienced [sic] would be harmed."); *id.* ¶¶ 24–25 (*e.g.*, "We left no trace of the flag or its hanging[.]). And, other than mentioning that some prior displays involved flags of varying sizes, Defendants do not consider whether any other displays "contravened" these interests "to same the degree." *Waln*, 54 F.4th at 1159.[6]

Because "viewpoint discrimination occurs when the government prohibits speech by particular speakers" while allowing others, *see* PI Mem. 11 (quoting *Giebel v. Sylvester*, 244 F.3d 1182, 1188 (9th Cir. 2001) (cleaned up)), Dr. Joslin is likely to successfully prove that Defendants selectively enforced the demonstration regulation against the trans pride flag display.

      2.    *Dr. Joslin has demonstrated the necessary intent for a selective enforcement claim.*

---

present danger to the public health and safety; or (vi) Be incompatible with the nature and traditional use of the particular park area involved."

[6] Neither Defendants' nor Dr. Joslin's examples of other flag displays—including detailed, objective information about multiple instances, Opp'n 12; PI Mem. 9–10—can reasonably be labeled "vague, anecdotal references to unrelated individuals." Opp'n at 12.

PL.'S COMBINED MTD OPP'N     - 5 -
& PI REPLY

Under either the First or Fifth Amendment's selective enforcement test,[7] a plaintiff need not offer direct evidence of viewpoint discrimination; Dr. Joslin can establish "an intentional policy or practice"—and thus the requisite motive—by "extrapolating from a series of enforcement actions." *Hoye*, 653 F.3d at 855.  Dr. Joslin has done so.  Unlike Defendants' cases in which the plaintiffs presented "virtually no evidence" on the similarly situated question, *see Steik v. Garcia*, 2003 WL 22992223, at *8 (N.D. Cal. Dec. 9, 2003)*; Scott v. Mabus*, 618 F. App'x 897, 899 (9th Cir. 2015), Dr. Joslin thoroughly detailed other similarly situated individuals who were not punished, *see supra* section I.B.1; *see* PI Mem. 9–10, 9 n.7.  This enforcement data—or lack thereof—combined with Defendants' unpersuasive justification for targeting Dr. Joslin establishes discriminatory intent.  *See Barroca*, 2026 WL 497399, at *8.

Although not required, Dr. Joslin has also offered more direct evidence of said intent.  Defendants' effort to decouple themselves from the Trump Administration's well-documented campaign against LGBTQ+ rights ignores NPS's contributions to that effort, including removing the pride flag from the NPS-managed Stonewall Uprising Monument site.  *See* PI Mem. 4.  And both declarants in this case—the purported decisionmakers—misgendered Dr. Joslin in their declarations.  Decl. of Danika Globokar ("Globokar Decl."), ECF No. 35-1, ¶¶ 3, 5, 6, 7; McPadden Decl. ¶ 13.  These do not appear to be careless slips of the tongue; both declarants made this error in sworn statements—filings that are typically reviewed with care—in a case centering on transgender rights, and in direct response to submissions in which Dr. Joslin explicitly identifies as non-binary and uses they/them pronouns.  *See* PI Mem. 4; Am. Compl. ¶ 11, Joslin First Decl. ¶¶ 2, 39.  Although these may turn out to be innocent mistakes, they are also consistent with attempts by NPS leadership to erase trans identity altogether.  *See* Wydman First Decl.,[8] Ex. 18 (documenting

---

[7] Defendants advocate for application of the Equal Protection Clause presumably because, in their view, it imposes a heightened burden on Dr. Joslin by requiring proof of motive—an element they contend Dr. Joslin cannot satisfy.  Opp'n 11–12.  But because of the standard used to determine intent in the selective enforcement context, "[a]ny difference between these two approaches is, at least in this case, semantic rather than substantive."  *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011).

[8] First Decl. of Margaret (Emmy) Wydman, ECF No. 29-2.  Counsel's second declaration, attached hereto as Ex. 1, will be referred to herein as "Wydman Second Decl."

PL.'S COMBINED MTD OPP'N          - 6 -
& PI REPLY

NPS's attempt to remove any mention of trans people from the NPS website). Under the circumstances, these declarations, and this pattern, are evidence of discriminatory intent. *See, e.g.*, *Ward v. KaTom Rest. Supply, Inc.*, 2026 WL 184279, at *6 (E.D. Tenn. Jan. 23, 2026); *Barry v. Thomas Jefferson Univ. Hosps., Inc.*, 2026 WL 935837, at *10 (E.D. Pa. Apr. 7, 2026).[9]

> 3.    *The Pickering factors favor Dr. Joslin.*

Defendants do not contend with Dr. Joslin's analysis of the *Pickering* factors, *see* PI Mem. 12–14, asserting instead that "Plaintiff's Motion does not analyze the *Pickering/Eng* factors at all." Opp'n 16. Defendants' *Pickering* arguments nonetheless fail on each prong, as they either retread the merits of Dr. Joslin's claims, *supra* section I.A, or fail to measure up to Dr. Joslin's interest in speaking on a matter of obvious public concern.

First, Defendants all but concede the first prong of the analysis by "assuming that Plaintiff spoke as a private citizen on a matter of public concern[.]" Opp'n 16. And Defendants misunderstand the third *Eng*[10] factor. The third *Eng* factor is not about whether the speech at issue is protected—if the speech was not protected, the Court would never reach *Pickering* at all—it is about causation. *See Eng*, 552 F.3d at 1071. As no one disputes that Dr. Joslin was fired because of the display at the center of this lawsuit, Opp'n 3, Dr. Joslin clearly satisfies this factor.

Second, because the first three factors clearly favor Dr. Joslin, the burden shifts to Defendants to show that the government's "legitimate administrative interests outweigh the employee's First Amendment rights." *Eng*, 552 F.3d at 1071 (internal quotations omitted). None of Defendants' proffered interests can bear that weight. Many of the reasons suggested by Defendants—including "[t]he object of the NPS regulations at issue," that the display constituted "prohibited conduct," and that Dr. Joslin chose a venue that was "off limits," *see* Opp'n 16–17— amount to an assertion that viewpoint discrimination is permissible in a limited or non-public forum. Not so. *See* PI Mem. 11 n.9. Allowing the government to use the fact that a forum was restricted,

---

[9] Moreover, Defendants assertion that "[t]here simply is no evidence that revisions" to the Superintendent's Compendium "were adopted in response to, or for the purpose of suppressing, Plaintiff's expression[,]" Opp'n 15, is flatly contradicted by Mr. McPadden's declaration. *See* McPadden Decl. ¶ 11. At the very least, Dr. Joslin's display sped up the process.

[10]  *Eng v. Cooley*, 552 F.3d 1062 (9th Cir. 2009).

PL.'S COMBINED MTD OPP'N          - 7 -
& PI REPLY

or the reasoning behind that restriction, to outweigh First Amendment rights would effectively extinguish all viewpoint discrimination claims by public employees on limited or non-public forums.  As when applying strict or immediate scrutiny, Defendants must defend their decision with interests in treating Dr. Joslin's display differently from others.  *See Waln*, 54 F.4th at 1159; *Frederick Douglass Found., Inc. v. D.C.*, 82 F.4th 1122, 1143 (D.C. Cir. 2023).

Defendants offer two other interests: the display's "nexus to Plaintiff's employment situs" and the "dozen complaints" that NPS purportedly received "from the public."  Opp'n 17.  Neither suffices to establish "actual injury to [their] *legitimate* interests."  *Johnson v. Multnomah Cnty., Or.*, 48 F.3d 420, 421, 427 (9th Cir. 1995).  As to the first, while there may be situations where nexus to a job site could be relevant, any "practical inquiry" should recognize that a 1,200-square-mile national park is different than an office building.  *Barone v. City of Springfield, Or.*, 902 F.3d 1091, 1099 (9th Cir. 2018) (cleaned up).  Defendants do not, and cannot, contend that Dr. Joslin's responsibilities monitoring wildlife data across Yosemite relate in some special way to El Capitan.  *See* Joslin First Decl. ¶ 8.  Defendants also ignore a plethora of examples of protected *on-site* speech.  *See, e.g.*, *Johnson*, 48 F.3d at 421, 427; *Roth v. Veteran's Admin. of Gov't of U.S.*, 856 F.2d 1401, 1403, 1405–08 (9th Cir. 1988); *Rankin v. McPherson*, 483 U.S. 378, 381, 392 (1987).

As to the second, Defendants' appeal to public complaints amounts to no more than a heckler's veto.  "The First Amendment generally does not permit the so-called heckler's veto, i.e., allowing the public, with the government's help, to shout down unpopular ideas that stir anger."  *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1145 (9th Cir. 2025) (quoting *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 475 (3d Cir. 2015), *as amended* (Oct. 25, 2019)) (cleaned up).  Nor can Defendants rely on alleged workplace disruption when much of the "post-demonstration media attention and publicizing opportunities," Opp'n 17, arose out of Defendants' decision to selectively target Dr. Joslin, as opposed to the speech itself.  *See Roth*, 856 F.2d at 1408 ("Defendants cannot rely on disruption which they instigated or exacerbated to outweigh Roth's first amendment rights.").  Put simply, Defendants fail to make the "more vigorous a showing of disruption" required given how "tightly the First Amendment embraces [Dr. Joslin's] speech."  *Johnson*, 48 F.3d at 427 (internal quotations omitted).

PL.'S COMBINED MTD OPP'N          - 8 -
& PI REPLY

**C.      The CSRA does not preclude employment-related equitable relief.**

Defendants' argument that the CSRA precludes Dr. Joslin's equitable constitutional claims ignores the critical importance of *judicial* review for constitutional claims and the steps Dr. Joslin has already taken at OSC.  At this juncture, the question for the Court is whether remaining procedures afford Dr. Joslin with "meaningful judicial review."  *Bridges v. Colvin*, 136 F. Supp. 3d 620, 646 (E.D. Pa. 2015), *aff'd sub nom.*, 672 F. App'x 162 (3d Cir. 2016).  Because judicial review is not available for either OSC's stay decision nor guaranteed through the remainder of the OSC process, this Court has jurisdiction to review.

This case is controlled by *AFGE Local 1 v. Stone*.  502 F.3d 1027 (9th Cir. 2007).  In *Stone*, the Ninth Circuit held that the CSRA did not preclude "colorable constitutional claims sounding in equity where the plaintiff has no other remedy."  *Id.* at 1034  (internal quotations omitted).  In so doing, the Ninth Circuit explicitly endorsed and adopted the approach of the Third Circuit in *Mitchum v. Hurt*, 73 F.3d 30 (3d Cir. 1995), *see Stone*, 502 F.3d at 1038, which held that employees need not exhaust CSRA remedies before bringing equitable constitutional claims.  *Mitchum*, 73 F.3d at 36; *see also Irizarry v. United States*, 427 F.3d 76, 79 n.4 (1st Cir. 2005) (noting that *Mitchum* allowed for "injunctive relief without exhausting administrative remedies").[11]  Although portions of *Mitchum* were later abrogated by the Supreme Court's decision in *Elgin v. Dep't of Treasury*, 567 U.S. 1, 16 (2012), *Mitchum*'s lack of exhaustion requirement was not.  *Bridges*, 136 F. Supp. 3d at 643.  And the Third Circuit later harmonized the surviving portions of *Mitchum*, *Elgin*, and *Webster,* discussed *infra*, to form the rule that "a federal employee who could not pursue meaningful relief through a remedial plan that includes some measure of meaningful judicial review has the right to seek equitable and declaratory relief for alleged constitutional violations."  *Semper v. Gomez*, 747 F.3d 229, 242 (3d Cir. 2014).  Consistent with the Ninth Circuit's decision in *Stone*, that is the rule this Court should follow.

The remaining OSC process does not divest this Court of jurisdiction because it does not

---

[11] *Houlihan v. OPM*, 909 F.2d 383, 384 (9th Cir. 1990), the only Ninth Circuit case cited by Defendants for a CSRA exhaustion requirement, is inapposite because the case did not concern constitutional claims.

PL.'S COMBINED MTD OPP'N                    - 9 -
& PI REPLY

include any measure of meaningful judicial review.  *See* PI Mem. 14–17.  As thoroughly reasoned and held by an Eastern District of Pennsylvania court, "a remedial procedure that requires a Plaintiff to surrender control of his claim to an office that has vast discretion not to prosecute his action does not afford Plaintiff meaningful judicial review of his claim."  *Bridges*, 136 F. Supp. 3d at 646–47 (cleaned up).  The Ninth Circuit's approach in the first *Kotarski v. Cooper* case is also instructive.  *See* 799 F.2d 1342, 1348 (9th Cir. 1986), *cert. granted, judgment vacated*, 487 U.S. 1212 (1988), *and on reconsideration*, 866 F.2d 311 (9th Cir. 1989).  Although that opinion was vacated on other grounds, and thus provides only persuasive authority, *see Spears v. Stewart*, 283 F.3d 992, 1017 n.16 (9th Cir. 2002), its discussion of the OSC process remains true.  *See Bridges*, 136 F. Supp. 3d at 645 n.22.  Like the Third Circuit, the Ninth Circuit keyed in on the highly discretionary nature of the process, holding that it did "not regard this [OSC] structure as one that provides 'meaningful remedies' to one whose constitutional rights have been violated."  *Kotarski*, 799 F.2d at 1348.

The statute of limitations could also bar judicial review if Dr. Joslin is forced to wait until the end of OSC's investigation.  According to a 2018 GAO report, cases that got far enough for OSC to refer to agencies lasted up to 4.2 years.  Wydman Second Decl., Ex. 1, at 18.  And that was before the recent mass terminations across the federal government: in 2025, OSC received "a record-setting 9,820 new cases," up almost triple since 2021.  Wydman Second Decl., Ex. 2, at 4–5.  A lengthy investigation into Dr. Joslin's termination could thus push the case beyond the six-year statute of limitations for equitable constitutional claims.  *See* 28 U.S.C. § 2401(a).  Because the CSRA does not provide judicial review at the end of the line, that could mean total evasion of the judicial process.  *See Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023) (considering the "here-and-now injury" of "subjection to an unconstitutionally structured decisionmaking process," which the Court found "is impossible to remedy once the proceeding is over, which is when appellate review kicks in" (cleaned up)).

Defendants instead urge this Court to rely on *Saul v. United States*, 928 F.2d 829 (9th Cir. 1991), which pre-dates and is explicitly cabined by *Stone*, *see* 502 F.3d at 1036–37.  To the extent *Saul* retains vitality for non-*Bivens* cases, it is only for the idea that plaintiffs should seek a stay from OSC before going to federal court, to try to mitigate harm without need of judicial intervention.

PL.'S COMBINED MTD OPP'N          - 10 -
& PI REPLY

*Saul*, 928 F.2d at 843. Dr. Joslin has done so. As background, the CSRA allows OSC to request that the Merit Systems Protection Board ("MSPB") "order a stay of any personnel action for 45 days if the Special Counsel determines that there are reasonable grounds to believe that the personnel action was taken . . . as a result of a prohibited personnel practice." 5 U.S.C. § 1214(b)(1)(A)(i). Accordingly, Dr. Joslin filed a complaint with OSC on December 5, 2025, and a request for a stay in March. Am. Compl. ¶ 71; Joslin First Decl. ¶ 45. On March 27, 2026, four days before Dr. Joslin filed the operative complaint, and nearly four months after Dr. Joslin filed their complaint with OSC, OSC denied Dr. Joslin's stay request. Wydman First Decl., Ex. 42; Am. Compl. ¶ 71. Dr. Joslin cannot appeal this stay decision to the MSPB, *see* 5 U.S.C. § 1214(b), or to the Federal Circuit, *see Esparraguera v. Dep't of the Army*, 981 F.3d 1328, 1338 (Fed. Cir. 2020) ("[T]he CSRA channels judicial review of an adverse action exclusively through the Federal Circuit only if it first channels review through the [MSPB].").[12] So, Dr. Joslin has fully pursued that relief.

*Saul* specifically discusses and relies upon OSC's stay procedure. To be sure, most of *Saul* is about *Bivens* cases, and thus irrelevant to Dr. Joslin's claims. *See* 928 F.2d at 836. At the end of the opinion, however, the court denied leave to add an equitable constitutional claim, holding that the "CSRA precludes Saul from seeking injunctive relief for his asserted constitutional injury just as it precludes him from bringing a *Bivens* action for damages." *Id.* at 843. As mentioned, the Ninth Circuit later cabined *Saul* to its facts, noting with skepticism that "extending *Saul* . . . seems particularly ill advised" given that the decision "failed to make any mention of *Webster*, in which the Supreme Court declared that a 'serious constitutional question . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim.'" *Stone*, 502 F.3d at 1036–37 (cleaned up) (quoting *Webster*, 486 U.S. at 603). But even on its own terms, *Saul*'s conclusion rested on the fact that the CSRA "provides its own limited form of injunctive relief, by permitting the OSC to seek a stay of a prohibited personnel practice," *Saul*, 928 F.2d at 843—and

---

[12] For the same reason, Defendants argument that Dr. Joslin's means of judicial review is "exclusively with the Federal Circuit" fails. Opp'n 11; Mem. of Points and Authorities in Support of Defs.' Mot. to Dismiss ("MTD Mem."), ECF No. 34-1, 10. The Federal Circuit lacks jurisdiction under the CSRA unless the MSPB renders a decision first. *Esparraguera*, 981 F.3d at 1338.

the plaintiff there failed to seek that administrative relief, *id.* at 833. Indeed, that is the *only* justification offered for the court's conclusion that, in the context of a far less serious personnel action, "the available statutory remedies are constitutionally adequate to provide relief." *Id.* at 843 (quoting *Pinar v. Dole*, 747 F.2d 899, 912 (4th Cir. 1984)). None of the cases cited by Defendants considered a plaintiff like Dr. Joslin, who had already tried and failed to obtain a stay (or any other relief) through the OSC. *See* MTD Mem. 7–8, *and* Opp'n 9 n.9 (both citing *Toro v. Napolitano*, 2013 WL 4102158, at *1 (S.D. Cal. Aug. 13, 2013) (no mention of OSC complaint); *Wilborn v. Napolitano*, 2013 WL 1222061, at *1-2 (S.D. Cal. Mar. 25, 2013) (appealing from MSPB decision);[13] *Munoz-Munoz v. Locke*, 2013 WL 11319006, at *4 (W.D. Wash. Apr. 24, 2013) ("failed to bring her claim to the OSC"); *Gonzalez v. Manjarrez*, 2013 WL 152177, at *2 (W.D. Tex. Jan. 4, 2013) ("never attempted to file a complaint with the OSC")). For these reasons, *Saul* poses no obstacle for Dr. Joslin's claims.

Defendants also argue that this is all beside the point because, in fact, no opportunity for judicial review is required at any point in the process. *See* Opp'n 9. But that is simply wrong. Defendants do not so much as mention *Webster*, binding Supreme Court precedent that creates a strong presumption of judicial review for colorable constitutional claims. *See Webster*, 486 U.S. at 603. Nor do they contend with *Elgin*, which thoroughly considered whether the CSRA provided "meaningful judicial review" for employees appealing to the MSPB and then the Federal Circuit, ultimately finding that it did. *See* 567 U.S. at 15–21. Although Defendants cherry-pick a line from

---

[13] Contrary to Defendants' suggestion, Opp'n 9–10, the *Wilborn* cases demonstrate the enduring importance of judicial review. In that case, the plaintiff appealed his non-promotion to the MSPB and received an unfavorable result. *Wilborn v. Napolitano*, 2012 WL 354494, at *1 (S.D. Cal. Feb. 2, 2012). Rather than appeal to the Federal Circuit, he went to the district court. *Id.* Originally, the district court denied the defendant's motion to dismiss his constitutional claims because "Defendant provide[d] no argument or analysis of whether Plaintiff could obtain the relief he is requesting through the CSRA." *Id.* at *9. Later that year, the Supreme Court decided *Elgin*, which held that for those receiving MSPB decisions, the CSRA did not "foreclose all judicial review of petitioners' constitutional claims, but merely directs that judicial review shall occur in the Federal Circuit." *Wilborn v. Napolitano*, 2013 WL 1222061, at *3 (S.D. Cal. Mar. 25, 2013). The district court then reversed course. *Id.* Although the presence of the MSPB ruling (and thus Federal Circuit right of appeal) makes *Wilborn* an imperfect factual comparator for this case, the reliance on the availability of judicial review by *some court* stands.

*Stone* that refers only to a "remedy," Opp'n 9, they ignore that *Stone* also held that *Webster* "provides the relevant legal framework," and framed the question as whether the relevant statutory scheme "expresses a clear intention on the part of Congress to prohibit judicial review of employees' colorable constitutional claims."  502 F.3d at 1034–36.

\* \* \*

In short, the crux of CSRA preclusion is whether Dr. Joslin can obtain meaningful judicial review of their constitutional claims through the CSRA.  Although there was once a chance that OSC could have at least mitigated Dr. Joslin's harm in the short term by seeking and receiving a stay, OSC has now rejected that avenue to relief.  Taking that as a given, further administrative exhaustion is not required.  Even if there were some possibility of relief for Dr. Joslin years down the line through the OSC process, that relief could never effectively redress the ongoing, daily irreparable harm accumulating now.  And at any time across those years, OSC could simply drop the case with no guarantee of further review by anyone.  Because Dr. Joslin's constitutional rights should not be determined based on the whims of a fully discretionary process unreviewable by an Article III court, this Court has jurisdiction.

**D.      Dr. Joslin's request for relief as to criminal enforcement is properly before this Court.**

Setting apart relief against NPS and DOI as employers, Defendants argue that this Court cannot order relief as to the criminal consequences facing Dr. Joslin because (1) there never was a criminal investigation; (2) any challenge to such a criminal investigation is not ripe; and (3) there are equitable reasons not to order relief against DOJ.  Each of these arguments fails in turn.

*1.      Defendants criminally investigated Dr. Joslin.*

Defendants' statement that Dr. Joslin "provides no plausible grounds for indicating" a criminal investigation ever existed is remarkable.  *See* Opp'n 18; MTD Mem. 11.  NPS repeatedly told Dr. Joslin and the public that there was, indeed, a criminal investigation.  And notably missing from Defendants' brief is any actual denial of such an investigation, even though Defendants would be the only ones to have that information.  They cannot now disclaim the criminal investigation they publicly announced.

PL.'S COMBINED MTD OPP'N                - 13 -
& PI REPLY

Defendants' conduct strongly indicates an ongoing criminal investigation.  When NPS first contacted Dr. Joslin about the flag display, the interviewer introduced himself as the "law enforcement specialist" conducting an "investigation" into the flag display.  Joslin First Decl. ¶ 29.  In that first post-flag display interview, Defendants invoked Dr. Joslin's Miranda rights before confirming that Dr. Joslin was under criminal investigation.  Joslin First Decl. ¶ 30.  And Defendants bragged to multiple national media outlets about their criminal investigation into Dr. Joslin, including the potential for criminal penalties.  *See* Wydman First Decl., Exs. 23–26.  The existence of a criminal investigation is thus no "mere label or conclusion[.]"  Opp'n 19; MTD Mem. 11.  To argue otherwise is to suggest that NPS engaged in a campaign of defamatory lies targeting Dr. Joslin, which could itself violate Dr. Joslin's constitutional rights.  *See, e.g.*, *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002).

Instead, Defendants place great weight on the lack of any overt statement by DOJ or the U.S. Attorney's Office.  Opp'n 18; MTD Mem. 11–12.  But that is unexceptional, given that "DOJ generally will not confirm the existence of or otherwise comment about ongoing investigations."  Wydman Second Decl., Ex. 3, at 6.  DOJ personnel are expressly forbidden from "respond[ing] to questions about the existence of an ongoing investigation or comment[ing] on its nature or progress before charges are publicly filed."  *Id.*  Nor is it notable that Dr. Joslin is unaware of any pre-indictment search warrants or grand jury proceedings, Opp'n 18–19; MTD Mem. 12, as Defendants know well that both "have long been kept secret," *Forbes Media LLC v. United States*, 61 F.4th 1072, 1078 (9th Cir. 2023).  The same is not true , however, when DOJ concludes an investigation.  *See, e.g.*, *Jones v. City of Indianapolis*, 2004 WL 691899, at *1–2 (S.D. Ind. Mar. 31, 2004); Wydman Second Decl., Ex. 4.  Considering the administration's unequivocal and public campaign of threats of criminal punishment against Dr. Joslin, the lack of communication to the contrary carries weight.

If there is no ongoing criminal investigation into Dr. Joslin related to the trans flag display, Defendants should say so.  Such a statement would alleviate a category of ongoing harm to Dr. Joslin and conserve judicial resources by avoiding unnecessary fact-finding by the Court.

      2.     *Dr. Joslin has standing to seek relief from criminal enforcement.*

PL.'S COMBINED MTD OPP'N          - 14 -
& PI REPLY

Defendants' standing analysis focuses entirely on Dr. Joslin's request for relief from enforcement for future conduct. *See* Opp'n 19–20; MTD Mem. 12–14. Defendants thus concede that if there is an ongoing criminal investigation, Dr. Joslin has standing to challenge it. And even as to Dr. Joslin's pre-enforcement challenge, Defendants argue only that Dr. Joslin does not face a credible threat of prosecution.[14] That is wrong.

Defendants brush aside Dr. Joslin's fear largely on the grounds that Dr. Joslin has not actually been criminally investigated, which Dr. Joslin disagrees with for the reasons discussed above. *See supra* section I.D.1. But regardless of whether there is an "open criminal investigation against [Dr. Joslin]," Opp'n 19, Dr. Joslin has standing, because this Court "need not wait" until after a prosecution to adjudicate a claimed constitutional right. *Susan B. Anthony List*, 573 U.S. at 158 (holding that "an actual arrest, prosecution, or other enforcement action is not a prerequisite"). Dr. Joslin can only "eliminate the threat of enforcement by not doing what they want to do"— namely, exercise their free speech rights—so Dr. Joslin can seek pre-enforcement relief. *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023). Moreover, this inquiry "often rises or falls with the enforcing authority's willingness to disavow enforcement," which Defendants have "refuse[d] to" do as to any future conduct. *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 490 (9th Cir. 2024); *see* Opp'n 16–17, 22 (multiple references to Dr. Joslin's prior conduct as a violation of the regulation). Indeed, Defendants repeatedly characterize Dr. Joslin's conduct as unlawful. *See, e.g.*, Opp'n 3, 14, 22; MTD Mem. 1. Defendants cannot simultaneously maintain that Dr. Joslin's conduct violated a regulation with criminal penalties and that Dr. Joslin has no reason to fear prosecution.

Defendants' own authority supports standing. Defendants' principal case, *Stavrianoudakis v. U.S. Department of Fish & Wildlife*, confirms this circuit's "hold your tongue and challenge now approach," and recognizes that "First Amendment cases raise unique standing considerations, that tilt dramatically toward a finding of standing." 435 F. Supp. 3d 1063, 1081–82 (E.D. Cal. 2020) (cleaned up). Dr. Joslin "has clearly alleged self-censorship and a desire to engage in conduct

---

[14] Whether labeled as "standing" or "ripeness," the test is the same. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014); *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).

PL.'S COMBINED MTD OPP'N                    - 15 -
& PI REPLY

prohibited by the regulations," which "is a constitutionally recognized injury." *Id.* at 1082, 87; *see* PI Mem. 18–19; *see* Joslin First Decl. ¶ 43. And quoting *Stavrianoudakis*, Defendants identify evidence that would demonstrate a credible threat, including situations where "a plaintiff was warned twice to stop [demonstrating] and was told by police that he would likely be prosecuted if he repeated the conduct" and where the defendants "specifically warned [the plaintiff] that the challenged regulations would be enforced" against him. *See* Opp'n 19–20; MTD Mem. 13. Dr. Joslin has faced just this type of threat: NPS invoked Dr. Joslin's Miranda rights and confirmed an active criminal investigation to Dr. Joslin's face and to the media. Joslin First Decl. ¶¶ 29–30. Defendants' other examples are incongruent with a pre-enforcement selective enforcement challenge. *See* Opp'n 19–20, *and* MTD Mem. 13 (including "a 'history of past prosecution of parties similarly situated to the plaintiffs'").

In short, Defendants point to no authority that requires anything more than what Dr. Joslin has already demonstrated: (1) pre-existing, First Amendment-based injuries, *see* PI Mem. 17–18; and (2) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder," *id.* at 18–19 (quoting *Geo Grp., Inc. v. Inslee*, 151 F.4th 1107, 1115 (9th Cir. 2025)). *See Peace Ranch*, 93 F.4th at 487.[15]

> 3.      *There is no equitable bar to relief against the Department of Justice.*

Defendants next argue that, regardless of standing, federal courts should not enjoin "federal criminal prosecutions." Opp'n 20–21; MTD Mem 14. In contrast with Defendants' standing arguments, Dr. Joslin does not understand this equitable argument to apply to an injunction against enforcement for future conduct. *See* Opp'n 20–21 (discussing only "an ongoing criminal investigation"). That makes sense, as the availability of pre-enforcement injunctions for potential

---

[15] Nor would an injunction serve as a limitless get-out-of-jail free card for all conduct by Dr. Joslin, who is the only person that would be covered by the injunction. For now, an injunction is necessary to protect pro-LGBTQ speech by Dr. Joslin because that is the only speech being targeted for enforcement. If in the future Defendants begin enforcing this regulation in a non-selective way, the Court can revisit the injunction. *See Frederick Douglass Found.*, 82 F.4th at 1150 ("[Injunctive] relief must be tailored to address any *unconstitutional selectivity*, not enforcement altogether." (emphasis in original)).

PL.'S COMBINED MTD OPP'N                - 16 -
& PI REPLY

future violations is beyond dispute.  *See Susan B. Anthony List*, 573 U.S. at 158; *Juluke v. Hodel*, 811 F.2d 1553, 1557–58 (D.C. Cir. 1987).

As to the ongoing investigation, most of Defendants' cases are readily distinguishable based on timing: no charges have been filed against Dr. Joslin and thus there is no need to enjoin an ongoing criminal prosecution.[16]  *See, e.g.*, *United States v. McIntosh*, 833 F.3d 1163, 1172 (9th Cir. 2016) ("Federal courts traditionally have refused, except in rare instances, to enjoin federal criminal *prosecutions*." (emphasis added)); *Peters v. United States*, 2024 WL 2274079, at*1 (D. Colo. May 20, 2024) (post-indictment proceedings).  The court in *Deaver v. Seymour*, for example, considered "a pending indictment in a federal court" and largely cabined its discussion to situations involving an "ongoing federal criminal proceeding."  822 F.2d 66, 68–69 (D.C. Cir. 1987) (emphasis omitted).

Dr. Joslin does not ask this Court to enjoin post-indictment proceedings.  As Defendants point out, ongoing criminal proceedings already involve judicial supervision, including the opportunity to file motions to dismiss.  Opp'n 21; MTD Mem. 14.  Instead, Dr. Joslin asks this Court to halt the pre-indictment criminal investigation, for which there is no judicial oversight and no guaranteed end.  In other words, the selective criminal investigation is itself the First Amendment violation.  *See Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 183 (3d Cir. 2006), *as amended* (May 16, 2006) ("[A]lthough . . . there is no free-ranging jurisdiction on the part of courts to enjoin criminal prosecutions, that authority does exist in limited situations where the mere threat of prosecution would inhibit the exercise of constitutional freedoms.").  And as discussed in Dr. Joslin's opening brief and the irreparable harm discussion below, the investigation continues to inflict harms on Dr. Joslin that are not redressable through some hypothetical post-indictment process down the road.  *See* PI Mem. 17–18; *infra* section I.E.2.  Courts are unsurprisingly more willing to issue injunctions before formal proceedings have begun.  *See, e.g.*, *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 519 (1st Cir. 2009).

---

[16] Defendants' cases are otherwise unsuitable.  One is a one-page, out-of-circuit order contemplating a request for money damages and "unspecified" equitable relief arising out of ongoing prosecution, *see Giles v. Garland*, 2024 WL 4556462, at *1 (6th Cir. Aug. 21, 2024), and another hinges largely on a seized document-specific analysis, *Trump v. United States*, 2022 WL 4366684, at *9 (11th Cir. Sept. 21, 2022).

PL.'S COMBINED MTD OPP'N                  - 17 -
& PI REPLY

The fact that Dr. Joslin seeks to enjoin a federal, rather than state, investigation counsels in favor of relief.  As courts have recognized, the federalism and comity concerns that underly *Younger* abstention do not apply when a state is not involved.  *Juluke*, 811 F.2d at 1556.  Nor is judicial involvement in ongoing federal investigations as vanishingly rare as Defendants suggest.  *See, e.g.*, ECF No. 38, *In Re: Administrative Subpoena 25-1431-032 to Rhode Island Hosp.*, 2026 WL 1329792, at *10 (D.R.I. May 13, 2026) (granting two related motions to quash subpoenas); *In re Grand Jury Subpoenas*, 2026 WL 710202, at *5 (D.D.C. Mar. 13, 2026) (quashing federal prosecutors' grand jury subpoenas and noting that "a unanimous chorus of sister circuits agrees that courts may quash subpoenas that the Government issued for an improper purpose"), *reconsideration denied sub nom.*, 2026 WL 1224046 (D.D.C. Apr. 3, 2026).  Dr. Joslin seeks the same relief from this Court.

**E.    Dr. Joslin has demonstrated irreparable harm.**

*1.    Dr. Joslin's purported "delay" does not preclude a preliminary injunction.*

Defendants argue simultaneously that Dr. Joslin did not wait long enough to bring their claims to federal court, Opp'n 10, and that Dr. Joslin waited six months too long to obtain a preliminary injunction, Opp'n 5.  In fact, Dr. Joslin filed their operative complaint just four days after the OSC denied Dr. Joslin's request for a stay of their termination.  *See supra* section I.C.  By that measure, there was no delay at all.

Even considering the time elapsed since Dr. Joslin's termination, a few months is "minimal" and is "not a basis for denying preliminary relief."  *California v. HHS*, 390 F. Supp. 3d 1061, 1066–67 (N.D. Cal. 2019) (five-month delay was not "determinative"); *Doe v. Horne*, 115 F.4th 1083, 1111 (9th Cir. 2024) ("[Seven months] was not a long delay in this context[.]").  Dr. Joslin is a far way off from a situation like *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, where the court denied relief after a delay of "a number of years."  762 F.2d 1374, 1377 (9th Cir. 1985).

Regardless, "delay is but a single factor" in determining whether a preliminary injunction should issue, and the Ninth Circuit is "loath to withhold relief solely on that ground."  *Horne*, 115 F.4th at 1111 (internal quotations omitted).  Indeed, "tardiness is not particularly probative in the context of ongoing, worsening injuries."  *Arc of California v. Douglas*, 757 F.3d 975, 990–91 (9th

PL.'S COMBINED MTD OPP'N              - 18 -
& PI REPLY

Cir. 2014).  As discussed below, Dr. Joslin continues to suffer an ongoing, irreparable constitutional injury.  Tomorrow adds as much injury as day one of Dr. Joslin's separation from Yosemite.  And Dr. Joslin continues to experience new harms, like their recent rejection from a search-and-rescue position.  Joslin First Decl. ¶ 41.  In the meantime, Dr. Joslin has attempted to gain relief from OSC, which would have obviated the need for Court intervention.  Dr. Joslin's timing is thus "prudent rather than dilatory," *Douglas*, 757 F.3d at 991, and they cannot be said to be "sleeping on [their] rights," *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (cleaned up).

>           2.           *Defendants' additional irreparable harm arguments are unpersuasive.*

Because Dr. Joslin is likely to succeed on the merits, *supra* section I.B, their ongoing loss of First Amendment rights "unquestionably constitutes irreparable injury."  *UFW v. Noem*, 785 F. Supp. 3d 672, 740 (E.D. Cal. 2025) (Thurston, J.) (cleaned up).  Defendants make three arguments to the contrary, each of which fails: (1) that irreparable harm in the employment context is foreclosed by *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974); (2) that Dr. Joslin cannot show future irreparable harm based on a First Amendment retaliation claim; and (3) that Dr. Joslin's continued public speech in other forums diminishes a claim of irreparable harm.  *See* Opp'n 5–6.

First, Defendants overread *Sampson*.  *Sampson* was not a constitutional case, and it nevertheless allowed for the possibility that some employees would be able to demonstrate irreparable harm.  415 U.S. at 92 n.68.  Indeed, *Sampson* itself limited its scope to those situations involving "external factors common to most discharged employees," *id.*—demonstrably not the case for Dr. Joslin, who is facing an ongoing campaign of First Amendment violations, *supra* section I.B.  Shortly thereafter and with *Sampson* front of mind, the Ninth Circuit explained that "the chilling effect of retaliatory activity can constitute irreparable harm" sufficient for reinstatement of federal employment.  *Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th Cir. 1986); *see also Health Freedom Def. Fund, Inc. v. Carvalho*, 148 F.4th 1020, 1026–27 (9th Cir. 2025) (citing *Garcia* for the holding "that reinstatement to a prior position can be a proper injunctive remedy").  And the Ninth Circuit has

PL.'S COMBINED MTD OPP'N                - 19 -
& PI REPLY

since recognized that *Sampson* did not "create a per se rule for all employment cases," leaving open "the possibility that reputational damage and emotional distress may represent irreparable harm." *Heineke v. Santa Clara Univ.*, 736 F. App'x 622, 624 (9th Cir. 2018) (relying on *Chalk v. U.S. Dist. Court Cent. Dist. of Cal.*, 840 F.2d 701 (9th Cir. 1988)); *see Garcia*, 805 F.2d at 1405 (explaining that *Sampson* limited the relief available for individuals with "only such economic loss"). *Sampson* therefore poses no barrier here, where Dr. Joslin's ongoing constitutional injury and related emotional distress constitute irreparable harm. *See* Joslin First Decl. ¶¶ 39–40.

Second, First Amendment retaliation claims can absolutely provide the basis for irreparable harm.[17] Just last month the Ninth Circuit reaffirmed, in a First Amendment retaliation case, that such plaintiffs could "establish irreparable injury sufficient to merit the grant of injunctive relief" by "demonstrat[ing] the existence of a colorable First Amendment claim." *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1190 (9th Cir. 2026) (brackets omitted) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005)). Even *Rendish v. City of Tacoma*, on which Defendants heavily rely, holds only that there is no "presumption" of irreparable harm. 123 F.3d 1216, 1226 (9th Cir. 1997). *Rendish* otherwise cites approvingly a case holding "that a plaintiff who was likely to succeed on the merits of his First Amendment claim suffered irreparable harm by being penalized for exercising his constitutional rights." *Id.* (explaining that "the finding of irreparable harm depended upon the plaintiff's success on the merits"). Because Dr. Joslin remains without a job and unable to speak freely, the termination constitutes the kind of "continual punishment" that *Warsoldier* recognized as an ongoing injury, 418 F.3d at 1001, as opposed to the completed punishments discussed in *Stannard v. State Ctr. Cmty. Coll. Dist.*, 733 F. Supp. 3d 946, 955 (E.D. Cal. 2024).

---

[17] Dr. Joslin's First Amendment selective enforcement claim is not, formally, a retaliation claim. But like Defendants, Dr. Joslin believes retaliation case law can be analogous and helpful in resolving some overlapping issues.

PL.'S COMBINED MTD OPP'N                   - 20 -
& PI REPLY

Third, Dr. Joslin's ability to speak in any number of forums—including speaking out against the government's unconstitutional actions leading to said self-censorship, Opp'n 17—does not negate the First Amendment harm caused by Dr. Joslin's inability speak in a manner they would otherwise. In *Meinecke v. City of Seattle*, the Ninth Circuit rejected the government's argument that it "merely sought to relocate [the plaintiff's] speech rather than ban it outright." 99 F.4th 514, 524 (9th Cir. 2024). The court found that even directing the plaintiff "to cross the street" burdened the plaintiff's speech. *Id.* Moreover, an individual plaintiff's personal courage to continue speaking cannot defeat a finding of irreparable harm. *See Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1254 (10th Cir. 2024) ("Defendants likely violated Plaintiff's First Amendment rights by retaliating against his speech, and under our precedent this constitutional violation establishes irreparable injury even if the Restrictions do not directly silence Plaintiff's protected speech."); *see also Kelly v. Hegseth*, 2026 WL 391777, at *12 (D.D.C. Feb. 12, 2026) ("Defendants' rule 'would preclude intrepid speakers from ever showing irreparable First Amendment harm.'").

Finally, Dr. Joslin has shown irreparable harm as to criminal enforcement. Dr. Joslin's self-censorship due to the looming threat of criminal punishment continues to date, with no end in sight. *See Stavrianoudakis*, 435 F. Supp. 3d at 1082 ("Self-censorship is a constitutionally recognized injury." (quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1059 (9th Cir. 2010))). And this threat is not a mere "[a]morphous" fear, as Defendants contend, Opp'n 6; rather, Dr. Joslin has demonstrated a risk of "immediate threatened injury" should they speak again. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (cleaned up); *see supra* section I.D.2. Because Defendants are not currently prosecuting Dr. Joslin for the May 20th display and cannot yet prosecute Dr. Joslin for their future desired conduct, Dr. Joslin is without recourse to remedy this harm post-hoc in some future criminal proceeding, so Dr. Joslin "will continue to suffer irreparable harm" absent court intervention, *Firearms Pol'y Coal. Second Amend. Def. Comm. v. Harris*, 192

F. Supp. 3d 1120, 1128 (E.D. Cal. 2016); *see supra* section I.D.3.   Defendants cannot evade constitutional accountability merely by stopping short of indictment; "an official's acts," including threats and investigations, that "would chill or silence a person of ordinary firmness from future First Amendment activities" independently inflict a constitutional injury.  *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotations omitted); *see, e.g.*, *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) ("The investigation by the HUD officials unquestionably chilled the plaintiffs' exercise of their First Amendment rights" even though "officials in Washington ultimately decided not to pursue either criminal or civil sanctions against them.").

## F.    The balance of the equities favors Dr. Joslin.

Because Dr. Joslin satisfies both other *Winter* factors under either preliminary injunction standard, the balance of the parties' interests "tips sharply in [Dr. Joslin's] favor."  *Am. Bev. Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) (internal quotations omitted).   Put differently, by "establish[ing] a likelihood that [an action] violates the U.S. Constitution," Dr. Joslin "ha[s] also established that both the public interest and the balance of the equities favor a preliminary injunction."  *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (internal quotations omitted).   Defendants' consideration of this merged factor ignores both this directive and the "significant public interest in upholding First Amendment principles."  *Am. Bev. Ass'n*, 916 F.3d at 758.

In so doing, Defendants assert broad, untailored interests, none of which counter, or even address, Dr. Joslin's point that "*selectively* targeting speech does not advance" any alleged purpose. PI Mem. 21.   Nor could they; acting within constitutional bounds cannot impose an unwieldly burden on, for example, "the government's ability to enforce regulations protecting national parks." Opp'n 22; *see Baird*, 81 F.4th at 1042.   Instead, "it is always in the public interest to prevent the violation of a party's constitutional rights," *Am. Bev. Ass'n*, 916 F.3d at 758 (cleaned up).   And two

of Defendants' asserted interests—"overriding *lawful* personnel decisions" and "disrupting the Civil Service Reform Act framework," Opp'n 22 (emphasis added)—are wrong for reasons discussed elsewhere in this brief.  *See supra* section I.B.2.

Again, though, the Court need not engage in this balancing exercise to begin with because Dr. Joslin's "likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in [their] favor."  *Baird*, 81 F.4th at 1042.

## II.  DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.

### A.  Dr. Joslin's Privacy Act claim is not precluded by the CSRA.

Dr. Joslin alleges that DOI and NPS's systematic collection of their speech-related activity violated the Privacy Act's prohibition on maintaining "record[s] describing how any individual exercises rights guaranteed by the First Amendment[.]"  5 U.S.C. § 552a(e)(7).  In addition to the flag display, Dr. Joslin alleges that Defendants collected a press release quoting Dr. Joslin.  Am. Compl. ¶ 52.  And NPS was apparently collecting Dr. Joslin's social media commentary for some time after the display.  Globokar Decl. ¶ 6.  Defendants raise only one argument specific to Dr. Joslin's Privacy Act claim: that it is foreclosed by the CSRA.  MTD Mem. 5–6.

Defendants mischaracterize the Amended Complaint.[18]  The Privacy Act claim asserted in the Amended Complaint is not "identical"—and is in fact far narrower—than either Privacy Act claim in the original Complaint.  *Compare* Am. Compl. ¶¶ 86–93 *with* Compl. ¶¶ 85–93, 94–100.  While the original Privacy Act claims targeted Defendants' *use* of First-Amendment-protected information to fire Dr. Joslin, the Privacy Act claim in the Amended Complaint targets the *collection* of that information.  In the former, the "adverse effect," *see* 5 U.S.C. § 552a(g)(1)(D), was the termination.  In the latter, the "adverse effect" was the chilling of Dr. Joslin's First Amendment rights.  Critically, the Privacy Act violation that Dr. Joslin now asserts was perfected *before* Defendants took any personnel action against Dr. Joslin.

While the Ninth Circuit has held that the Privacy Act cannot be used to challenge most

---

[18] Defendants also misquote Dr. Joslin's transfer motion.  *See* MTD Mem. 5 (omitting the word "actions" from the phrase "federal employment actions.").

federal employment actions, *see Houlihan v. OPM*, 909 F.2d 383, 385 (9th Cir. 1990),  it has not foreclosed all Privacy Act claims brought by federal workers.  For example, federal workers can bring unlawful disclosure claims under 5 U.S.C. § 552a(b).  *See, e.g.*, *Minshew v. Donley*, 911 F. Supp. 2d 1043, 1069 (D. Nev. 2012).  The difference turns on whether the conduct challenged constitutes a "personnel action" within the ambit of the CSRA; if the conduct challenged is not a personnel action, the Privacy Act claim is not foreclosed by the Privacy Act.  *Id.*; *see also Orsay v. U.S. DOJ*, 289 F.3d 1125, 1129 (9th Cir. 2002), *abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50 (2013).  Because collection of an employee's First Amendment activities does not fall within one of the twelve enumerated "personnel actions" provided by the CSRA, *see* 5 U.S.C. § 2302(a)(2)(A)(i)–(xii), Defendants' motion to dismiss should be denied as to Dr. Joslin's Privacy Act claim.[19]

**B.    Defendants' other motion-to-dismiss arguments should be rejected for the same reasons Dr. Joslin is entitled to a preliminary injunction.**

As demonstrated above, Dr. Joslin is likely to succeed on the merits of their selective enforcement claim.  *Supra* section I.B.  Federal Rule of Civil Procedure 12(b)(6)'s "plausibility standard," on the other hand, "is not akin to a probability requirement"; it requires only "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *see Hearns v. Terhune*, 413 F.3d 1036, 1043 (9th Cir. 2005) (distinguishing the pleading standard from an evaluation of success on the merits).  Because Dr. Joslin satisfies the more demanding preliminary injunction standard, Dr. Joslin necessarily satisfies the lower pleading threshold, so Defendants' constitutional and criminal-based motion-to-dismiss arguments should be denied.

## CONCLUSION

For the foregoing reasons, Dr. Joslin respectfully requests this Court deny in full Defendants'

---

[19] For the foregoing reasons, Dr. Joslin's Privacy Act claim survives Ninth Circuit precedent. Should the Court hold otherwise, Dr. Joslin's position is that *Houlihan* and its progeny were wrongly decided and should be revisited by the Ninth Circuit.  Consistent with *Epic Systems Corporation v. Lewis*, 584 U.S. 497 (2018), and *Hubbard v. U.S. EPA Administrator*, 809 F.2d 1 (D.C. Cir. 1986), the CSRA and Privacy Act should be read in a way that accommodates both statutory schemes.

motion to dismiss and grant their request for a preliminary injunction reinstating Dr. Joslin's employment and enjoining criminal enforcement against Dr. Joslin for speech at Yosemite supporting LGBTQ+ rights.

Dated: May 14, 2026

Respectfully submitted,

**CIVIL SERVICE LAW CENTER LLP**
Clayton L. Bailey* (DC Bar No. 1644867)
Margaret (Emmy) Wydman* (DC Bar No. 90007646)
1455 Pennsylvania Ave NW, Suite 400
Washington, DC 20004
(202) 571-7836
cbailey@civilservicellp.com
ewydman@civilservicellp.com

**PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY**
Paula Dinerstein* (DC Bar No. 333971)
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 464-2293
pdinerstein@peer.org

*Admitted *pro hac vice*

*/s/ Marshall Searcy*
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Marshall Searcy, CA Bar #169269
865 S. Figueroa St., 10th Fl.
Los Angeles, CA 90017
(213) 443-3000
marshallsearcy@quinnemanuel.com

Chloe Connolly, CA Bar #348962
50 California St., 22nd Fl.
San Francisco, CA 94111
(415) 875-6600
chloeconnolly@quinnemanuel.com

MacKenzie Freed, CA Bar #353450
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, CA 94065
(650) 801-5000
mackenziefreed@quinnemanuel.com

*Counsel for Plaintiff Shannon "SJ" Joslin*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of and effectuate service on such as to the attorneys of record.

*/s/ Marshall Searcy*
Marshall Searcy, CA Bar #169269
