ERIC GRANT
United States Attorney
Rachel R. Davidson
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
E-mail: Rachel.davidson@usdoj.gov
Telephone: (916) 554-2731

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DR. SHANNON "SJ" JOSLIN,

                Plaintiff,

                v.

U.S. DEPARTMENT OF THE INTERIOR, et. al.

                Defendants.

No. 1:26-CV-02029-JLT-FJS

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Judge: Hon. Jennifer L. Thurston

This is the first and only time that a National Park Service (NPS) employee, let alone anyone else, has scaled El Captain and unfurled a colossal, 70'-wide flag as a planned demonstration to generate national media attention.  Plaintiff now seeks to avoid the consequences of this admittedly unauthorized conduct by reframing routine enforcement and personnel decisions into a constitutional spectacle.  But the record demonstrates something far simpler: Plaintiff broke the law by participating in a massive, coordinated, highly publicized display on El Capitan in violation of 36 C.F.R. § 2.51, and NPS rightly responded based on its view of what best protected park resources, visitor experience, and public safety.

Plaintiff's claims fail both legally and factually.  Legally, Plaintiff's selective-enforcement theory fails due to the lack of any similarly situated comparator who engaged in materially comparable conduct but was treated differently.  Plaintiff attempts to obscure this reality by collapsing all prior "flag displays" into a single category while ignoring the critical distinctions that Defendants identified from the outset: the unprecedented size of the display, the coordinated nature of the demonstration, the operational and administrative consequences, the national publicity generated, and Plaintiff's status as a federal probationary employee participating in unauthorized conduct at Plaintiff's own worksite.

REPLY SUPPORTING MOTION TO DISMISS

1

Factually, Plaintiff erroneously shifts focus away from the ***conduct*** that triggered discipline toward broader political grievances untethered to the actual employment decision.  This case is not about whether Plaintiff was permitted to hold a particular viewpoint, but whether Plaintiff may deliberately violate park regulations through a large-scale unauthorized demonstration and then demand immunity from employment and legal consequences.  The Constitution does not require that.

But the reality—obscured by Plaintiff's devoting 22 of 24 pages of the "combined" brief to defending the motion for preliminary injunction—is that this is all ultimately irrelevant to deciding Defendants' Motion to Dismiss.  As a probationary federal employee, Plaintiff was required to follow the comprehensive remedial framework set forth in the Civil Service Reform Act (CSRA), which Congress created precisely to prevent federal employment disputes from being repackaged into collateral constitutional suits in district court.  Plaintiff did not follow the mandatory procedures.

Nor may Plaintiff manufacture jurisdiction by speculating about a criminal prosecution.  Plaintiff alleges no concrete or imminent criminal proceeding, lacks standing to pursue a pre-enforcement challenge, and asserts claims that are plainly unripe.  Plaintiff's Complaint should be dismissed.

**I.     Plaintiff's employment-based claims should be dismissed.**

       **A.     The CSRA precludes Plaintiff's equitable Constitutional claims.**

At bottom, Plaintiff argues that this Court should disregard Congress's chosen remedial framework because Plaintiff dislikes its pace, discretionary features, and interim outcomes.  That is not the law.  The CSRA does not become optional simply because a federal employee fails to obtain immediate relief.  Congress deliberately created a comprehensive and exclusive review structure governing federal employment disputes, including constitutional claims arising from personnel actions. *Mangano v. United States*, 529 F.3d 1243, 1245 (9th Cir. 2008); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012).  And the "CSRA's elaborate remedies show that judicial interference in federal employment is disfavored, whether the employee requests damages or injunctive relief."  *Saul v. United States*, 928 F.2d 829, 829 (9th Cir. 1991); *see also Lombardi v. SBA*, 889 F.2d 959, 962-63 (10th Cir. 1989).

The unspoken premise underlying the Combined Opposition is that the CSRA is fatal to Plaintiff's employment claims.  To avoid that implicit concession, Plaintiff argues that the CSRA should be disregarded for three (somewhat self-contradictory) reasons: (1) exhaustion is not required because it

does not provide Plaintiff with "meaningful judicial review" (Combined Opposition ("Opp'n"), ECF 41, at 9-10, 12-13); (2) exhaustion is not required because the six-year statute of limitations could eventually bar Plaintiff's claim (Opp'n at 10); and (3) Plaintiff actually did exhaust administrative remedies by seeking a stay from the OSC, which was denied (Opp'n at 10-12).  All three arguments are wrong.

Plaintiff is not entitled to remedies beyond the CSRA

Congress provided probationary employees with a right to judicial review under the CSRA—albeit a limited one.  Probationary employees submit their employment disputes to the OSC.  If the OSC determines that reasonable grounds support the claim, it can petition the MSPB on behalf of the employee, and the employee may appeal any adverse decision to the Federal Circuit.  *See* Motion to Dismiss ("Mot"), ECF 34-1, at 2-3 (describing OSC review process for probationary employees).

What Plaintiff really demands, under the euphemism of "meaningful judicial review," is an *unconditional* right to have constitutional claims heard *now*.  But the relevant inquiry under the law is only whether Congress created a *comprehensive* remedial structure, not a perfect one.  It plainly did, and the Ninth Circuit has recognized since the 1980s that "Congress meant to establish the OSC as an exclusive avenue of relief to probationary employees alleging prohibited personnel practices under the CSRA."  *Poorsina v.* MSPB, 726 F.2d 507, 509 (9th Cir. 1984); *see also* Mot. at 7-9 (citing cases).

Contrary to Plaintiff's assertion (*see* Opp'n at 9), *Stone* does not control—or even assist—Plaintiff's case.  *Stone* predates *Elgin*, where the Supreme Court clarified that even *constitutional* claims arising from covered federal employment actions must proceed through the CSRA's review structure.  *Elgin*, 567 U.S. at 11-13, 22.  But more importantly, *Stone* reached its decision because the employee had "no remedies available under the CSRA or ATSA and [thus] judicial review is the only means by which he can attempt to vindicate his constitutional rights."  *Am. Fed. of Gov't Employees v. Stone*, 502 F.3d 1027, 1030 (9th Cir. 2007).  Whereas the employee in *Stone* had "no . . . administrative forum in which to seek relief for [his] discharge" (*id.*), Plaintiff here has such a forum before the OSC.  Indeed, *Stone* distinguished *Saul v. United States*, 928 F.2d 829 (9th Cir. 1991), on that exact basis, holding that "Saul could have challenged his supervisors' actions under at least two CSRA appeal procedures rather than proceeding directly to federal court, and injunctive relief would have been available as a remedy."

*Stone*, 502 F.3d at 1037.[1]

*Webster v. Doe*, 486 U.S. 592 (1988), does not help Plaintiff for the same reason. *Webster* did not hold, as Plaintiff urges, that there is a "strong presumption of judicial review for colorable constitutional claims" in employment matters (Opp'n at 12)—it held that where an employee had *no* means of challenging his termination (even at the agency level), he could bring an action in district court unless Congress clearly intended otherwise. *Id.* at 603-04. Indeed, *Elgin* specifically considered *Webster* but concluded that the CSRA's administrative and judicial review mechanisms were sufficient to channel constitutional claims outside district court. 567 U.S. at 3-4, 13-18. *Munoz-Munoz* also considered *Webster* but found it inapplicable even for probationary employees, noting that *Stone* applied *Webster* "[b]ecause the parties agreed that the plaintiff had no avenue of relief at the administrative level." 2013 WL 11319006, at *4. Defendant here did not raise *Webster* for the same reasons—Plaintiff had an administrative remedy, and thus it did not apply.

Plaintiff also relies heavily on out-of-circuit cases. Opp'n at 9-10. But this Court is required to apply Ninth Circuit precedent, not Third Circuit or Pennsylvania district court opinions. And district courts within the Ninth Circuit have consistently held, following *Saul*, that the OSC is the exclusive forum for probationary employees to make constitutional injunctive claims. *See* Mot. at 8-9 (citing cases). The fact that Plaintiff trumpets a reversed Ninth Circuit case to support the out-of-circuit cases is telling. *See* Opp'n at 10 (citing *Kotarski v. Cooper*, 799 F.2d 1342 (9th Cir. 1986)).[2]

---

[1] *See also Toro v. Napolitano*, 2013 WL 4102158, at *2 (S.D. Cal. Aug. 13, 2013) (probationary employee's argument that she had "no remedy" under the CSRA was "both baseless—the CSRA regime does in fact provide a remedy to probationary employees—and, in any event, inconsequential—'a federal employee's personnel-related complaints are preempted even if no remedy is available under the CSRA" (quoting *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008)); *Wilborn v. Napolitano*, 2013 WL 1222061, at *3 n.1 (S.D. Cal. Mar. 25, 2013) (distinguishing *Stone* "from *Saul*, *Elgin*, and the case at hand because in *Stone*, the employees were not covered by the CSRA and had 'no administrative recourse'"); *Munoz-Munoz v. Locke*, 2013 WL 11319006, at *5 (W.D. Wash. Apr. 24, 2013), *aff'd*, 634 F. App'x 166 (9th Cir. 2015) (dismissing probationary employee's constitutional injunctive claim because "[w]hile the Ninth Circuit has explained that the CSRA does not preclude a plaintiff's colorable constitutional claims if the individual has *no* administrative or judicial forum in which to raise her claim, *see Stone*, . . . [plaintiff], like the plaintiff in *Saul*, has not disputed that she had the ability to seek relief from the OSC").

[2] Plaintiff asserts that *Kotarski* "was vacated on other grounds," and "its discussion of the OSC process remains true." Opp'n at 10. "It is difficult to deal with a proposition of this kind except by saying that it is not true." *Hunter v. Pittsburgh*, 207 U.S. 161, 177 (1907). The Ninth Circuit described *Kotarski I* as holding that "the administrative remedies available to [plaintiff], as a probationary employee, under the [CSRA] were inadequate to provide appropriate relief," and thus he "had no meaningful remedy for violation of his constitutional rights."

In short, as the Supreme Court confirmed just two days ago, "[f]ederal courts are not 'roving commissions' licensed to 'sally forth each day looking for wrongs to right.'" *Margolin v. Nat'l Ass'n of Immigration Judges*, -- S. Ct. --, 2026 WL 1463466, at *2 (May 26, 2026) (per curiam) (citations omitted).  Given that "Congress intended federal employees to bring most work-related grievances to the [MSPB] and the Special Counsel—not to federal district court," *id.* at *1, this Court should not accept Plaintiff's invitation to micromanage federal personnel matters.

> The six-year statute of limitations does not allow Plaintiff to short-circuit the OSC process

Plaintiff complains about the speed of the OSC process, suggesting that if it continues for another five years, the six-year statute of limitations may bar any constitutional claim.  Opp'n at 10.  As a former probationary employee, Plaintiff lacks the right to bring a stand-alone constitutional action in district court for the reasons discussed above.  And even if that were a possibility, Plaintiff's worry is speculative at best, and premature by several years (and therefore not ripe) at worst.  *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (cleaned up)).

But more fundamentally, Plaintiff may not unilaterally forego an administrative process based on claimed delays or political circumstances, as the Supreme Court just confirmed.  *Margolin*, 2026 WL 1463466, at *2 (appeals court erred in holding that the CSRA did not foreclose plaintiffs' constitutional challenges because "factual circumstances had called into question whether the CSRA was functioning as Congress intended" due to "challenges to the tenure protection afforded MSPB members and the Special Counsel, and the MSPB's lack of a quorum" (cleaned up)); *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1434 (D.C. Cir. 1996) ("[D]elays [under the CSRA] seem no more than the normal concomitant of an exhaustion requirement—perhaps less, in view of the statute's deadline for OSC action.").

Exhaustion of the OSC process is jurisdictionally required before any court's doors may open for Plaintiff.  *See* Mot. at 9.  Plaintiff's impatience and dubious hypothetical scenarios cannot change that.

> Plaintiff may not short-circuit the CSRA process because the OSC denied injunctive relief

By statute, the OSC has 240 days to investigate an allegation, 5 U.S.C. § 1214(b)(2)(A)(i), and

---

*Kotarski v. Cooper*, 866 F.2d 311, 312 (9th Cir. 1989).  *Kotarski II* "reverse[d] [this] prior decision" in light of *Schweiker v. Chilicky*, 487 U.S. 412 (1988), which required deference to Congress's remedial scheme.  *Id.*

there is no dispute that Plaintiff filed suit nearly six months before that time passed.  *See* Mot. at 3.  Despite adamantly maintaining that no CSRA administrative exhaustion is required at all, Plaintiff paradoxically contends that per *Saul*, administrative exhaustion is no longer required because Plaintiff sought and was denied injunctive relief from the OSC under 5 U.S.C. § 1214.  Opp'n at 11-13.

*Saul* never suggested that OSC denial of discretionary interim relief opens the federal courthouse doors to collateral constitutional litigation—it merely recognized the existence of administrative mechanisms within the CSRA framework.  *Saul*, 928 F.2d at 843.  Plaintiff notably offers no quoted language from *Saul* supporting Plaintiff's radical interpretation of that decision.  And contrary to Plaintiff's position, *Saul* confirmed that the "CSRA precludes . . . injunctive relief for [an] asserted constitutional injury just as it precludes . . . a *Bivens* action for damages."  *Id.*

OSC denial of interim relief under § 1214 does not negate the CSRA framework or create district court jurisdiction.  Interim stays under § 1214 are discretionary by design and merely one component of a much broader remedial framework that Congress created.  The CSRA grants the OSC 240 days to investigate the alleged prohibited personnel practice, after which the OSC issues reports and may pursue an MSPB action on behalf of the probationary employee.  Mot. at 2-3 (discussing CSRA procedures).  During this time, the OSC "*may* request . . . a stay of any personnel action for 45 days."  5 U.S.C. § 1214(b)(1)(A)(i) (emphasis added).  But a stay is never required, and nothing in § 1214 suggests that denial of a stay permits a party to unilaterally abandon the 240-day investigation period.  Plaintiff certainly cites no authority holding so.

By contrast, Defendants cited numerous cases requiring complete CSRA exhaustion as a precondition to jurisdiction.  *See* Mot. at 8-10.  Although Plaintiff selects a handful of those cases and argues that they are inapposite because they did not involve a plaintiff who "already tried and failed to obtain a stay" (Opp'n at 12), the cases required *exhaustion* of administrative remedies before the OSC, not simply initiating the process or seeking interim relief.  And more importantly, Plaintiff cites no cases in which a court held that CSRA administrative exhaustion was completed when the OSC denied discretionary injunctive relief.

In short, the fact that Plaintiff may dislike the deliberate pace, lack of absolute certitude, or discretionary features of the OSC process does not permit what *Elgin* forbids: district court intervention

into an ongoing federal employment dispute governed by the CSRA. Plaintiff remains engaged in the administrative process that Congress prescribed. Plaintiff's legal position, taken to its logical conclusion, would effectively permit every disappointed federal employee to bypass the CSRA simply by alleging that the OSC did not pursue the claim aggressively enough, thereby eviscerating the carefully calibrated remedial structure that Congress created. "Congress is the body charged with making the inevitable compromises required in the design of a massive and complex . . . program," and "courts should defer to the expertise of Congress in these matters." *Kotarski*, 866 F.2d at 312. The CSRA precludes Plaintiff's claims, and they should be dismissed.

### B.    Plaintiff's Privacy Act claim is likewise precluded.

Plaintiff's artful recast of the Privacy Act claim as targeting "collection" rather than "use" of information is a distinction without substance. *See* Opp'n at 23-24. The alleged collection of Plaintiff's public statements, media activity, and social-media commentary occurred entirely in connection with Defendants' investigation and evaluation of Plaintiff's conduct as a federal employee. The claim therefore arises directly from an underlying personnel action and falls within the CSRA's exclusive remedial scheme. *Houlihan v. OPM*, 909 F.2d 383, 385 (9th Cir. 1990); 5 U.S.C. § 552a(g)(1)(C).

Plaintiff's reliance on cases involving unlawful disclosure under § 552a(b) is misplaced. *See* Opp'n at 24. Disclosure claims under § 552a(b) implicate distinct statutory concerns and do not necessarily challenge a covered personnel action. Plaintiff admittedly does not challenge a disclosure, but rather Defendants' internal gathering and review of information concerning Plaintiff's own conduct in connection with an employment investigation and resulting discipline. That is quintessentially employment-related activity. *Houlihan,* 909 F.2d at 385 ("In order to consider [a] Privacy Act claim, [the court] would have to decide not only whether [the agency] violated the Act, but whether [the agency's] alleged violation caused it to make 'a determination . . . which is adverse to [her].'").

Nor does it matter that "collection" is not expressly listed among the twelve enumerated personnel actions in § 2302(a)(2)(A). *See* Opp'n at 24. The relevant inquiry is whether the challenged conduct arises from and is intertwined with the federal employment process. Here, Plaintiff's allegations stem entirely from an employment investigation culminating in personnel action. Recasting the same facts as a Privacy Act violation does not avoid the CSRA's comprehensive framework.

**II.    Plaintiff's criminal-based claims should be dismissed.**

The DOJ Defendants—Attorney General Bondi, U.S. Attorney Grant, and the U.S. Attorney's Office—moved to dismiss Plaintiff's claims against them on three independent grounds.  As elaborated below, Plaintiff's opposition does not meaningfully contravene any of those grounds.

**A.    Plaintiff plausibly alleges <u>no</u> criminal investigation *by the DOJ Defendants*.**

The DOJ Defendants argued that "Plaintiff provides no plausible grounds for thinking that any [criminal] investigation exists," in large part because "only 'NPS' personnel made statements to Plaintiff or to the media," and "neither the DOJ Defendants nor their agents made the statements to Plaintiff." Mot. at 11.  Plaintiff confirms this very point: "*NPS* repeatedly told Dr. Joslin and the public that there was, indeed, a criminal investigation."  Opp'n at 13 (emphasis added).  To reiterate: DOJ Defendants and their agents never spoke to Plaintiff (or to anyone else) about the matter.  And when Plaintiff refers to "Defendants' *conduct*," Plaintiff tellingly points to nothing besides *NPS* conduct (which ended last year).  *See id.* at 14 (emphasis added).

As to the fact the DOJ Defendants have made no "actual denial of such an investigation" in their brief or otherwise, that is because (with exceptions not relevant here) "DOJ personnel *shall not* respond to questions about the existence of an ongoing investigation or *comment on its nature or progress* before charges are publicly filed."  Justice Manual 1-7.400(2) (emphasis added), https://www.justice.gov/jm/jm-1-7000-media-relations#1-7.400; *see also* Opp'n at 14 (crediting this DOJ policy).  Thus, if DOJ were investigating Plaintiff, it would not confirm that fact; and if DOJ were <u>not</u> investigating Plaintiff, it would not deny that fact; either way, DOJ would say nothing.  Saying nothing is evidence of nothing.

What is left?  In a word, nothing: no interviews, no searches or seizures, and no grand jury testimony or subpoenas—all of which targets and witnesses are free to reveal but have not revealed here—and no overtures by the U.S. Attorney's Office.  *See* Mot. at 12.  In short, there is no plausible allegation of any investigation of Plaintiff by the DOJ Defendants.

**B.    Plaintiff lacks standing, and Plaintiff's challenge is not ripe.**

As for standing, Plaintiff states "Defendants thus concede that if there is an ongoing criminal investigation, Dr. Joslin has standing to challenge it."  Opp'n at 15.  Not exactly: Plaintiff obviously

would have standing to defend against an actual criminal investigation, but only pursuant to Criminal Rule 12(b) in the prosecution itself, not in a pre-enforcement challenge like this one. *See* Mot. at 14.

As for such a challenge, it is ripe *only if* the plaintiff is "subject to a genuine threat of *imminent* prosecution." *Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, 435 F. Supp. 3d 1063, 1081 (E.D. Cal. 2020) (emphasis in original). And to have standing to bring such challenge, the plaintiff must show that "there is a credible threat that the challenged provision will be invoked against the plaintiff." *Id.* at 1082. But except for the *long-ceased* warnings by NPS officials, Plaintiff adduces no of the evidence of the kind that *Stavrianoudakis* identified would show a genuine or credible threat of prosecution: no indictments, no arrests, no prosecutions, no history of prosecutions—either of Plaintiff or Plaintiffs' companions or anyone similarly situated to Plaintiff. *See* Mot. at 13. Moreover, Plaintiff's evidence of anything *imminent* is nil.

**C.    Plaintiff has no right to equitable relief against the DOJ Defendants.**

Plaintiff's brief concedes that "Dr. Joslin does not ask this Court to enjoin post-indictment proceedings." Opp'n at 17. That concession should end the matter. Given the utter lack of evidence for *any* investigation at all, together with the utter lack of evidence of a genuine or credible threat of *imminent* indictment, there is simply no basis for relief against the DOJ Defendants. Even in alleged "First Amendment" cases, equity does not countenance injunctive relief against a hypothetical investigation that could hypothetically lead to a hypothetical prosecution under a new regulation that Plaintiff effectively concedes is not facially infirm for overbreadth or vagueness. *See* Mot. at 15 (discussing *Peters v. United States*, 2024 WL 2274079 (D. Colo. May 20, 2024)).

For three independent reasons, Plaintiff's claims against the DOJ Defendants must be dismissed.

Dated:  May 28, 2026

Respectfully submitted,

ERIC GRANT
United States Attorney

By:    /s/ *Rachel R. Davidson*
Rachel R. Davidson
Assistant United States Attorney
Attorneys for Defendants