Clayton L. Bailey (DC Bar No. 1644867) (admitted *pro hac vice*)
Margaret (Emmy) Wydman (DC Bar No. 90007646) (admitted *pro hac vice*)
**Civil Service Law Center LLP**
1455 Pennsylvania Ave NW, Suite 400
Washington, DC 20004
(202) 571-7836

Paula Dinerstein (DC Bar No. 333971) (admitted *pro hac vice*)
**Public Employees for Environmental Responsibility**
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(301) 580-4020

*Counsel for Plaintiff Shannon "SJ" Joslin*

[Additional counsel listed on signature page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DR. SHANNON "SJ" JOSLIN,<br><br>*Plaintiff*,<br><br>vs.<br><br>U.S. DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>*Defendants*. | Case No. 1:26-cv-2029-JLT-EPG |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS


INTRODUCTION....1

BACKGROUND....2

I. Legal Background....2

II. Factual Background....3

III. Procedural Background....5

LEGAL STANDARD....6

ARGUMENT....7

I. Dr. Joslin has Article III standing to bring a Privacy Act claim....7

II. Dr. Joslin has adequately pleaded a Privacy Act claim....9

A. Dr. Joslin's Privacy Act claim is not precluded by the CSRA....9

B. Defendants' conduct is not covered by the narrow exceptions to (e)(7)....11

1. The "expressly authorized" exception does not apply....11

2. The law enforcement exception does not apply....12

C. Defendants' compensable damages argument is irrelevant at this stage....14

D. Dr. Joslin has adequately pleaded intent....15

III. Dr. Joslin's constitutional claims (Counts III & IV) are included principally for preservation purposes, and Defendants' motion to strike should be denied....18

A. No allegations need to be stricken....18

B. Dr. Joslin maintains objections to the Court's first opinion....20

CONCLUSION....20

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*AFGE Local 1 v. Stone*,
502 F.3d 1027 (9th Cir. 2007) ........ 20

*Albright v. United States*,
631 F.2d 915 (D.C. Cir. 1980) ........ 3

*Anderson News, L.L.C. v. Am. Media, Inc.*,
680 F.3d 162 (2d Cir. 2012) ........ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*Barry v. Thomas Jefferson Univ. Hosps., Inc.*,
2026 WL 935837 (E.D. Pa. Apr. 7, 2026) ........ 17

*Biasco v. DHS*,
2022 WL 4796992 (W.D. Wash. Aug. 30, 2022), *adopted*, 2022 WL 4752950 (W.D. Wash. Oct. 3, 2022) ........ 10

*Brazill v. California Northstate Coll. of Pharmacy, LLC*,
904 F. Supp. 2d 1047 (E.D. Cal. 2012) ........ 6

*Brodheim v. Cry*,
584 F.3d 1262 (9th Cir. 2009) ........ 8

*Cayo v. Valor Fighting & Mgmt. LLC*,
2009 WL 1626586 (N.D. Cal. June 8, 2009) ........ 19

*Colon v. United States*,
320 F. Supp. 3d 733 (D. Md. 2018) ........ 15

*Cooper v. F.A.A.*,
816 F. Supp. 2d 778 (N.D. Cal. 2008) ........ 9

*Cooper v. F.A.A.*,
596 F.3d 538 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 622 F.3d 1016 (9th Cir. 2010) ........ 9

*Cooper v. F.A.A.*,
696 F.3d 1265 (9th Cir. 2012) ........ 9

*Covert v. Harrington*,
876 F.2d 751 (9th Cir. 1989) ........ 16, 17

*Crawford v. Kaiser Found. Health Plan*,
395 F. Supp. 3d 1279 (N.D. Cal. 2019) ........ 18, 19

*Dickinson v. Trump*,
827 F. Supp. 3d 1375 (D. Or. 2026) ........ 8

*Doe v. Chao*,
435 F.3d 492 (4th Cir. 2006) ........ 14

*Doe v. Chao*,
540 U.S. 614 (2004) ........ 2, 7, 14, 16

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 8

*F.A.A. v. Cooper*,
566 U.S. 284 (2012) ........ 9

*Fanin v. U.S. Dep't of Veterans Affs.*,
572 F.3d 868 (11th Cir. 2009) ........ 15

*Fazaga v. FBI*,
965 F.3d 1015 (9th Cir. 2020), *rev'd and remanded*, 595 U.S. 344 (2022) ........ 15

*Feldman v. C.I.A.*,
797 F. Supp. 2d 29 (D.D.C. 2011) ........ 17

*Fort Hall Landowners All., Inc. v. Bureau of Indian Affs.*,
407 F. Supp. 2d 1220 (D. Idaho 2006) ........ 9

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
503 U.S. 60 (1992) ........ 14

*Garcia v. Cnty. of Alameda*,
150 F.4th 1224 (9th Cir. 2025) ........ 8

*Garris v. Fed. Bureau of Investigation*,
937 F.3d 1284 (9th Cir. 2019) ........ *passim*

*Goz on behalf of Est. of Travers v. Allied Collection Servs., Inc.*,
812 F. App'x 544 (9th Cir. 2020) ........ 9

*Guerrero v. Halliburton Energy Servs., Inc.*,
231 F. Supp. 3d 797 (E.D. Cal. 2017) ........ 19

*Hampton v. Pac. Inv. Mgmt. Co. LLC*,
869 F.3d 844 (9th Cir. 2017) ........ 18

*Int'l Code Council, Inc. v. UpCodes Inc.*,
43 F.4th 46 (2d Cir. 2022) ........ 16

*Jackson v. Kennedy*,
2026 WL 172440 (D.D.C. Jan. 22, 2026) ........ 11

*Johnson v. Brown*,
567 F. Supp. 3d 1230 (D. Or. 2021) ........ 15

*Johnson v. Gibson*,
783 F.3d 1159 (9th Cir. 2015) ........ 15

*Jones v. L.A. Cent. Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023) ........ 6

*Lacey v. Maricopa County*,
693 F.3d 896, 928 (9th Cir. 2012) (en banc) ........ 18, 19

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ........ 6, 13

*Lopez v. Fresno City Coll.*,
2012 WL 844911 (E.D. Cal. Mar. 12, 2012) ........ 13

*MacPherson v. I.R.S.*,
803 F.2d 479 (9th Cir. 1986) ........ 3, 8, 12, 14

*Mendocino Env't Ctr. v. Mendocino Cnty.*,
192 F.3d 1283 (9th Cir. 1999) ........ 8

*Millbrook v. United States*,
569 U.S. 50 (2013) ........ 10

*Minshew v. Donley*,
911 F. Supp. 2d 1043 (D. Nev. 2012) ........ 9

*Morinville v. U.S. Pat. & Trademark Off.*,
442 F. Supp. 3d 286 (D.D.C. 2020) ........ 14

*Nagel v. U.S. Dep't of Health, Educ., & Welfare*,
725 F.2d 1438 (D.C. Cir. 1984) ........ 8

*Newsom v. Trump*,
797 F. Supp. 3d 1092 (N.D. Cal. 2025) ........ 12

*Orsay v. U.S. Dep't of Just.*,
289 F.3d 1125 (9th Cir. 2002) ........ 9

*Paige v. Drug Enf't Admin.*,
665 F.3d 1355 (D.C. Cir. 2012) ........ 3

*Parrino v. FHP, Inc.*,
146 F.3d 699, 704 (9th Cir. 1998) ........ 18

*Peace Ranch, LLC v. Bonta*,
93 F.4th 482 (9th Cir. 2024) ........ 20

*Roe v. Unocal Corp.*,
70 F. Supp. 2d 1073 (C.D. Cal. 1999) ........ 19

*Ruiz v. Medtronic, Inc.*,
2025 WL 3485034 (E.D. Cal. Dec. 4, 2025) ........ 16

*Smith v. Nixon*,
807 F.2d 197 (D.C. Cir. 1986) ........ 3

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 6, 7

*Stewart v. D.C. Armory Bd.*,
863 F.2d 1013 (D.C. Cir. 1988) .......... 15

*Taylor v. Def. Fin. & Acct. Serv.*,
2014 WL 28820 (E.D. Cal. Jan. 2, 2014) .......... 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 7

*Vendo Company v. Lektro-Vend Corporation*,
433 U.S. 623 (1977) .......... 12

*Ward v. KaTom Rest. Supply, Inc.*,
2026 WL 184279 (E.D. Tenn. Jan. 23, 2026) .......... 17

*Weaver v. U.S. Info. Agency*,
87 F.3d 1429 (D.C. Cir. 1996) .......... 10

*Webster v. Doe*,
486 U.S. 592 (1988) .......... 20

*Wilborn v. Dep't of Health & Hum. Servs.*,
49 F.3d 597 (9th Cir. 1995) .......... 16

*Wilborn v. Napolitano*,
2012 WL 354494 (S.D. Cal. Feb. 2, 2012) .......... 19

**Statutes**

5 U.S.C. § 552a .......... *passim*

5 U.S.C. § 2301 .......... 11

5 U.S.C. § 2302 .......... 10, 11

5 U.S.C. § 7512 .......... 10

**Other Authorities**

3-15 James Wm. Moore et al., *Moore's Federal Practice-Civil* § 15.17 (3d ed. 2026) .......... 19

5 C.F.R. § 293 .......... 11, 16

5 C.F.R. § 752 .......... 11

Fed. R. Civ. P. 12(b) .......... 6

Off. of Mgmt. & Budget, *Privacy Act Implementation: Guidelines and Responsibilities*, 40 Fed. Reg. 28948 (July 9, 1975) .......... 12

*Overview of the Privacy Act: 2020 Edition*, U.S. Department of Justice .......... 2, 3, 7

**INTRODUCTION**

This case began with Dr. Shannon "SJ" Joslin's display of a trans pride flag from El Capitan and the government's coordinated, heavy-handed response. But the litigation now focuses on Dr. Joslin's Privacy Act claim. Specifically, Dr. Joslin alleges that before they were terminated, and long after, the National Park Service and Department of the Interior maintained records of obviously protected expressive speech: Dr. Joslin's media interviews, public statements, and social media activity. This alone was unlawful.

Defendants' motion is notable for what it does not do. Defendants do not contest Dr. Joslin's standing to bring suit, the only basis on which the original Privacy Act claim was dismissed. That's for good reason: Dr. Joslin has adequately pleaded standing in at least four independent ways. And Defendants' motion does little to justify their *ongoing* maintenance of records of Dr. Joslin's First Amendment protected activity. Defendants do not explain why they continue to need records of Dr. Joslin's public interviews for a termination that happened more than a year ago, or for a law enforcement investigation they say has long ended. In this circuit, agencies that seek to maintain files on First Amendment protected activity must defend not only their initial collection and use of such records, but also their continuing maintenance of them. *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1294 (9th Cir. 2019). Defendants cannot do that, so their motion to dismiss must be denied as to Dr. Joslin's Privacy Act claim.

As for Defendants' retrospective violations of the Privacy Act, Defendants' arguments also fall well short. Notwithstanding Defendants' protestations, Dr. Joslin has pleaded a Privacy Act claim that stands independently of their termination and any consequences of that termination. Consistent with the Court's first motion-to-dismiss opinion, the Court need not second-guess anything about that agency decision to adjudicate Dr. Joslin's claim. The remainder of Defendants'

merits arguments either misunderstand elements of the Privacy Act or else implicate the kind of factual questions that cannot be appropriately addressed at this early stage of proceedings.

This case goes to the heart of what the Privacy Act was meant to guard against. Government agencies should not be collecting and maintaining protected speech without a very good reason. And they certainly should not keep records of that speech indefinitely on the loose chance they might be useful to the government in the future. Congress recognized that allowing otherwise leads to an intolerable risk of abuse.

For these reasons, the Court should deny Defendants' motion to dismiss as to the Privacy Act. The Court should also deny Defendants' motion to strike, even if the Court continues to believe that Dr. Joslin's constitutional claims must be dismissed.

## BACKGROUND

### I. Legal Background

Passed in the wake of the Watergate and COINTELPRO scandals, the Privacy Act was designed "to restore trust in government" by defining what information the government was permitted to collect and how that information may be maintained and used. *Overview of the Privacy Act: 2020 Edition*, U.S. Dep't of Justice, https://perma.cc/VJE8-YULF (DOJ Overview).[1] The Act "gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply." *Doe v. Chao*, 540 U.S. 614, 618 (2004).

The Privacy Act provides four separate causes of action, 5 U.S.C. § 552a(g), only one of which is relevant here. Count 1 of Dr. Joslin's second amended complaint arises under § 552a(g)(1)(D), which provides a claim when an agency "fails to comply with any other provision

[1] This publication is available for download in full on the Department's website here: https://www.justice.gov/opcl/overview-privacy-act-1974-2020-edition.

of [the Privacy Act] . . . in such a way as to have an adverse effect on an individual." To state a claim for relief under § 552a(g)(1)(D), a plaintiff must establish that "(1) the agency violated a provision of the Privacy Act, (2) the violation was 'intentional or willful,' and (3) the violation had an 'adverse effect' on the plaintiff." *Paige v. Drug Enf't Admin.*, 665 F.3d 1355, 1358–59 (D.C. Cir. 2012) (cleaned up). Dr. Joslin alleges a violation of § 552a(e)(7), which requires that agencies "maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." A plaintiff who can prove any pecuniary loss is entitled to statutory damages of $1,000 or "actual damages," whichever is greater. § 552a(g)(4)(B).

Because of the importance of protecting First Amendment rights, courts have given special regard to § 552a(e)(7). For example, while most of the Privacy Act applies only to records incorporated into a "system of records," (e)(7) is exempt from that limitation. *MacPherson v. I.R.S.*, 803 F.2d 479, 481 (9th Cir. 1986); *see also Albright v. United States*, 631 F.2d 915, 919 (D.C. Cir. 1980) ("Congress is, of course, well aware of the special and sensitive treatment accorded First Amendment rights under the interpretive case law."). Similarly, while injunctive relief is usually not available through § 552a(g)(1)(D), courts may order expungement of records when (e)(7) is violated. *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1301 (9th Cir. 2019); *Smith v. Nixon*, 807 F.2d 197, 204 (D.C. Cir. 1986). Individuals "are not required to exhaust administrative remedies before filing suit under subsection (g)(1)(D)." DOJ Overview, https://perma.cc/6ZQK-SQTD.

## II. Factual Background

In May 2025, Plaintiff Dr. Shannon "SJ" Joslin, with a group of other climbers, displayed a trans pride flag from El Capitan in Yosemite National Park. Second Am. Compl. (SAC) ¶¶ 47–49,

ECF No. 45. Dr. Joslin, who identifies as non-binary and uses they/them pronouns, was a wildlife biologist for Yosemite. *Id.* ¶ 11. Although Dr. Joslin was off duty at the time of the display, *id.* ¶ 47, Yosemite terminated their employment effective August 12, 2025, *id.* ¶ 82.

Before Dr. Joslin was terminated, Defendants National Park Service and Department of the Interior (collectively, NPS Defendants) began collecting Dr. Joslin's other public statements and interviews. *Id.* ¶ 63. Specifically, NPS Defendants collected, at least, (1) a press release by Outside PR that quoted Dr. Joslin, *id.* ¶ 65, (2) an interview of Dr. Joslin conducted by Climbing Magazine, *id.* ¶ 66, (3) an interview of Dr. Joslin by SF Gate, a San Francisco news outlet, *id.*, and (4) at least one of Dr. Joslin's social media posts related to Dr. Joslin's advocacy for trans rights, *id.* ¶ 69. For example, Dr. Joslin expressed in the press release that "[b]eing trans is a natural, beautiful part of human and biological diversity." *Id.* ¶ 65. Dr. Joslin never identified as a Yosemite employee or otherwise conveyed that they were speaking on behalf of the park; each statement was made while off duty. *Id.* ¶ 67, 69. NPS Defendants also collected information about Dr. Joslin's protected associations with activist Pattie Gonia, members of the media, and other individuals Dr. Joslin spent time with. *Id.* ¶¶ 64, 68. These represent clear examples of First Amendment protected expression, many on matters of public concern, and Defendants do not argue otherwise. *See infra* note 2.

Dr. Joslin learned of this surveillance around June 11, 2025. *Id.* ¶¶ 62–63. During an interview with NPS, the interviewer showed Dr. Joslin the press release and Climbing Magazine interview and asked about the interview with SF Gate. *Id.* ¶¶ 65–66. Around that time, another employee who was interviewed told Dr. Joslin that an NPS investigator had disclosed one of Dr. Joslin's social media posts to him. *Id.* ¶ 69. Although Dr. Joslin had previously been told that they were under criminal investigation, NPS assured Dr. Joslin that these interviews "would not be used for law enforcement purposes." *Id.* ¶ 62.

Learning that their public statements were being collected, curated, and disclosed to third parties by the government had a significant negative impact on Dr. Joslin. Following these revelations in June, Dr. Joslin, normally not shy to speak, did not give an interview, post on social media, or make any other public statement for several weeks. *Id.* ¶ 71. Dr. Joslin withdrew to their home, sometimes deciding to leave their electronic devices outside the house. *Id.* Dr. Joslin received mental health treatment, for which they incurred actual costs, as a result of this mental and emotional distress. *Id.*

After Dr. Joslin was terminated—and despite Defendants' representation that Dr. Joslin was not under any criminal investigation, *id.* ¶ 80—NPS Defendants nevertheless continued to maintain and use the records of Dr. Joslin's public speech to Dr. Joslin's detriment. *Id.* ¶ 72. A high-level NPS official, based in part on "information contained in the records of the Agency," Decl. of Danika Globokar, ECF No. 35-1, ¶ 1, disclosed in a public filing that Dr. Joslin was "seeking social media attention after her [sic] violation of park regulations and portraying it as justified or inconsequential." SAC ¶ 73. This summary of protected expression, referring to Dr. Joslin's social media activity and statements to the press, was deployed in support of the harmful claim that this "highly visible" speech "demonstrated poor judgment inconsistent with federal service." *Id.* Strangers on the internet began to echo this sentiment, writing that "[i]f the trans dude [sic] would have stayed in his lane and STFU this would not have happened." *Id.* ¶ 74. One person urged Dr. Joslin to "hang yourself." *Id.*

Dr. Joslin thus believes that NPS Defendants continue to maintain these records today, and that NPS Defendants will continue to use them to Dr. Joslin's detriment. *Id.* ¶ 77–88.

## III. Procedural Background

Following transfer from the U.S. District Court for the District of Columbia, Dr. Joslin filed an amended complaint and motion for preliminary injunction before this Court. ECF Nos. 28, 29.

Dr. Joslin argued that Defendants had violated their First and Fifth Amendment rights by terminating and criminally investigating them, ECF No. 29-1, and raised a Privacy Act claim as to NPS Defendants. ECF No. 28. Defendants opposed a preliminary injunction and moved to dismiss. ECF Nos. 34, 35. Last month, this Court denied Dr. Joslin's motion for preliminary injunction and granted Defendants' motion to dismiss. ECF No. 44 (hereinafter, Op.). While Dr. Joslin's requests for employment-related relief were dismissed without prejudice and without leave to amend, all other claims were dismissed with leave to amend. *Id.* at 16. Dr. Joslin timely filed a second amended complaint, ECF No. 45, which Defendants again moved to dismiss, ECF No. 50-1 (hereinafter, MTD Mem.).

**LEGAL STANDARD**

Courts resolve both Rule 12(b)(6) challenges and facial Rule 12(b)(1) challenges by "[a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A complaint need not include "detailed factual allegations," but "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires "more than a sheer possibility that a defendant has acted unlawfully" but "is not akin to a probability requirement." *Id.* (quotation marks omitted). Plaintiffs at this stage "may plead inconsistent or even contradictory allegations." *Brazill v. California Northstate Coll. of Pharmacy, LLC*, 904 F. Supp. 2d 1047, 1055 n.6 (E.D. Cal. 2012).

"[A]t the pleadings stage, the plaintiff must allege sufficient facts that, taken as true, 'demonstrat[e] each element' of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

(2016)). Specifically, a plaintiff's allegations must demonstrate injury-in-fact, traceability, and redressability. *Id.*

Although Congress cannot create standing from nothing, because it is "well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is instructive and important." *Spokeo*, 578 U.S. at 341. Accordingly, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.*; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 425–26 (2021). As relevant here, the term "adverse effect" in the Privacy Act "acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue." *Doe v. Chao*, 540 U.S. 614, 624 (2004). An "adverse effect" is broader than "actual damages," and includes "nonpecuniary and nonphysical harm, such as mental distress, embarrassment, or emotional trauma." DOJ Overview, https://perma.cc/2HSP-EQAG (citing cases). It "typically is not difficult for a plaintiff to satisfy." *Id.*

## ARGUMENT

### I. Dr. Joslin has Article III standing to bring a Privacy Act claim.

Based on Dr. Joslin's second amended complaint, Defendants do not contest Dr. Joslin's Article III standing, the only basis on which Dr. Joslin's Privacy Act was dismissed. *See* Op. 15. For good measure, Dr. Joslin has demonstrated standing in four independent ways.

*First*, as explained further below, Dr. Joslin has pleaded actual damages in the form of healthcare costs caused by NPS Defendants' Privacy Act violations. *Infra* section II.C. "[M]onetary harms" are among "[t]he most obvious" harms that support Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

*Second*, the collection and maintenance of records describing Dr. Joslin's protected activities created an objective chilling effect on Dr. Joslin's further exercise of their constitutional rights.[2] As

[2] Defendants do not contest that Dr. Joslin has adequately pleaded that Defendants have maintained records "describing how" Dr. Joslin "exercises rights guaranteed by the First Amendment." 5 U.S.C. § 552a(e)(7).

the Ninth Circuit has recognized, "[t]he mere compilation by the government of records describing the exercise of First Amendment freedoms creates the possibility that those records will be used to the speaker's detriment, and hence has a chilling effect on such exercise." *MacPherson v. I.R.S.*, 803 F.2d 479, 484 (9th Cir. 1986) (quoting *Nagel v. U.S. Dep't of Health, Educ., & Welfare*, 725 F.2d 1438, 1441 (D.C. Cir. 1984)). And the "chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury" for Article III standing. *Garcia v. Cnty. of Alameda*, 150 F.4th 1224, 1229 (9th Cir. 2025). Dr. Joslin first learned that Defendants were collecting their press statements and social media activity in early June 2025, SAC ¶¶ 63, 69, and immediately began self-censoring. Despite being at the center of a national news story, Dr. Joslin "did not give an interview, post on social media, or give any other public statement for several weeks." *Id.* ¶ 71.

That Dr. Joslin eventually began speaking publicly again does not deprive them of standing. That would "allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). Instead, the question is objective: "whether Defendants' actions 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Dickinson v. Trump*, 827 F. Supp. 3d 1375, 1393 (D. Or. 2026) (quoting *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009)). The government's repeated collections of multiple of Dr. Joslin's public statements, combined with their immediate use in an adversarial interview and disclosure to other employees, *see supra* at 4, is therefore "objectively chilling," as it would deter "a person of ordinary firmness." *Dickinson*, 827 F. Supp. 3d at 1393.

*Third*, Defendants have not merely collected and retained information about Dr. Joslin's protected activities. Defendants have repeatedly disclosed those protected activities to third parties in adversarial settings likely to be detrimental to Dr. Joslin: first, by sharing at least one such record with one of Dr. Joslin's coworkers, who was not even involved in the flag display, SAC ¶ 69, and then by including descriptions of the First Amendment protected activity in a publicly filed declaration, *id.* ¶ 73. That these records included public statements does not defeat standing. In line with the Ninth Circuit's analysis of the Video Privacy Protection Act, the Privacy Act "codifies a context-specific extension of the *substantive* right to privacy." *Eichenberger v. ESPN, Inc.*, 876

F.3d 979, 983 (9th Cir. 2017) (emphasis in original). The statute reflects Congress's judgment that prohibiting the government from keeping and using expressive speech "protects concrete interests." *Id.*; *see also Fort Hall Landowners All., Inc. v. Bureau of Indian Affs.*, 407 F. Supp. 2d 1220, 1226 (D. Idaho 2006) (holding that, for disclosure of less sensitive information like names and addresses, "invasion of privacy is the injury that best fits the low threshold required for standing purposes"). These disclosures both reinforce the objective chilling effect and also stand as an independent harm sufficient to demonstrate standing.

*Fourth*, mental distress itself, separate from the costs of treatment, is sufficient harm to establish Article III standing. While mental distress alone is not enough to recover "actual damages," "[a]llegations of mental distress are sufficient to confer standing." *Cooper v. F.A.A.*, 816 F. Supp. 2d 778, 791 (N.D. Cal. 2008)[3]; *see also Goz on behalf of Est. of Travers v. Allied Collection Servs., Inc.*, 812 F. App'x 544, 545 (9th Cir. 2020) (holding that testimony about "emotional distress" demonstrated a "concrete injury"). Dr. Joslin has adequately alleged that Defendants' conduct in collecting, maintaining, and disclosing their protected speech and associations has caused "mental anguish." SAC ¶¶ 71, 74, 84, 95.

## II. Dr. Joslin has adequately pleaded a Privacy Act claim.

### A. Dr. Joslin's Privacy Act claim is not precluded by the CSRA.

In its first motion-to-dismiss opinion, the Court held that Dr. Joslin's original Privacy Act claim was not precluded by the CSRA. Op. 15. Because Dr. Joslin did not claim harm arising from "the termination or some other employment matter listed in the CSRA" and the case would not "entail any investigation of a decision that this Court is bound not to second-guess," the CSRA posed no barrier. *Id.* That was the correct application of Ninth Circuit law. *See Minshew v. Donley*, 911 F. Supp. 2d 1043, 1069 (D. Nev. 2012); *Orsay v. U.S. Dep't of Just.*, 289 F.3d 1125, 1129 (9th

---

[3] The district court's discussion of "actual damages" led to a lengthy subsequent history culminating in the Supreme Court's decision in *F.A.A. v. Cooper*, 566 U.S. 284 (2012). But none of the appellate courts questioned the district court's standing analysis. *See id.* at 289; 596 F.3d 538, 543 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 622 F.3d 1016 (9th Cir. 2010); 696 F.3d 1265, 1265–66 (9th Cir. 2012).

Cir. 2002), *abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50 (2013). And it remains true as applied to Dr. Joslin's second amended complaint.

Defendants' renewed argument on CSRA preclusion is defeated by a simple reality: nothing about Dr. Joslin's Privacy Act claim would change if Dr. Joslin had not been terminated. Regardless of whether Defendants used the relevant records to terminate Dr. Joslin, their Privacy Act claim does not depend on or otherwise include that particular use by Defendants. *See* SAC ¶¶ 91–97. And no other conduct by NPS Defendants, including the investigation into Dr. Joslin's display, qualifies as a CSRA-covered action that would unlock the statute's preclusive effect. *See* 5 U.S.C. § 7512; 5 U.S.C. § 2302(a)(2)(A)(i)–(xii). Instead, Dr. Joslin's Privacy Act claim is limited to other adverse effects: chilling effects, mental and emotional distress, and actual damages. SAC ¶¶ 95, 97. As described above, each of these harms is tied to the maintenance of the offending records itself, not the termination. *Supra* section I; *see* Op. 15 ("The 'harm,' in other words, was not the termination or some other employment matter listed in the CSRA[.]"). That there may be some overlapping facts between the unlawful maintenance of records and Dr. Joslin's termination does not change the analysis. As the D.C. Circuit explained in the context of a federal employee's analogous First Amendment claim, when a claim "stands independently" of a CSRA personnel action, there is "no reason for disabling [a plaintiff] from pursuing in federal court [that] claim . . . merely because she has also experienced a personnel action related to that claim." *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1434 (D.C. Cir. 1996).[4]

Nor is there any risk that Dr. Joslin's Privacy Act claim would kick-off an "end-run" around the CSRA, MTD Mem. 6, for any significant number of potential plaintiffs. For one thing, it would not be a very good end-run: the claim does not seek any of the relief commonly sought in an employment dispute. Dr. Joslin does not seek, for example, reinstatement, backpay, or damages

---

[4] In Defendants' only case to the contrary, *Biasco v. DHS*, the plaintiff did not even respond to the government's CSRA preemption argument. 2022 WL 4796992, at *3 (W.D. Wash. Aug. 30, 2022), *adopted*, 2022 WL 4752950 (W.D. Wash. Oct. 3, 2022). Moreover, the court analyzed the forced signing of a declaration that included descriptions of protected activity, holding that this final action constituted a "corrective action" covered by the CSRA. *Id.* The court did not address whether the collection of materials leading up to that forced declaration—the conduct more akin to Defendants' here—could give rise to a Privacy Act violation.

arising out of the termination, all of which are potentially available through the CSRA. Because this Court would not touch the termination decision or the consequences of that termination, claims arising from the termination would remain squarely in the Office of Special Counsel's and Merit Systems Protection Board's lane. Moreover, even in the D.C. Circuit, which is home to the greatest concentration of federal employees and allows Privacy Act claims arising directly out of personnel actions, "defendants' hyperbolic floodgate prediction has not materialized." *Jackson v. Kennedy*, 2026 WL 172440, at *10 (D.D.C. Jan. 22, 2026).

Because Dr. Joslin's Privacy Act claim is untethered from Dr. Joslin's termination, the CSRA does not preclude this Court from considering it.

**B. Defendants' conduct is not covered by the narrow exceptions to (e)(7).**

Defendants argue that their maintenance of records describing Dr. Joslin's First Amendment protected activities falls under two exceptions to 5 U.S.C. § 552a(e)(7). Neither applies here.

*1. The "expressly authorized" exception does not apply.*

Defendants claim that they are "expressly authorized by statute" to maintain records "describing how individuals exercise First Amendment rights." MTD Mem. 7; *see* 5 U.S.C. § 552a(e)(7). In support of this argument, they cite two statutory and two regulatory provisions: 5 U.S.C. §§ 2301 and 2302, and 5 C.F.R. §§ 293 and 752. MTD Mem. 7. As an initial matter, the plain text of (e)(7) indicates that only a statute—not a regulation—could qualify for the exception. But neither § 2301 nor § 2302 expressly authorizes the agency to "maintain personnel records" or "document the basis for adverse employment actions," as Defendants claim. MTD Mem. 7. In fact, neither speaks to record-keeping of any kind, much less keeping records of First Amendment activity. Nor do they make First Amendment protected activity relevant to employment actions. And while 5 C.F.R. § 293 does provide for record-keeping, the regulation explicitly prohibits "[p]ersonnel records describing how individuals exercise rights guaranteed by the First Amendment," with exceptions that track the language of the Privacy Act. *Id.* § 293.105(a).

Even if Defendants had identified a statute that provided for general employee record-keeping authority, their conduct would still fail to qualify for (e)(7)'s carve out. As the Office of Management and Budget outlined in guidance published shortly after the Privacy Act's passage,

"[s]pecific authorization means that a statute explicitly provides that an agency may maintain records on activities whose exercise is covered by the First Amendment; not merely that the agency is authorized to establish a system of records." Off. of Mgmt. & Budget, *Privacy Act Implementation: Guidelines and Responsibilities*, 40 Fed. Reg. 28948, 28965 (July 9, 1975). "For example, since the Immigration and Nationality Act makes the possibility of religious or political persecution relevant to a stay of deportation, the information on these subjects may be admitted in evidence, and therefore would not be prohibited by this provision." *Id.* That interpretation is consistent with narrow interpretations of similar statutory language concerning "express authorization" exceptions. In *Vendo Company v. Lektro-Vend Corporation*, for example, the Supreme Court explained that a statute that "merely authorizes private injunctive relief" generally did not qualify for the "expressly authorized" exception to the Anti-Injunction Act's prohibition on enjoining state court proceedings specifically. 433 U.S. 623, 630–32 (1977); *see also Newsom v. Trump*, 797 F. Supp. 3d 1092, 1114 (N.D. Cal. 2025) (interpreting "expressly authorized" exception to the Posse Comitatus Act narrowly). Defendants' interpretation, by contrast, would swallow the protections of (e)(7) entirely for federal employees, limiting its application to situations where agencies acted entirely *ultra vires*.

Because Defendants have not pointed to any statute expressly allowing the agency to maintain records of First Amendment protected activity—or any statute that expressly makes First Amendment protected activities relevant to any determination about Dr. Joslin—the "expressly authorized" exception does not apply.

2. *The law enforcement exception does not apply.*

Defendants also raise the law enforcement exception, which allows maintenance of records of First Amendment protected activities when "pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). Because the law enforcement exception "is intended merely to make certain that political and religious activities are not used as a cover for subversive activities . . . a *narrow* reading of 'law enforcement activities' better serves the goal of privacy and avoids infringing on the overall First Amendment concerns of section (e)(7)." *MacPherson v. I.R.S.*, 803 F.2d 479, 482 (9th Cir. 1986) (emphasis in original). Importantly,

maintenance of protected records must be pertinent to "ongoing authorized law enforcement activity"; a valid law enforcement purpose at the time the record was *collected* is not enough to escape liability. *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1294–95 (9th Cir. 2019). "That is, if the agency does not have a sufficient *current* 'law enforcement activity' to which the record is pertinent, the agency is in violation of the Privacy Act if it keeps the record in its files." *Id.* at 1295 (emphasis in original).

Setting aside whether there was ever a criminal investigation into Dr. Joslin, "Defendants have affirmatively disavowed any ongoing criminal investigation of Dr. Joslin." SAC ¶ 80. Indeed, Defendants secured dismissal of Dr. Joslin's standalone constitutional claims on that basis. Op. 13–14. With the investigation indisputably over, Defendants have no *current* law enforcement activities that justify continuing to maintain the relevant records. But Dr. Joslin has adequately pleaded—and Defendants do not argue otherwise, *supra* note 2—that "NPS and DOI continue to maintain these records of Dr. Joslin's First Amendment protected activity" and that "Defendants are likely to continue using these records to Dr. Joslin's detriment in the future." SAC ¶¶ 77–78. At very least, then, Dr. Joslin has a valid claim for expungement of records currently held by Defendants, which is enough to defeat Defendants' motion to dismiss. *See Garris*, 937 F.3d at 1301.

As for retrospective violations of the Privacy Act, determining whether the law enforcement exception ever applied is a fact-intensive exercise that is not appropriate for resolution on the pleadings. *See Lopez v. Fresno City Coll.*, 2012 WL 844911, at *9 (E.D. Cal. Mar. 12, 2012) (holding that First Amendment "factual issues [are] not readily determined at the pleadings stage"). Although Dr. Joslin continues to believe there was a criminal investigation at some point, it is not clear whether the records reflecting First Amendment protected activities were collected and maintained "within the scope" of that investigation, 5 U.S.C. § 552a(e)(7), or for some other agency purpose. Indeed, the records at the center of Dr. Joslin's Privacy Act claim were disclosed during an interview that "NPS assured Dr. Joslin . . . would not be used for law enforcement purposes." SAC ¶ 62. Indeed, the Privacy Act claim is asserted only against NPS and DOI, not DOJ or the U.S. Attorney's Office. SAC at 21. Drawing "all reasonable inferences" in Dr. Joslin's favor, *Leite*, 749 F.3d at 1121, it is plausible that the law enforcement exception never applied to Defendants'

maintenance of the relevant records. Moreover, the Ninth Circuit has largely "declined to fashion a hard and fast standard for determining whether a record of First Amendment activity is exempt" under the law enforcement exception because "strong policy concerns on both sides of the issue present close and difficult questions and may balance differently in different cases." *MacPherson*, 803 F.2d at 484. Given the amorphous, "case-by-case" nature of the exception, *id.*, the Court would benefit from a full factual record before determining its application here.

**C. Defendants' compensable damages argument is irrelevant at this stage.**

Defendants' argument that Dr. Joslin has failed to plead pecuniary damages suffers from three major flaws.

*First*, pecuniary damages are not an element of a Privacy Act violation. As the Fourth Circuit explained *Doe v. Chao*, it is "not so" that "relief is part of the underlying cause of action" for the Privacy Act. 435 F.3d 492, 499 (4th Cir. 2006). Arguments otherwise evince a "misunderstanding over the difference between a cause of action and the relief afforded under it." *Id.* at 501 (quoting *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 69 (1992)). To be sure, demonstrating pecuniary harm is necessary to recover damages. *Id.* at 493. But even without proving damages, a plaintiff may be entitled to other relief, including expungement of the improperly maintained records, declaratory judgment, and attorneys' fees. *Garris*, 937 F.3d at 1299 (expungement); *Morinville v. U.S. Pat. & Trademark Off.*, 442 F. Supp. 3d 286, 295 (D.D.C. 2020) (declaratory relief); *Doe*, 435 F.3d at 506 (attorneys' fees). The Ninth Circuit evidently agreed in *Garris*, as it ordered only record expungement in a § 552a(e)(7) case without ever addressing damages. 937 F.3d at 1301. Dr. Joslin therefore need not plead pecuniary damages to survive a motion to dismiss.

*Second*, Dr. Joslin has, in fact, adequately pleaded pecuniary damages. Upon learning that Defendants were collecting their public statements, Dr. Joslin "suffered tremendous mental and emotional distress, for which they incurred healthcare costs for mental health treatment." SAC ¶ 71. These costs occurred in response to the collection and disclosure of Dr. Joslin's records, pre-dating their termination. *Id.* Courts have consistently held that the costs of mental health treatment qualify as pecuniary harm in the Privacy Act context. *See Doe v. Chao*, 540 U.S. 614, 626 n.10 (2004)

(noting that "the charge for a Valium prescription" qualifies); *see also Colon v. United States*, 320 F. Supp. 3d 733, 742 (D. Md. 2018) ("[T]o the extent [plaintiff] . . . paid costs for therapy sessions . . . [plaintiff] can recover.") (cleaned up); *Fanin v. U.S. Dep't of Veterans Affs.*, 572 F.3d 868, 872 (11th Cir. 2009) (noting "the cost of additional medication or psychiatric care" as examples of "pecuniary loss"). To the degree that Defendants wish to parse out other potential causes of these healthcare costs, that is not an argument that can be resolved at the pleading stage. *See Colon*, 320 F. Supp. 3d at 742 (holding that causation arguments do not "alter the fact that [plaintiff] has pled such damages" so the "complaint survives").

*Third*, Dr. Joslin specifically seeks "expungement of all records reflecting Dr. Joslin's First Amendment protected activities" and a declaratory judgment that "Defendants' maintenance of data on Dr. Joslin's protected First Amendment activity was unlawful." SAC at 24–25. That relief is very similar to what was obtained in *Garris*. *See* 937 F.3d at 1301.[5] For the same reasons Dr. Joslin has adequately pleaded standing related to NPS Defendants' ongoing maintenance of records describing First Amendment protected activity, *supra* section I, Dr. Joslin has also pleaded the risk of future harm necessary to support expungement as a remedy.

**D. Dr. Joslin has adequately pleaded intent.**

Defendants next argue that Plaintiffs' allegations are not sufficient to show that Defendants violated the Privacy Act in an "intentional or willful" way. MTD Mem. 19. At the outset, intent is a notoriously fact-specific question. *See Stewart v. D.C. Armory Bd.*, 863 F.2d 1013, 1018 (D.C. Cir. 1988) ("[I]dentifying the government's intent in this case raises inherently factual issues that cannot be resolved on a Rule 12(b)(6) motion."). And "[f]act-specific questions cannot be resolved

[5] Dr. Joslin is aware that *Fazaga v. FBI* held, without mentioning *Garris*, that injunctive relief was not available for an (e)(7) claim. 965 F.3d 1015, 1063 (9th Cir. 2020), *rev'd and remanded*, 595 U.S. 344 (2022). But because *Fazaga* was reversed, albeit on other grounds, it is merely persuasive authority, while *Garris* remains binding. *See Johnson v. Brown*, 567 F. Supp. 3d 1230, 1265 n.37 (D. Or. 2021) (citing *Johnson v. Gibson*, 783 F.3d 1159, 1165 (9th Cir. 2015) ("[C]ases that have been reversed on other grounds may be persuasive, but are not controlling, authority.").

on the pleadings."[6] *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)).

In the context of the Privacy Act, "intentional or willful" is a term of art that means "only somewhat greater than gross negligence." *Covert v. Harrington*, 876 F.2d 751, 756 (9th Cir. 1989). Here, NPS Defendants repeatedly collected and used materials that Dr. Joslin has adequately pleaded were protected by the First Amendment. SAC ¶¶ 63–79. Indeed, NPS Defendants do not argue otherwise. *See supra* note 2. Maintenance of such materials runs contrary to both the Privacy Act and more specific regulations about employee recordkeeping and the First Amendment, including one Defendants themselves attempt to use as shield. *See supra* section II.B.1 (discussing 5 C.F.R. § 293.105(a)). NPS's own First Amendment training should have put them on notice that the use of such materials was wrong. *See* SAC ¶ 44. Even if NPS Defendants were somehow unaware of their legal obligations, NPS Defendants then *continued* to maintain and use those records after they had been sued over this specific unlawful conduct. *Id.* ¶ 73; *see Wilborn v. Dep't of Health & Hum. Servs.*, 49 F.3d 597, 602 (9th Cir. 1995) (holding violation intentional or willful when decisionmaker had been informed conduct was inappropriate), *abrogated on other grounds by Doe v. Chao*, 540 U.S. 614 (2004). There is nothing "ordinary" about that. MTD Mem. 10.

Nor is violating the Privacy Act in the course of otherwise "ordinary government functions" any defense. *See id*. The Privacy Act is not limited to situations in which an agency is engaged in some illicit or illegal enterprise. As the Ninth Circuit explained, "[t]he fact that [an agency defendant] was following its own regulations cannot be decisive because . . . an agency cannot

[6] Defendants' demand for "specific evidence," MTD Mem. 9, is premature. As the full quote from *Taylor v. Def. Fin. & Acct. Serv.* makes plain, that is a requirement for plaintiffs to "survive summary judgment," not a motion to dismiss. 2014 WL 28820, at *9 (E.D. Cal. Jan. 2, 2014); *see also Ruiz v. Medtronic, Inc.*, 2025 WL 3485034, at *3 (E.D. Cal. Dec. 4, 2025) ("Plaintiff is also not required to prove her claim at this stage as Defendants appear to suggest, nor could she without discovery.").

promulgate regulations which ignore the dictates of the Privacy Act." *Covert*, 876 F.2d at 757 (cleaned up). "The real question becomes, then, how tenable the government's legal arguments are, and whether the [defendant agency officials] could reasonably have relied upon them." *Id.* NPS Defendants' legal arguments fail for the reasons discussed above, and any claim that NPS Defendants could nonetheless escape liability by having reasonably relied upon those arguments depends, crucially, on whether they actually did rely upon them. And that is yet another factual question that cannot be determined on a motion to dismiss.

While these allegations alone are enough to satisfy intent at this early stage of proceedings, the allegations in the second amended complaint also demonstrate a level of animus by Defendants toward Dr. Joslin that further evinces intent. Dr. Joslin has adequately pleaded that the investigation motivating the collection of their expressive speech was related to the violation of a regulation that had never been enforced in the same way against others. SAC ¶¶ 28–29. And the same declaration that faulted Dr. Joslin for speaking publicly also repeatedly misgendered them. Globokar Decl. ¶¶ 3, 5, 6, 7; *see Ward v. KaTom Rest. Supply, Inc.*, 2026 WL 184279, at *6 (E.D. Tenn. Jan. 23, 2026) (holding that "a reasonable factfinder could conclude that [a supervisor] harbored discriminatory animus towards transgender individuals" because the supervisor refused to use plaintiff's correct pronouns, among other things); *Barry v. Thomas Jefferson Univ. Hosps., Inc.*, 2026 WL 935837, at *10 (E.D. Pa. Apr. 7, 2026) (finding misgendering to be evidence of "severe or pervasive" discrimination). Both the targeting and misgendering of Dr. Joslin reflect a level of animus toward Dr. Joslin that supports an inference that NPS Defendants were "flagrantly disregarding" Dr. Joslin's rights under the Privacy Act. *Covert*, 876 F.2d at 757.

Taken together, the "totality" of the facts in the complaint "adequately allege intentional or willful conduct." *Feldman v. C.I.A.*, 797 F. Supp. 2d 29, 42 (D.D.C. 2011).

**III. Dr. Joslin's constitutional claims (Counts III & IV) are included principally for preservation purposes, and Defendants' motion to strike should be denied.**

As to Dr. Joslin's standalone First and Fifth Amendment claims, Defendants ask this court to strike the employment-related portions of those claims. MTD Mem. 4, 10. But Dr. Joslin's original First and Fifth Amendment claims encompassed both employment-related and non-employment-related conduct, alleging that multiple agencies conducted a coordinated, vindictive campaign that had employment, criminal, and still other consequences. Dr. Joslin recognizes that the Court's previous order forecloses the employment-related portions of these claims because they were denied "without leave to amend, but also without prejudice to any future litigation in an appropriate venue." Op. 16. Dr. Joslin nevertheless reluctantly repleaded those claims to avoid even the possibility of the harsh penalty of waiver and to include all relevant and necessary context for Dr. Joslin's non-employment-related claims, which were not dismissed without leave to amend. Defendants have not been prejudiced by this choice, and assuming the Court will apply the same analysis from its first opinion, the appropriate course would be to dismiss the claims again, not strike them entirely.

**A. No allegations need to be stricken.**

"Motions to strike are regarded with disfavor," and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Crawford v. Kaiser Found. Health Plan*, 395 F. Supp. 3d 1279, 1286 (N.D. Cal. 2019) (cleaned up).

Dr. Joslin agrees with Defendants that they *likely* did not have to replead their employment-related claims to preserve them. MTD Mem. 4–5. But as Defendants' string cite demonstrates, the law is not so clear. The leading case, *Lacey v. Maricopa County*, offers a brightline rule that "claims dismissed with prejudice and without leave to amend" do not need to be repleaded "in a subsequent amended complaint to preserve them for appeal." 693 F.3d 896, 928 (9th Cir. 2012) (en banc). Dr. Joslin's claims, however, were dismissed *without* prejudice.[7] Op. 16. And while *Parrino v. FHP,*

[7] Setting aside Dr. Joslin's objections on the merits, this was the correct procedural disposition. *See Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 846 (9th Cir. 2017) ("Dismissals for lack of subject-matter jurisdiction . . . must be without prejudice, because a lack of jurisdiction deprives the dismissing court of any power to adjudicate the merits of the case.").

*Inc.* stated the rule more broadly to cover all claims dismissed without prejudice, *see* 146 F.3d 699, 704 (9th Cir. 1998), the en banc court in *Lacey* later criticized *Parrino* as not "consistent with our prior cases." *Lacey*, 693 F.3d at 926. Finally, although the other materials Defendants cite may well be persuasive,[8] they are not binding on the Ninth Circuit. Given this enduring uncertainty, Dr. Joslin wished to take all measures to avoid waiver on appeal.

Moreover, although the Court was correct to address the availability of employment and non-employment *relief* separately, Dr. Joslin's constitutional claims were not originally broken out that way when it comes to the government's *conduct*. Instead, Dr. Joslin alleged a coordinated campaign across agencies to bring the full weight of the government to bear against them. Thus, even if employment-related relief is foreclosed, employment-related allegations are relevant to understanding the overall alleged campaign of unconstitutional and unlawful conduct directed toward Dr. Joslin. *See Cayo v. Valor Fighting & Mgmt. LLC*, 2009 WL 1626586, at *5 (N.D. Cal. June 8, 2009) (denying motion to strike repleaded allegations where they "supplie[d] background" for remaining claims). And the new allegations and claim of retaliatory conduct highlighted by Defendants, MTD Mem. 5, are relevant not only to the employment-related portion of the claim, but to non-employment aspects of the claim like Dr. Joslin's allegation that they have been excluded from volunteer positions at Yosemite. SAC ¶ 86. These non-employment aspects of Dr. Joslin's constitutional claims were dismissed with leave to amend. Op. 16. Granting Defendants' motion to strike would make it more difficult to present these constitutional claims as comprehensive, rather than disjointed, on appeal.

Because striking portions of Dr. Joslin's complaint, rather than merely dismissing again, is not "necessary" for the ongoing litigation of the case, *Crawford*, 395 F. Supp. 3d at 1294, and because Defendants have not demonstrated any resulting prejudice, *Guerrero v. Halliburton Energy Servs., Inc.*, 231 F. Supp. 3d 797, 802 (E.D. Cal. 2017), Defendants' motion should be denied.

---

[8] *See* MTD Mem. 4–5 (citing 3-15 James Wm. Moore et al., *Moore's Federal Practice-Civil* § 15.17 (3d ed. 2026); *Roe v. Unocal Corp.*, 70 F. Supp. 2d 1073, 1076 (C.D. Cal. 1999); and *Wilborn v. Napolitano*, 2012 WL 354494, at *11 (S.D. Cal. Feb. 2, 2012)).

### B. Dr. Joslin maintains objections to the Court's first opinion.

Because Dr. Joslin does not wish to preserve by repleading only to waive arguments by not raising them in this opposition, Dr. Joslin briefly summarizes the arguments raised in full in their first opposition. *See* ECF No. 40.

Dr. Joslin adequately pleaded valid First and Fifth Amendment violations against Defendants, and relief as to the consequences that followed was appropriate. Both Supreme Court and Ninth Circuit precedent support allowing employees without a guaranteed path to federal court to bring constitutional claims directly to federal court. *See Webster v. Doe*, 486 U.S. 592, 603 (1988); *AFGE Local 1 v. Stone*, 502 F.3d 1027 (9th Cir. 2007). That is especially true once a plaintiff has exhausted the Office of Special Counsel's process, as there is no chance of reaching an Article III court, even for constitutional claims. But the Court's opinion necessarily holds that even exhausted claims would be precluded. *See* Op. 16.

Dr. Joslin adequately alleged that pre-existing First Amendment based injuries, as well as an intention to engage in conduct affected with a constitutional interest that is arguably proscribed, constitute a credible threat of prosecution.[9] Dr. Joslin therefore had standing to raise First Amendment claims relating to the criminal investigation itself, irrespective of any later prosecution. *See Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 490 (9th Cir. 2024).

## CONCLUSION

For the foregoing reasons, Dr. Joslin respectfully requests this Court deny in full Defendants' motion to dismiss.

Dated: August 31, 2026

Respectfully submitted,

*/s/ Margaret (Emmy) Wydman*

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Chloe Connolly, CA Bar #348962
50 California St., 22nd Fl.
San Francisco, CA 94111

**CIVIL SERVICE LAW CENTER LLP**
Margaret (Emmy) Wydman* (DC Bar No. 90007646)
Clayton L. Bailey* (DC Bar No. 1644867)
1455 Pennsylvania Ave NW, Suite 400

[9] Dr. Joslin acknowledges that they have not added facts that would change the Court's standing analysis as to criminal relief.

(415) 875-6600
chloeconnolly@quinnemanuel.com

Marshall Searcy, CA Bar #169269
865 S. Figueroa St., 10th Fl.
Los Angeles, CA 90017
(213) 443-3000
marshallsearcy@quinnemanuel.com

MacKenzie Freed, CA Bar #353450
555 Twin Dolphin Dr., 5th Fl.
Redwood Shores, CA 94065
(650) 801-5000
mackenziefreed@quinnemanuel.com

Washington, DC 20004
(202) 571-7840
ewydman@civilservicellp.com
cbailey@civilservicellp.com

**PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY**
Paula Dinerstein* (DC Bar No. 333971)
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 464-2293
pdinerstein@peer.org

*Admitted *pro hac vice*

*Counsel for Plaintiff Shannon "SJ" Joslin*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of and effectuate service on such as to the attorneys of record.

*<u>/s/ Margaret (Emmy) Wydman</u>*
Margaret (Emmy) Wydman